No. 24-7707

_____

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

_____

MARIE FALCONE,

individually and on behalf of all others similarly situated,

*Plaintiff-Appellee*,

v.

NESTLÉ USA, INC.,

*Defendant-Appellant*.

_____

On Appeal from the United States District Court
for the Southern District of California
Case No. 3:19-cv-723 | Hon. M. James Lorenz

_____

## APPELLANT'S OPENING BRIEF

_____

Al Kelly
GIBSON, DUNN & CRUTCHER LLP
1801 California Street, #4200
Denver, CO 80202
(303) 298-5700

Theodore J. Boutrous Jr.
Christopher Chorba
Perlette Jura
Timothy W. Loose
Bradley J. Hamburger
Matt Aidan Getz
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
(213) 229-7000

*Counsel for Appellant Nestlé USA, Inc.*

# CORPORATE DISCLOSURE STATEMENT

Under Rule 26.1 of the Federal Rules of Appellate Procedure, I disclose that defendant-appellant Nestlé USA, Inc. is a wholly owned subsidiary of Nestlé Holdings, Inc.  Nestlé Holdings, Inc. is a wholly owned subsidiary of NIMCO US, Inc., which is a wholly owned subsidiary of Nestlé US Holdco, Inc., which itself is a wholly owned subsidiary of Société des Produits Nestlé S.A.  Société des Produits Nestlé S.A. is a wholly owned subsidiary of Nestlé S.A., a publicly traded Swiss corporation whose shares are traded in the United States in the form of American Depositary Receipts.  No publicly held corporation owns 10% or more of the stock of Nestlé S.A.

Dated:  March 10, 2025

Respectfully submitted,

/s/ Theodore J. Boutrous Jr.
Theodore J. Boutrous Jr.

*Counsel for Appellant*
*Nestlé USA Inc.*

i

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................ 1

JURISDICTIONAL STATEMENT ................................. 5

ISSUES PRESENTED ...................................................... 6

STATEMENT OF THE CASE.......................................... 7

    A.    The Nestlé Cocoa Plan Works to Improve
        Conditions in Cocoa-Farming Communities ................. 7

    B.    Plaintiffs Challenge Various Product Labels ................ 8

    C.    Falcone Seeks Class Certification................................. 12

    D.    The District Court Certifies Damages and
        Injunctive-Relief Classes............................................... 15

SUMMARY OF ARGUMENT ........................................ 18

STANDARD OF REVIEW................................................ 25

ARGUMENT..................................................................... 25

I.    The District Court Erred in Certifying a Class That
    Lacks Commonality and Predominance ............................... 25

    A.    Questions Relating to Each Class Member's
        Exposure to the Challenged Statements Are
        Incapable of Classwide Resolution ............................... 27

        1.    Most Class Members Never Saw the
            Challenged Statements......................................... 29

        2.    Class Members Who Did Not See Challenged
            Statements Were Not "Exposed" to Them........... 32

3.  The District Court Erred in Bypassing
    These Individualized Issues ................................... 35

4.  The Lack of Classwide Exposure Also
    Creates Issues of Article III Standing That
    Predominate Over Common Questions ............... 38

B.  Individualized Issues Relating to Each Class
    Member's Understanding of the Challenged
    Statements Are Incapable of Classwide Resolution ...... 40

C.  Individualized Issues Relating to Materiality and
    Reliance Preclude Certification ..................................... 43

II.  The District Court Also Erred in Accepting Falcone's
     "Full Refund" Damages Model ................................................ 49

A.  *Comcast* Requires Plaintiffs to Offer a Damages
    Model That Comports with the Claims of the Class
    Members They Seek to Represent ................................. 49

B.  Falcone's "Full Refund" Model Contravenes
    California Law, This Court's Decisions, and
    Undisputed Evidence in the Record ............................. 53

III.  The District Court Further Erred in Certifying an
      Injunctive-Relief Class Because Falcone Lacks Standing
      to Seek Such Relief .................................................................. 63

A.  Falcone's Testimony Proves That She Is Satisfied
    with Nestlé USA's Current Labels ................................. 65

B.  Falcone Has Not Shown That She Will Be Unable
    to Rely on Nestlé USA's Labels in the Future .............. 67

CONCLUSION .............................................................................. 72

iii

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Honda Motor Co. v. Superior Court*,
  199 Cal. App. 4th 1367 (2011) .................................................... 29

*Avritt v. Reliastar Life Insurance Co.*,
  615 F.3d 1023 (8th Cir. 2010) ................................................39, 40

*Berger v. Home Depot USA, Inc.*,
  741 F.3d 1061 (9th Cir. 2014).............................21, 29, 36, 37, 41

*Berni v. Barilla S.p.A.*,
  964 F.3d 141 (2d Cir. 2020) ....................................................... 70

*Black Lives Matter L.A. v. City of Los Angeles*,
  113 F.4th 1249 (9th Cir. 2024)................................................... 59

*Brazil v. Dole Packaged Foods, LLC*,
  660 F. App'x 531 (9th Cir. 2016)...........................................55, 56

*Bustamante v. KIND, LLC*,
  100 F.4th 419 (2d Cir. 2024)..............................................21, 42, 46

*Cabral v. Supple LLC*,
  608 F. App'x 482 (9th Cir. 2015)................................................ 33

*Capaci v. Sports Rsch. Corp.*,
  2022 WL 1133818 (C.D. Cal. Apr. 14, 2022) ........................56, 57

*Castillo v. Bank of Am., NA*,
  980 F.3d 723 (9th Cir. 2020)....................................19, 20, 28, 35

*Chowning v. Kohl's Dep't Stores, Inc.*,
  733 F. App'x 404 (9th Cir. 2018)................................................ 55

*Cohen v. DIRECTV, Inc.*,
  178 Cal. App. 4th 966 (2009) ..................................................... 34

iv

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) ............................ 2, 4, 6, 22, 23, 26, 35, 48, 49,
    ........................................ 50, 51, 52, 54, 56, 59, 62, 63

*Conrad v. Boiron, Inc.*,
    869 F.3d 536 (7th Cir. 2017) ......................................... 71

*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018) .............. 24, 64, 67, 68, 69, 70, 71, 72

*Davis-Miller v. Auto. Club of S. Cal.*,
    201 Cal. App. 4th 106 (2011) ....................................... 36

*Downey v. Pub. Storage, Inc.*,
    44 Cal. App. 5th 1103 (2020) ...............................2, 19, 20, 21, 27,
    .............................................33, 36, 40, 41, 43

*DZ Rsrv. v. Meta Platforms, Inc.*,
    96 F.4th 1223 (9th Cir. 2024) .........................5, 19, 24, 28, 64, 68

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    563 U.S. 804 (2011) ................................................ 26

*Fairbanks v. Farmers New World Life Ins. Co.*,
    197 Cal. App. 4th 544 (2011) ..........................................22, 44, 47

*Gen. Tel. Co. of the Sw. v. Falcon*,
    457 U.S. 147 (1982) ................................................ 63

*Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*,
    594 U.S. 113 (2021) ...............................................35, 63

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    573 U.S. 258 (2014) ................................................ 37

*Hodsdon v. Mars, Inc.*,
    891 F.3d 857 (9th Cir. 2018) .....................................58, 59

*In re Johnson & Johnson Talcum Powder Prods.*
  *Mktg., Sales Pracs. & Liab. Litig.*,
  903 F.3d 278 (3d Cir. 2018) ...................................................70, 71

*Kenney v. Fruit of the Earth, Inc.*,
  2024 WL 4578981 (9th Cir. Oct. 25, 2024) ................................. 70

*Kwan v. SanMedica Int'l*,
  854 F.3d 1088 (9th Cir. 2017)...................................................... 43

*Kwikset Corp. v. Superior Court*,
  51 Cal. 4th 310 (2011).........................................53, 54, 59, 60, 61

*Lab'y Corp. of Am. v. Davis*,
  — S. Ct. —, 2025 WL 288305 (Jan. 24, 2025) ............................. 38

*Lambert v. Nutraceutical Corp.*,
  870 F.3d 1170 (9th Cir. 2017)................................................56, 57

*Lara v. First Nat'l Ins. Co. of Am.*,
  25 F.4th 1134 (9th Cir. 2022) ...............................................25, 38

*Leyva v. Medline Indus. Inc.*,
  716 F.3d 510 (9th Cir. 2013) ....................................................... 50

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)..................................................................... 68

*Lytle v. Nutramax Labs., Inc.*,
  114 F.4th 1011 (9th Cir. 2024)....................... 22, 44, 45, 46, 47, 48

*Marlo v. UPS, Inc.*,
  639 F.3d 942 (9th Cir. 2011) ...................................................... 25

*Mayfield v. United States*,
  599 F.3d 964 (9th Cir. 2010)..............................................4, 65, 66

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012)...........................20, 27, 28, 32, 35, 36

*McGinity v. Procter & Gamble Co.*,
   69 F.4th 1093 (9th Cir. 2023) ..................................................... 46

*Microsoft Corp. v. Baker*,
   582 U.S. 23 (2017) ................................................................21, 29

*Moore v. Mars Petcare US, Inc.*,
   966 F.3d 1007 (9th Cir. 2020) ..................................................... 31

*Moorer v. StemGenex Med. Grp., Inc.*,
   830 F. App'x 218 (9th Cir. 2020) ................................................. 33

*Myers v. Starbucks Corp.*,
   2024 WL 3102800 (9th Cir. June 24, 2024) ............................... 41

*NEI Contracting & Eng'g, Inc. v.*
   *Hanson Aggregates Pac. Sw., Inc.*,
   926 F.3d 528 (9th Cir. 2019) ....................................................... 64

*Nguyen v. Nissan N. Am., Inc.*,
   932 F.3d 811 (9th Cir. 2019) ...........................................51, 52, 54

*O'Connor v. Uber Techs., Inc.*,
   904 F.3d 1087 (9th Cir. 2018) ..................................................... 25

*Olean Wholesale Grocery Coop., Inc. v.*
   *Bumble Bee Foods LLC*,
   31 F.4th 651 (9th Cir. 2022) ......................... 20, 26, 27, 38, 43, 52

*Pulaski & Middleman, LLC v. Google, Inc.*,
   802 F.3d 979 (9th Cir. 2015) ....................................................... 52

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
   725 F.3d 244 (D.C. Cir. 2013) ..................................................... 52

*Reitman v. Champion Petfoods USA, Inc.*,
   830 F. App'x 880 (9th Cir. 2020) ................................................. 56

*Sevidal v. Target Corp.*,
   189 Cal. App. 4th 905 (2010) .................................................20, 33

*Small v. Allianz Life Ins. Co. of N. Am.*,
    122 F.4th 1182 (9th Cir. 2024)..........................................26, 38, 52

*Stearns v. Ticketmaster Corp.*,
    655 F.3d 1013 (9th Cir. 2011).........................22, 44, 45, 47, 48, 49

*In re Tobacco Cases II*,
    240 Cal. App. 4th 779 (2015) ..................................3, 23, 36, 55, 61

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009)................................................................ 36

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021)................................................................... 38

*Tucker v. Pac. Bell Mobile Servs.*,
    208 Cal. App. 4th 201 (2012) ................................................22, 44

*In re Vioxx Class Cases*,
    180 Cal. App. 4th 116 (2009) ............................................3, 23, 54

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)...............................................2, 5, 20, 25, 27,
    ..................................................................35, 37, 50, 63, 68

**Constitutional Provisions**

U.S. Const. art. III..............................................4, 5, 6, 20, 24, 28, 38,
    ..................................................................39, 40, 43, 68, 69, 71

**Statutes**

28 U.S.C. § 1292 ........................................................................ 5

28 U.S.C. § 2072 ...........................................................28, 37, 50

Cal. Bus. & Prof. Code § 17200 ...................................................... 10

Cal. Civ. Code § 1750...................................................................... 10

viii

**Rules**

Fed. R. Civ. P. 23 ................................................. 1, 3, 5, 25, 27, 50, 59

Fed. R. Civ. P. 23(a) ......................................................................... 34

Fed. R. Civ. P. 23(a)(1) .................................................................... 18

Fed. R. Civ. P. 23(a)(2) .................................................................... 15

Fed. R. Civ. P. 23(b)(2) ................................................. 4, 6, 24, 63, 64

Fed. R. Civ. P. 23(b)(3) ........................... 2, 3, 4, 6, 16, 18, 22, 23, 25,
........................................................ 26, 34, 35, 49, 50, 51, 52, 63

Fed. R. Civ. P. 23(f) ....................................................................... 5, 6

Fed. R. Evid. 702 ............................................................................. 14

**Other Authorities**

*Discover Our Cocoa Progress Reports*,
    Nestlé Cocoa Plan, https://tinyurl.com/5n93bpxy
    (accessed Mar. 9, 2025) ................................................................ 7

*Nestlé*, Chocolate Scorecard, https://tinyurl.com/4rebavf9
    (accessed Mar. 9, 2025) ................................................................ 8

## INTRODUCTION

The district court certified classes of millions of consumers who bought various Nestlé USA chocolate products featuring statements that the cocoa in the chocolate was "sustainably" or "responsibly sourced." The certification order depends on a series of unproven and unreasonable assumptions—namely, that each of those consumers (1) saw the statements, which mostly appeared on the back labels; (2) understood them in the way plaintiff Marie Falcone contends (i.e., as promising a supply chain free from any risks of child labor); (3) bought the products because of the statements; and (4) would not have paid a cent for the products had they known that all cocoa from West Africa carries some supply chain-related risks.

Falcone hasn't shown a basis to make *any*, much less all, of those assumptions across the entire class. And unrebutted evidence reveals considerable variation in individual consumers' exposure to, understanding of, and reliance on the statements. This Court should reverse the flawed class-certification order.

No class can be certified under Rule 23 unless the plaintiff proves that a class trial will be able to "'generate common *answers*

apt to drive the resolution of the litigation'"—i.e., that the issues affecting each class member's ability to recover can be resolved "in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). That burden is heightened for damages classes under Rule 23(b)(3), for which plaintiffs must satisfy the especially "demanding" predominance requirement. *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). For consumer-fraud claims like Falcone's, that requires a way to determine, on a classwide basis and without recourse to extensive individualized evidence, that all class members were exposed to statements that were materially deceptive. *E.g.*, *Downey v. Pub. Storage, Inc.*, 44 Cal. App. 5th 1103, 1115 (2020).

Even though "Rule 23 does not set forth a mere pleading standard," *Dukes*, 564 U.S. at 350, Falcone put forward no evidence capable of resolving the elements of her claims on a classwide basis. That lack of support alone requires denial of certification. What's more, the evidence makes clear that many (even most) consumers didn't see the statements Falcone challenged, didn't understand them as an implicit guarantee about the lack of child labor in the cocoa supply chain, and didn't rely on those implicit assurances (to the

exclusion of taste, name-brand loyalty, or quality) in deciding whether to buy the chocolate. The only way for a class trial to go forward would be for the Court to disregard that extensive evidence and assume that all class members are identically situated. That would get Rule 23 exactly backward.

The problems don't end there. Falcone secured certification of a Rule 23(b)(3) class based on a damages model that would award a full refund to every class member. But California consumer-protection claims like Falcone's do not guarantee a full refund; they require courts to assess the price each consumer would have paid absent the alleged misrepresentations, necessitating an assessment of "the value of what [each consumer] received." *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 130-31 (2009); *accord In re Tobacco II Cases*, 240 Cal. App. 4th 779, 802 (2015). If a full-refund model were ever appropriate, it would have to be based on proof that the products were completely worthless to everyone. There's no evidence to support that notion here, and the unrebutted evidence is to the contrary. Many consumers—including Falcone—*still valued* the chocolate they bought, regardless of any supposed misrepresentations about

3

conditions in the cocoa supply chain. Because the full-refund model is inconsistent with the claims of the class Falcone proposed and the evidence in the record, it represents an "arbitrary" measure that cannot support certification, leaving Falcone unable to satisfy Rule 23(b)(3). *Comcast*, 569 U.S. at 35-36.

The injunctive-relief class the district court certified under Rule 23(b)(2) is just as faulty. That's true not only because Falcone has not shown commonality, but also because she lacks Article III standing to seek injunctive relief. Falcone has not demonstrated any "real or immediate threat that [s]he will again be wronged" by any labels on Nestlé USA products. *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010) (cleaned up). To the contrary, Falcone testified that the updated labels are "perfect" and that she is "going to go buy" the currently labeled products again. 4-ER-527-30. Nor can Falcone claim that she can no longer trust what Nestlé USA says; she agreed that Nestlé USA is "putting [its] money where [its] mouth is" and "delivering" on its statements about responsible cocoa sourcing. 4-ER-537, 4-ER-540. Without a representative who has standing to seek prospective relief, the Rule 23(b)(2) class cannot go

forward. *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1240 (9th Cir. 2024).

The district court certified classes that rest on layers of hypotheticals: What if all consumers saw these varied statements? What if they understood them in the unusual way Falcone argues? What if they would have paid absolutely nothing for the chocolate had the statements been left off the packaging? And what if Falcone still had a quarrel with the statements on current labels? But ultimately, each of those hypotheticals is contrary to the record. If Rule 23 requires anything, it's "pro[of] that there are *in fact* . . . common questions of law or fact" that will permit a class trial to be conducted. *Dukes*, 564 U.S. at 350. Because Falcone hasn't made that most fundamental showing, and because the certification order contains a host of other defects under Rule 23 and Article III, this Court should reverse.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction under 28 U.S.C. § 1292(e) and Federal Rule of Civil Procedure 23(f). The district court granted class certification on September 26, 2024. 1-ER-26-27. On October 10,

2024, Nestlé USA timely filed a Rule 23(f) petition (No. 24-6196, Dkt. 1), which this Court granted on December 23, 2024 (*id.* Dkt. 16).

## ISSUES PRESENTED

1. Whether the district court abused its discretion in certifying classes of people who bought Nestlé USA products even though the ability of those class members to recover will depend on countless individualized questions—including as to each consumer's exposure to, understanding of, and reliance on varied statements on the labels of those products—that cannot be resolved on a classwide basis.

2. Whether the district court abused its discretion in certifying a class under Rule 23(b)(3) because the "full refund" damages model it embraced does not fit the California consumer-protection claims of the class members or the evidence in the record and so contravenes *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013).

3. Whether the district court abused its discretion in certifying a class under Rule 23(b)(2) because plaintiff Falcone lacks Article III standing to seek prospective relief.

6

## STATEMENT OF THE CASE

### A.  The Nestlé Cocoa Plan Works to Improve Conditions in Cocoa-Farming Communities.

Nestlé USA sells chocolate through several brands, including Toll House chocolate chips, Nestlé hot-cocoa mix, and Nesquik chocolate milk.  4-ER-445.  The cocoa in these products is sourced through the "Nestlé Cocoa Plan," which has directed hundreds of millions of dollars toward improving conditions in farming communities around the world.  4-ER-600.  Among other things, the Nestlé Cocoa Plan provides training and resources to help cocoa farmers increase their yields and make a better living and improves social conditions by monitoring and supporting remediation of child labor risks, promoting women's empowerment, and enabling access to quality education.  4-ER-586-96.  The Plan publishes regular reports detailing progress in each category.  *Discover Our Cocoa Progress Reports*, Nestlé Cocoa Plan, https://tinyurl.com/5n93bpxy (accessed Mar. 9, 2025).

The Nestlé Cocoa Plan takes a multipronged approach to reduce the risk of child labor in farming communities, including by building

schools, providing school supplies, and monitoring farms to address child-labor risks. 4-ER-591, 4-ER-595. Through these programs, the Nestlé Cocoa Plan has provided support to over 170,000 children. *Id.* It has been lauded by third-party organizations as one of the top two cocoa-sourcing programs in the world for combating the risk of child labor in the cocoa supply chain. *Nestlé*, Chocolate Scorecard, https://tinyurl.com/4rebavf9 (accessed Mar. 9, 2025).

## B. Plaintiffs Challenge Various Product Labels.

This case involves 59 different product labels on Nestlé USA chocolate products. Those labels feature various combinations of different statements referring to the Nestlé Cocoa Plan, mostly on the backs of the products. For instance:

- "Supporting farmers for better chocolate. The Nestlé Cocoa Plan works to help improve the lives of cocoa farmers and the quality of their products. www.nestlecocoaplan.com."

- "Responsibly sourced cocoa through the Nestlé Cocoa Plan. www.nestlecocoaplan.com."

- "Sustainably sourced cocoa through the Nestlé Cocoa Plan. Certified Through UTZ. www.nestlecocoaplan.com."

- "Our sustainably sourced cocoa beans produce a smooth and delicious hot cocoa ready in seconds."

- "Our signature chocolate taste comes from sustainably harvested cocoa beans."

- "Responsibly sourced cocoa. Better farming. Better lives. Better Cocoa. Learn more: www.nestlecocoaplan.com & ra.org."

4-ER-446-48, 4-ER-547. Examples include:



4-ER-447.

Some of the labels also feature emblems indicating certification from UTZ or Rainforest Alliance, third-party nonprofits. 4-ER-447.

Nestlé USA holds a certification from Rainforest Alliance and held a certification from UTZ when it used that emblem.  4-ER-452.

In 2019, Renee Walker filed a complaint claiming that the labels on Nestlé USA chocolate products are misleading because they implicitly guarantee "child labor free cocoa."  6-ER-957 ¶ 46.  The complaint further alleged that no company that buys cocoa grown in West Africa can guarantee anything about the supply chain because child labor is "widespread" there.  6-ER-959 ¶ 50.  Walker raised claims under California's Consumers Legal Remedies Act (CLRA), Cal. Civ. Code § 1750, and Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200.  6-ER-972-78 ¶¶ 102-32.

Nestlé USA moved to dismiss, and the district court granted the motion, reasoning that "nowhere in the operative complaint [did] [Walker] identify the product she purchased."  6-ER-940.

Walker amended her complaint, adding some details about the products she bought.  Nestlé USA again moved to dismiss, and the court denied the motion.  6-ER-935.  It ruled that Walker had plausibly alleged that the statements on the labels were deceptive based on the theory that they were "at odds with the fact that the

child labor problem the Nestlé Cocoa Plan is said to address has grown more, and not less, severe." 6-ER-933.

Following that ruling, Walker voluntarily dismissed her claims. 6-ER-887. In her place, a new plaintiff, Marie Falcone, obtained leave to file an amended complaint featuring nearly identical allegations as Walker's complaint and raising the same CLRA and UCL claims. 6-ER-889-928; *see* 6-ER-888.

When Falcone was later deposed, her testimony differed from her allegations. The complaint alleges, for instance, that "*[n]o companies* . . . can claim to be sourcing sustainable cocoa." 6-ER-906 ¶ 53. But Falcone testified that she thinks companies *can* make "sustainably sourced" statements so long as they do "due diligence" and "follow the guidelines" of the Rainforest Alliance, 4-ER-513-14—which Nestlé USA does, 4-ER-664-65. Likewise, whereas the complaint alleged that Falcone would not buy Nestlé USA chocolate until it was produced without any risk of child labor, 6-ER-892 ¶¶ 8-9, Falcone testified that she would "absolutely" buy Nestlé USA chocolate so long as the company published reports detailing the Nestlé Cocoa Plan's activities, 4-ER-496-507, 4-ER-509, 4-ER-553, 4-ER-541. Such

reports have been published every year since 2019. *Discover Our Cocoa Progress Reports*, *supra*.

After Falcone reviewed the reports in her deposition, she agreed that Nestlé USA is "putting [its] money where [its] mouth is" and "delivering" on the statements on its labels. 4-ER-537, 4-ER-540-41. And when Falcone was shown the current labels, which had changed since the complaint was filed, she called them "perfect" and testified that if Nestlé USA "put [the products] for sale," she was "going to go buy them." 4-ER-526-29.

### C. Falcone Seeks Class Certification.

Falcone moved for certification of damages and injunctive-relief classes of all California consumers who bought various Nestlé USA products from April 2015 to present. 5-ER-844. These classes encompass millions of consumers. *See* 5-ER-828 n.310 ("78.48 million Americans used Nestlé Toll House Morsels in 2020" alone).

In support of her motion, Falcone did not offer any expert reports on consumer perception, materiality, or damages. Instead, she argued that consumer perception and materiality could be established on a classwide basis because internal Nestlé USA documents

12

indicated that some employees viewed "sustainability" as important to consumers. 5-ER-864-65. Falcone further argued that there was no need for an expert damages model because "the Products are worthless," so all consumers should get a "full refund." 5-ER-881.

Nestlé USA opposed Falcone's motion. It argued that Falcone lacked standing because her testimony showed she was satisfied both with Nestlé USA's labels and with the extensive efforts of the Nestlé Cocoa Plan. 4-ER-453-56. Nestlé USA also pointed out that Falcone could not use common evidence to prove whether class members were exposed to the challenged statements, shared a common understanding of the implicit claims supposedly made in those statements, or relied on the statements in deciding to buy the products. 4-ER-456-68. Finally, Nestlé USA explained there was no evidence of classwide damages—much less proof that Falcone's "full refund" model could serve as a permissible classwide damages model. 4-ER-468-71.

In support of its opposition, Nestlé USA submitted expert testimony from Columbia University professor Dr. Ran Kivetz, who concluded that (1) the overwhelming majority of class members never saw the challenged statements; (2) fewer than 4% of consumers

would have interpreted the challenged labels as making any claims about child labor; and (3) the challenged statements did not affect the likelihood that consumers would buy the products or the price they would be willing to pay. *See* 5-ER-694-701.

For the first time in reply, Falcone submitted declarations from three experts. The first was from Dr. Andrea Lynn Matthews, who criticized one of Dr. Kivetz's surveys but who didn't herself provide new surveys or evidence of consumer exposure to (or understanding of) the challenged statements. *See* 3-ER-382-400. The second, from Roger Mendez, described a survey that, strangely enough, showed that 13.9% of consumers were *more* likely to buy chocolate if they knew it was sourced using child labor. 3-ER-419. And the third, from Dr. William R. Ingersoll, outlined a "proposed methodology for measuring . . . price premium[s]," 3-ER-424 ¶ 1, even though Falcone did not assert a price-premium theory in her complaint or briefing. Nestlé USA moved to strike all three declarations on the grounds that they were untimely and fell short of the standards for admissibility under Federal Rule of Evidence 702.

14

### D. The District Court Certifies Damages and Injunctive-Relief Classes.

The district court certified both classes. 1-ER-26-27.

The court first ruled that Falcone had standing. 1-ER-5-7. The court based its ruling on testimony early in Falcone's deposition claiming that she had been deceived. *Id.* But the court did not address Falcone's testimony later in the deposition, after she was shown the current labels and the Nestlé Cocoa Plan reports she mistakenly believed had not been published, where she conceded that the Cocoa Plan met her expectations. 4-ER-536, 4-ER-540-41. Similarly, although the court ruled that Falcone had standing to seek injunctive relief to challenge Nestlé USA's product labels based on her statement that "she would like to purchase [the] products," 1-ER-7, the court didn't address Falcone's later testimony that she was satisfied with the current labels, 4-ER-526-29.

The district court also ruled that commonality was satisfied under Rule 23(a)(2). 1-ER-9-14. It reasoned that differences among the 59 labels at issue do not "detract from the uniformity of the message conveyed" because the statements were "interchangeable"—a

conclusion based on internal documents where some Nestlé USA employees used phrases like "sustainable" and "responsible" interchangeably. 1-ER-13. The court declined to address Nestlé USA's evidence showing that consumers would have understood the different label statements differently, reasoning that the UCL and CLRA "preclude" that kind of "individual inquiry." *Id.*

The court next ruled that predominance was satisfied under Rule 23(b)(3). 1-ER-16-24. All that is required for Falcone's UCL claim, the court reasoned, is "proof that members of the public are likely to be deceived"—leaving no need for individualized factfinding about whether particular class members "lost money or property" as a result of the statements. 1-ER-17-18. Turning to the CLRA, the court acknowledged that the claim required proof of "actual injury," but ruled that injury could be "presumed" if the alleged "misrepresentation is material." 1-ER-18. In the court's view, that presumption would apply "even if a defendant may be able to prove that some class members did not rely on," or otherwise were not harmed by, the challenged statements. *Id.*

16

The court concluded that the challenged statements were "material"—and that it therefore could presume injury on a classwide basis—by pointing to internal documents suggesting that Nestlé USA employees thought "sustainability" was generally important to consumers. 1-ER-19-20. The court dismissed Nestlé USA's evidence showing that the statements were not in fact material to most class members as relevant only to the "merits," but added that even if it were to consider the arguments, it would reject them on the grounds that they "show[] that consumers had multiple reasons for their purchasing decisions." 1-ER-20 n.8.

The court also determined that Nestlé USA's evidence showing a lack of classwide exposure affects only "the merits." 1-ER-21. The court again added that if it were to address those arguments, it would reject them on the theory that "all class members by definition received the representations." *Id.* In support, the court cited evidence it believed indicated that Nestlé USA had intentionally put the statements "on the back" of the packaging, thought those statements were "important," and "intended" for consumers to see them. *Id.*

Turning to damages, the court ruled that Falcone did not need to offer any expert damages model and instead "can assert a full refund theory of recovery" on a classwide basis. 1-ER-23. The court deemed that model appropriate on the theory that there are "strong consumer feelings" about the labor issues alleged in the complaint. *Id.* The court also rejected Nestlé USA's evidence showing that most consumers did not find the products to be "worthless," again dismissing that evidence as presenting "a merits issue not decided at class certification." 1-ER-24. Because the court did not rely on Plaintiffs' belated expert reports in certifying the classes, it denied Nestlé USA's motion to strike as moot. 1-ER-26.

## SUMMARY OF ARGUMENT

**I.** This Court should reverse the order granting class certification because Falcone failed to carry her burden to prove that either Rule 23(a)(1)'s commonality requirement or Rule 23(b)(3)'s predominance requirement was satisfied. As the party seeking certification, Falcone had to prove that the issues affecting each class member's ability to recover can be resolved on a classwide basis, without a need for extensive individualized factfinding. But Falcone didn't show that

the claims she advances—which require proof of (i) exposure, (ii) deception, and (iii) materiality, *Downey v. Pub. Storage, Inc.*, 44 Cal. App. 5th 1103, 1108 (2020)—can be resolved on a classwide basis. To the contrary, the record shows that each of those elements is beset with individualized issues incapable of classwide resolution.

**A.** Consumers can bring false-advertising claims only if they were "exposed to" the misrepresentations they challenge. *Downey*, 44 Cal. App. 5th at 1115. So any false-advertising class must include only those people who actually saw the supposed misrepresentations. *E.g.*, *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1237 (9th Cir. 2024). If class members were "never exposed to the challenged" statements, they "could not have been injured by those [statements] in the first place," and no class can be certified. *Castillo v. Bank of Am., NA*, 980 F.3d 723, 732 (9th Cir. 2020). Unrebutted evidence here demonstrates that the vast majority of consumers in the class never saw, and thus couldn't have been exposed to, the mostly back-label statements Falcone challenges.

The district court didn't disagree; it just concluded that exposure could be resolved classwide because class members "by

19

definition" were exposed to all statements on all products they bought. 1-ER-21. But this Court and California courts alike have rejected that presumed-exposure workaround, emphasizing that all class members must "have *viewed* the allegedly misleading [statements]." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012) (emphasis added), *overruled in other part by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) (en banc); *accord, e.g.*, *Downey*, 44 Cal. App. 5th at 1117; *Sevidal v. Target Corp.*, 189 Cal. App. 4th 905, 910 (2010).

The district court's inclination to treat exposure as a "merits" issue that can't be addressed at class certification, 1-ER-21, similarly contravenes decades of precedent. *Mazza*, 666 F.3d at 596; *Castillo*, 980 F.3d at 730; *see Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 & n.6 (2011). Without classwide proof, individualized issues relating to each class member's exposure to the challenged statements, and thus each class member's ability to prevail under California law or show an injury in fact as Article III requires, would quickly overrun class proceedings.

**B.** Consumer-fraud plaintiffs seeking certification must also show that resolving whether the challenged statements were "deceptive" can be accomplished on a classwide basis. *Downey*, 44 Cal. App. 5th at 1115. But in this case, there is substantial "variance" across 59 labels that say different things in different ways, presenting a "crucial issue" that "must be resolved on an individual . . . basis." *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1069 (9th Cir. 2014), *abrogated in other part by Microsoft Corp. v. Baker*, 582 U.S. 23 (2017). Not only that, but the statements at issue—for instance, that cocoa is "responsibly" or "sustainably sourced"—cannot be judged as "true" or "false" through common proof because they have no "objective definition" and instead are subject to "divergent consumer[] expectations." *Bustamante v. KIND, LLC*, 100 F.4th 419, 433 (2d Cir. 2024). Unrebutted evidence shows that real-life consumers react to these statements dramatically differently, but those issues are largely ignored in the certification order.

**C.** Consumer-fraud plaintiffs also can't obtain certification unless they provide evidence showing, on a classwide basis, that the alleged misrepresentations were "material as to *all class members*."

*Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022-23 (9th Cir. 2011) (emphasis added), *abrogated in other part by Comcast Corp. v. Behrend*, 569 U.S. 27 (2013); *accord, e.g.*, *Tucker v. Pac. Bell Mobile Servs.*, 208 Cal. App. 4th 201, 222 (2012); *Fairbanks v. Farmers New World Life Ins. Co.*, 197 Cal. App. 4th 544, 565-66 (2011). But for two reasons, Falcone didn't meet that burden. For one, she presented no classwide evidence indicating that the "challenged statements would be materially misleading to a reasonable consumer," *Lytle v. Nutramax Labs., Inc.*, 114 F.4th 1011, 1035 (9th Cir. 2024), and the district court relieved her of that burden only by mistakenly concluding that materiality was an off-limits "merits" issue, 1-ER-20. And for another, Nestlé USA rebutted any presumption of materiality by showing that as many as three-quarters of consumers don't make purchasing decisions—especially for low-cost items like chocolate—based on concerns about the supply chain being linked to West African countries.

**II.** Certifying the Rule 23(b)(3) class was also improper because Falcone's "total refund" damages model is an arbitrary measure disconnected from the claims she asserts and the evidence, violating the rule set out in *Comcast*, 569 U.S. 27.

**A.** Under *Comcast*, the plaintiff seeking certification must present a model showing "that damages are capable of measurement on a classwide basis." 569 U.S. at 34. That model cannot be "arbitrary"; it must closely match the claims the plaintiff has advanced and the remedies available under those claims. *Id.* at 34-36. Without such a model, individualized questions related to the measurement of each class member's damages would "inevitably overwhelm" common questions in a manner inconsistent with Rule 23(b)(3)'s predominance requirement. *Id.* at 34-35.

**B.** Falcone's full-refund model doesn't satisfy *Comcast*. Restitutionary remedies of the kind she seeks turn on the difference between the price the consumer paid and the value she received. *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 130-31 (2009). So if the products a consumer bought retain *some* value despite the alleged misrepresentations, she isn't entitled to a full refund. *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 794 (2015). Even if *some* consumers care a great deal about labor issues, Falcone hasn't produced evidence showing that *every one* of the millions of class members here do—or that they would all view the chocolate they bought as entirely

23

worthless once they learned of the alleged misrepresentations. Given the mismatch between the full-refund model and the claims and evidence here, Falcone has nothing to offer that could resolve the damages of many millions of class members on a classwide basis.

**III.** The district court also should not have certified an injunctive-relief class under Rule 23(b)(2). A plaintiff can't represent such a class unless she has Article III standing to seek prospective relief—i.e., unless she "'has suffered or is threatened with a concrete and particularized legal harm'" and a "'sufficient likelihood that [s]he will again be wronged in a similar way.'" *DZ Rsrv.*, 96 F.4th at 1240. Falcone can't make that showing. Whatever she thought of *former* Nestlé USA product labels, she's now seen the current labels and has testified that they are unobjectionable. And she can't claim that she has "'no way of determining'" whether the statements will remain true in the future, *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 971-72 (9th Cir. 2018), because she knows exactly where to go to find up-to-date information on Nestlé USA's cocoa sourcing. Falcone isn't entitled to seek injunctive relief to change Nestlé USA's labels, and that leaves the class without a suitable representative.

24

## STANDARD OF REVIEW

This Court generally reviews class-certification orders for abuse of discretion, but reviews "'for legal error under a de novo standard.'" *O'Connor v. Uber Techs., Inc.*, 904 F.3d 1087, 1094 (9th Cir. 2018). "[T]he district court never has discretion to get the law wrong." *Lara v. First Nat'l Ins. Co. of Am.*, 25 F.4th 1134, 1138 (9th Cir. 2022). At all times, "the party seeking class certification bears the burden of demonstrating that the requirements of Rules 23(a) and (b) are met." *Marlo v. UPS, Inc.*, 639 F.3d 942, 947 (9th Cir. 2011) (cleaned up).

## ARGUMENT

## I.  The District Court Erred in Certifying a Class That Lacks Commonality and Predominance.

To certify any class under Rule 23, a plaintiff must "demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). This requires more than just abstract "common questions"; the plaintiff must show that a class trial would be able to "'generate common *answers* apt to drive the resolution of the litigation.'" *Id.*

Rule 23's requirements are especially stringent for damages classes. Rule 23(b)(3), which governs damages classes, is "an

25

adventuresome innovation" "designed for situations in which class-action treatment is not as clearly called for." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) (cleaned up). So Rule 23(b)(3) comes with heightened standards, including the "demanding" predominance requirement. *Id.* A court may certify a damages class only where the plaintiff shows by a preponderance of the evidence that "'essential elements of the cause of action'" can be "established through a common body of evidence, applicable to the whole class," and that common questions "predominate" over individual ones. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 666 (9th Cir. 2022) (en banc). "'Showing predominance is difficult, and it regularly presents the greatest obstacle to class certification.'" *Small v. Allianz Life Ins. Co. of N. Am.*, 122 F.4th 1182, 1198 (9th Cir. 2024).

To determine whether there are common questions capable of classwide resolution and whether those questions predominate over individual ones, courts look to "the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). Falcone asserts false-advertising claims under the

26

CLRA and UCL, which require plaintiffs to "prove that (1) the class members were exposed to the advertisement, (2) the advertisement was deceptive, and (3) the deception was material." *Downey v. Pub. Storage, Inc.*, 44 Cal. App. 5th 1103, 1115 (2020); *accord Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012), *overruled in other part by Olean*, 31 F.4th 651.

In this case, each of these elements—exposure, deception, and materiality—cannot be proven on a classwide basis and instead will require individualized factfinding. Those "individualized inquiries into this standing issue would predominate over common questions," and the "presence of uninjured class members means that the class definition is fatally overbroad." *Olean*, 31 F.4th at 668-69 nn.12, 14.

### A. Questions Relating to Each Class Member's Exposure to the Challenged Statements Are Incapable of Classwide Resolution.

A consumer may bring a false-advertising claim only if she was "exposed to" the false statement. *Downey*, 44 Cal. App. 5th at 1115. Rule 23, a mere procedural mechanism, can't be used to "enlarge or modify" a consumer's substantive right to recover merely because her claims are resolved in a class proceeding. *Dukes*, 564 U.S. at 367

27

(quoting 28 U.S.C. § 2072(b)).  So a class of consumers pursuing false-advertising claims can be certified only if the class is "defined in such a way as to include only members who were exposed to advertising that is alleged to be materially misleading."  *Mazza*, 666 F.3d at 596; *accord, e.g.*, *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1237 (9th Cir. 2024) (class treatment appropriate only where "'the same material misrepresentations have actually been communicated to each member of a class'").  By contrast, certification is inappropriate where "a large portion of the proposed class was never exposed" to the challenged statements and so "could not have been injured by those [statements] in the first place."  *Castillo v. Bank of Am., NA*, 980 F.3d 723, 732 (9th Cir. 2020).

Unrebutted evidence in this case shows that the vast majority of consumers in the class never saw, and thus couldn't have been exposed to, the back-label statements Falcone challenges.  The only way to resolve whether particular class members saw particular statements would be to conduct mini-trials for each, making individual questions of exposure (and Article III standing) predominate.

1. **Most Class Members Never Saw the Challenged Statements.**

The district court certified a sweeping class of consumers who bought various Nestlé USA chocolate products over the last decade. 1-ER-26-27. During this period, Nestlé USA used 59 different labels on the products, each featuring some combination of six different challenged statements in different locations on the packages. 1-ER-12; *supra* at pp. 8-9. On its face, the class covers so many different statements on different labels of different products that there is no realistic way to establish uniform exposure across the class. *See, e.g.*, *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1069 (9th Cir. 2014) ("variance" in "signs in Home Depot stores" meant consumers were not "exposed to the same misrepresentations" and exposure therefore "must be resolved on an individual rather than a class-wide basis"), *abrogated in other part by Microsoft Corp. v. Baker*, 582 U.S. 23 (2017); *Am. Honda Motor Co. v. Superior Court*, 199 Cal. App. 4th 1367, 1379 (2011) (denying certification because of "wide variance in what class members were told").

But the problem goes deeper still.  Even focusing on just *one* of the products—a 12-ounce package of Toll House chocolate chips, which had the highest volume of sales of any of the products at issue—reveals that the vast majority of consumers never saw the challenged statements.

Nestlé USA's expert Dr. Kivetz explained, after surveying hundreds of California chocolate-chip consumers who had examined the 12-ounce packages, that "virtually *no one* indicated seeing any of the challenged" statements.  5-ER-723 ¶ 66.  When survey participants were asked to list "all the phrases, images, and information" they remembered right after viewing the package for at least 30 seconds, fewer than 1% reported seeing any of the statements.  5-ER-695.  Even when prompted with a list of statements that could have been on the label, only about 13% of participants reported having seen one of the statements.  *Id.*  Dr. Kivetz also concluded that a similar proportion of participants reported seeing the challenged statements even after being shown a control version of the label that did not contain the statements, suggesting that even these low figures were inflated by guesswork.  *Id.*

30

Dr. Kivetz's results are consistent with findings from market research Nestlé USA conducted before this litigation, which showed that few people even look at the area of the label with the challenged representations. 1-ER-21. They also comport with academic literature, which indicates that most consumers do not focus on small-font, back-label statements on packaging—especially for low-cost goods like chocolate. 5-ER-695-96. Common sense points in the same direction: consumers often "won't have the time or interest to read about the product on . . . the back of the box," so it's unsurprising that few consumers would have seen the back-label statements here. *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1018 (9th Cir. 2020) (cleaned up).

Falcone submitted no evidence to satisfy her burden to show classwide exposure or to counteract the wealth of evidence Nestlé USA presented. Falcone's own consumer-perception expert even testified that she bought one of the Nestlé USA products at issue without looking at the challenged statements. 2-ER-95. As the case comes to this Court, then, there is zero evidence that *all* members of the class saw the statements Falcone challenges, and every indication that many class members did *not* see them.

31

### 2. Class Members Who Did Not See Challenged Statements Were Not "Exposed" to Them.

The district court did not identify any reason to doubt Nestlé USA's evidence or dispute that most class members likely never saw the challenged statements. Instead, it concluded that "all class members *by definition*" were exposed to the statements because they were on the product labels and because some evidence suggested that Nestlé USA "intended" for consumers to see them. 1-ER-21 (emphasis added). But nothing in the decisions of this Court or California appellate courts supports the notion that exposure is established merely when consumers *could have* seen challenged statements or when the defendant *wanted* consumers to see them.

In addressing classwide exposure under California law, this Court explained that "[f]or everyone in the class to have been exposed to the [challenged] omissions," "everyone in the class [must] have *viewed* the allegedly misleading advertising." *Mazza*, 666 F.3d at 596 (emphasis added). The Court has never contradicted that line of reasoning or suggested that a mere "opportunity" to view a statement is enough. To the contrary, it has treated that principle as so

well established that decisions turning on it didn't warrant publication. *E.g.*, *Moorer v. StemGenex Med. Grp., Inc.*, 830 F. App'x 218, 220 (9th Cir. 2020) ("A class that includes those who never saw the alleged misrepresentation is overbroad because those persons were, by definition, not injured and cannot recover."); *Cabral v. Supple LLC*, 608 F. App'x 482, 483 (9th Cir. 2015) (similar).

This Court's approach to exposure aligns with that of California appellate courts, which consistently hold that consumers are not "exposed" to statements they never saw:

- In *Downey*, the California Court of Appeal found no uniform exposure to allegedly deceptive ads for storage-unit rentals because evidence showed that not all consumers "saw or heard" the ads. 44 Cal. App. 5th at 1117.

- In *Sevidal v. Target Corp.*, 189 Cal. App. 4th 905 (2010), the Court of Appeal held that there was no uniform exposure to an allegedly misleading "Made in USA" representation on a pop-up box on Target's website because "evidence shows the vast majority of absent class members never saw the Web page containing the alleged misrepresentation." *Id.* at 910.

- And in *Cohen v. DIRECTV, Inc.*, 178 Cal. App. 4th 966 (2009),
  "common issue[s] of fact d[id] not predominate . . . because the
  class would include subscribers who never saw" the challenged
  statements about high-definition TV quality "before deciding to
  purchase." *Id.* at 979.

This unbroken line of precedent makes sense. A consumer can't
possibly have been deceived or injured by something she never saw,
and an individual consumer couldn't bring a deception claim by alleg-
ing merely that *other people* saw deceptive ads. Consumers in a class
must be held to those limits, with class claims permitted only where
common exposure can be addressed on a classwide basis.

Because there is no classwide evidence of exposure here, and be-
cause unrebutted evidence shows that most members wouldn't have
seen the statements Falcone challenges, Falcone cannot satisfy either
Rule 23(a)'s commonality requirement nor Rule 23(b)(3)'s even stricter
predominance requirement.

### 3.    The District Court Erred in Bypassing These Individualized Issues.

The district court concluded that questions of exposure go "to the merits rather than class certification" and presumed for purposes of certification that all class members were exposed to the challenged statements.  1-ER-21.  In so doing, it erred in two respects.

*First*, exposure is not a "merits" issue out of bounds at class certification.  Whether a class "includes members who were not exposed to, and therefore could not have relied on, [the] allegedly misleading advertising" goes directly to the question whether "common issues of fact would . . . predominate." *Mazza*, 666 F.3d at 596; *see Castillo*, 980 F.3d at 730 ("If many class members have no claim whatsoever because they 'were never exposed to the challenged conduct to begin with,' the class does not satisfy Rule 23(b)(3).").  Those holdings follow the oft-repeated principle that courts must not "refus[e] to entertain arguments" going to "the propriety of class certification, simply because those arguments would also be pertinent to the merits." *Comcast*, 569 U.S. at 34; *accord, e.g.*, *Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, 594 U.S. 113, 122 (2021); *Dukes*, 564 U.S. at 351 & n.6.

35

*Second*, the court erred by presuming that all class members were exposed to the challenged statements, notwithstanding evidence showing the opposite. Although California courts apply a "presumption of reliance" in limited circumstances, the presumption does not apply where evidence shows "it is likely that many class members were never exposed to the allegedly misleading advertisements." *Mazza*, 666 F.3d at 595 (citing *In re Tobacco Cases II*, 46 Cal. 4th 298, 320 (2009)). The presumption applies only in the context of an "'extensive and longterm fraudulent advertising campaign'"—like the cigarette ads in *Tobacco Cases II*—and not where it is "'unreasonable to presume'" that "all of the members of [the] proposed class were exposed to [the] alleged deceptive practices." *Berger*, 741 F.3d at 1068-69.

*Mazza* and *Berger* faithfully track the approach of California appellate decisions holding that "[a]n inference of classwide reliance cannot be made where there is no evidence that the allegedly false representations were uniformly made to all members of the proposed class." *Davis-Miller v. Auto. Club of S. Cal.*, 201 Cal. App. 4th 106, 125 (2011); *accord, e.g.*, *Downey*, 44 Cal. App. 5th at 1123 (rejecting "'conclusive

36

presumption'" that "does not require a showing that consumers be exposed to a deceptive advertisement").

If applied broadly in the way the district court did here, the presumption of exposure would become an exception swallowing the rule that class members must "actually *prove*—not simply plead—that their proposed class" is fit for certification. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014). And it would result in certified classes full of consumers who were never exposed to challenged statements and who could never have a claim of their own—impermissibly "enlarg[ing] or modify[ing]" their "substantive right[s]" to recover. *Dukes*, 564 U.S. at 367 (quoting 28 U.S.C. § 2072(b)).

The limited back-label statements here fall far "'short of the extensive and longterm fraudulent advertising campaign'" required to justify a presumption of reliance, making it "'unreasonable to presume' that all class members were exposed" to the statements. *Berger*, 741 F.3d at 1068. "[W]ithout such exposure, consumers were not likely to be deceived," meaning many consumers have no claim and do not belong in a class raising false-advertising claims. *Id.* And determining whether each class member was exposed to any of the challenged

statements—and thus whether he even possibly could have been deceived or injured—would require "an involved inquiry for each person," which means "common questions do not predominate." *Lara v. First Nat'l Ins. Co. of Am.*, 25 F.4th 1134, 1139 (9th Cir. 2022); *accord Small*, 122 F.4th at 1198.

### 4. The Lack of Classwide Exposure Also Creates Issues of Article III Standing That Predominate Over Common Questions.

The lack of common exposure also raises constitutional standing issues. "'Article III standing requires a concrete injury even in the context of a statutory violation,'" and in a class action, "[e]very class member must have Article III standing in order to recover individual damages." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426, 431 (2021). At a minimum, then, courts must "determine whether individualized inquiries into this standing issue would predominate over common questions" before certifying a damages class. *Olean*, 31 F.4th at 668 n.12.[†]

---

[†] Although this Court has held that a class may be certified even when it contains members who lack Article III standing, *Olean*, 31 F.4th at 669, the Supreme Court recently granted certiorari to decide whether that's correct, *Lab'y Corp. of Am. v. Davis*, — S. Ct. —, 2025 WL 288305, at \*1 (Jan. 24, 2025). Given the unrebutted

Here, many class members lack Article III standing because they never saw the challenged statements, and so have suffered no "injury" traceable to anything Nestlé USA said.

Other courts have rejected certification on this ground in similar consumer-deception cases. For instance, in *Avritt v. Reliastar Life Insurance Co.*, 615 F.3d 1023 (8th Cir. 2010), the plaintiffs brought a California UCL claim based on their allegation that the defendant engaged in deceptive interest-crediting practices for retirement accounts. The court found it "unlikely that any misconduct could be uniformly established as to all purchasers" because the information received by class members varied. *Id.* at 1035. Given that evidence, at least some class members fell short of the "'irreducible constitutional minimum of standing'" because they could not show an "'injury in fact . . . that is fairly traceable to the challenged action of the defendant.'" *Id.* at 1034.

As in *Avritt*, so too here. Deception and injury cannot be "uniformly established as to all purchasers" of Nestlé USA chocolate

_____

evidence showing that most class members weren't exposed to the statements Falcone challenges, a decision in *Labcorp* holding that no class can be certified where some class members lack standing would constitute yet another ground for reversal.

39

because most consumers never saw the challenged statements and thus could not have been harmed by them. 615 F.3d at 1035. This creates individualized issues with respect to both the statutory claims at issue as well as Article III standing. Because those individualized issues predominate, certification was inappropriate.

### B. Individualized Issues Relating to Each Class Member's Understanding of the Challenged Statements Are Incapable of Classwide Resolution.

Any consumers who were exposed to the back-label statements Falcone challenges would still have to show that the statement was "deceptive" to prevail under the CLRA or UCL. *Downey*, 44 Cal. App. 5th at 1115. But deceptiveness cannot be established on a classwide basis here because the record shows that consumers understood the different statements Falcone challenges in differing ways.

As an initial matter, it's doubtful that any of the challenged statements are even *plausibly* deceptive to reasonable consumers. In fact, this Court recently affirmed dismissal of nearly identical claims based on alleged inferences about child labor that consumers took away from other chocolate labels with the Rainforest Alliance

40

logo. *Myers v. Starbucks Corp.*, 2024 WL 3102800, at *1 (9th Cir. June 24, 2024).

But even if some of the challenged statements *could* be deceptive, common evidence couldn't be used to establish that they were *uniformly* deceptive across the massive class involving 59 labels that say different things. *See supra* at pp. 8-9. CLRA and UCL claims are not subject to common proof where the challenged advertisements "varied over time" and disclosed different information. *Downey*, 44 Cal. App. 5th at 1118, 1122-23; *see Berger*, 741 F.3d at 1069 ("variance" in challenged statements "is a crucial issue" that "must be resolved on an individual rather than a class-wide basis"). Here, there is no way to establish uniform consumer understanding of the widely varying label statements over a decade's worth of product and packaging changes.

Deceptiveness is particularly insusceptible to common proof here because the statements have no "objective definition" and instead are subject to "divergent consumers' expectations," leaving no way "a trier of fact could apply these shifting definitions to reach a conclusion

41

as to whether the use of the [challenged statements] was deceptive." *Bustamante v. KIND, LLC*, 100 F.4th 419, 433 (2d Cir. 2024).

The evidence confirms that consumers interpret vague terms like "sustainable" and "responsible" to mean a variety of things and that most consumers do not interpret Nestlé USA's labels as saying or implying anything about child labor at all. Nestlé USA's expert, Dr. Kivetz, estimated that, at most, 3% of surveyed consumers interpreted Nestlé USA's labels as making any claim about child labor. 5-ER-774-78 ¶¶ 132-35. This is consistent with academic literature and pre-litigation studies, all of which show varying consumer understanding of terms like "sustainable," with very few consumers associating that term with child labor. 4-ER-664-66; 5-ER-788-89 ¶ 151.

The Second Circuit rejected CLRA and UCL claims in *Bustamante* for this reason. There, the plaintiff challenged "All Natural" labels. 100 F.4th at 433. The court of appeals noted that there was no "coherent" or "objective" definition of the term, so a factfinder would have no clear reference point for whether the labels were deceptive. *Id.* at 432-33. The same is true here: consumers have no uniform understanding of "responsibly sourced" or "sustainably sourced,"

42

which mean different things to different people. Similarly, whether the hundreds of millions of dollars spent by the Cocoa Plan would satisfy a consumer's expectation of what those terms mean presents an individualized question that is not susceptible to classwide proof.

Finally, that most consumers did not understand the challenged labels to refer to child labor means the class is full of consumers who were not injured under the core liability theory in this case, and thus lack Article III standing, which independently precludes certification. *Olean*, 31 F.4th at 669 n.14 (any class with a significant number of "uninjured class members . . . 'is defined too broadly to permit certification'").

## C. Individualized Issues Relating to Materiality and Reliance Preclude Certification.

Plaintiffs who "seek to certify a class aimed . . . at recovering restitution" under the CLRA or UCL "must prove that . . . the deception was material." *Downey*, 44 Cal. App. 5th at 1115; *see Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1095 (9th Cir. 2017) (requiring "proof that [they] sustained injury from relying on marketing statements"). By contrast, if the alleged misrepresentation "is not material as to *all*

*class members*," the class "should not be certified." *Stearns v. Ticket-master Corp.*, 655 F.3d 1013, 1022-23 (9th Cir. 2011) (emphasis added); *accord, e.g.*, *Tucker v. Pac. Bell Mobile Servs.*, 208 Cal. App. 4th 201, 222 (2012); *Fairbanks v. Farmers New World Life Ins. Co.*, 197 Cal. App. 4th 544, 565-66 (2011) (class treatment not appropriate where the alleged misrepresentations "may have been material to a sizeable" number of class members, but not "the entire class").

This Court applies a two-step analysis with respect to materiality. First, the plaintiff must present "evidence to show that the challenged statements would be materially misleading to a *reasonable consumer*." *Lytle v. Nutramax Labs., Inc.*, 114 F.4th 1011, 1035 (9th Cir. 2024) (emphasis added). If the plaintiff meets that burden, a "rebuttable" presumption of classwide reliance applies. *Id.* Second, the court must determine whether the presumption was overcome by evidence that "individualized assessments w[ould] be needed to determine whether any given class member actually relied on the label" in buying the product. *Id.* If so, the presumption is rebutted, and "'the class should not be certified.'" *Id.*

The district court here erred in both steps of this analysis.

44

*First*, the court didn't even make a threshold finding as to whether the challenged label statements would be material to reasonable consumers. It simply concluded that "because the question of materiality is an objective one, materiality can be proved through evidence common to the class." 1-ER-20. The district court mistakenly thought that it need not reach the issue because Falcone "need not prove materiality at the class certification stage." *Id.* But as this Court has explained, proving whether a challenged statement is material is a prerequisite to class certification because if the statement isn't material, then there is no presumption of reliance; instead, "the issue of reliance 'would vary from consumer to consumer' and the class should not be certified." *Stearns*, 655 F.3d at 1022-23; *see Lytle*, 114 F.4th at 1028, 1035. The conclusion that materiality is a common issue can be made "only after the district court consider[s] the relevant evidence of materiality." *Lytle*, 114 F.4th at 1035.

Falcone offered no "evidence to show that the challenged statements would be materially misleading to a reasonable consumer." *Lytle*, 114 F.4th at 1035. She cited general statistics suggesting that concepts like "sustainability" are important to consumers in the

45

abstract. 5-ER-862. But generic survey statistics are not helpful because they do not "adequately address the primary question," which is "how the 'reasonable consumer' understands the [challenged claims] *in the context of the products*." *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1099 (9th Cir. 2023) (emphasis added). Falcone's argument that some Nestlé USA employees thought the statements were important likewise doesn't move the needle; all that shows is that Nestlé USA "had its own conception of the" challenged statements, which does nothing to "reveal a reasonable consumer's understanding of" whether the statements were material. *Bustamante*, 100 F.4th at 433.

Given the lack of any "evidence to show that the challenged statements would be materially misleading to a reasonable consumer," Falcone did not show that a presumption of reliance applies, *Lytle*, 114 F.4th at 1035, and the district court erred in ruling otherwise.

*Second*, Nestlé USA has offered more than enough evidence to rebut any presumption of materiality in any event. After conducting multiple consumer surveys, Nestlé USA's expert concluded that the challenged statements "*do not* materially increase consumers'

46

likelihood of buying, or willingness to pay for," Nestlé USA products. 5-ER-803-05 ¶¶ 175-77. In fact, even Falcone's generic studies showed that 71% of consumers do *not* usually base their purchasing decisions on "concerns for issues such as the environment and social well-being" and that 67% of consumers do not "mak[e] purchasing decisions with sustainability in mind." 4-ER-467-68.

This sort of evidence has caused this Court and others to hold that the materiality of a challenged statement would vary from consumer to consumer. For instance, in *Stearns*, the Court explained that there were "myriad reasons that someone who was not misled" might have chosen to sign up for an allegedly deceptively advertised service. 655 F.3d at 1024. This Court thus concluded "that it cannot be said that the websites were 'materially deficient' as to the *entire class*." *Id.* (emphasis added). Similarly, in *Fairbanks*, 197 Cal. App. 4th 544, the court held that the materiality of statements about the permanence of life insurance policies would be subject to individual proof because the record revealed that people buy life insurance policies for many reasons unrelated to their permanence. *Id.* at 565; *see Lytle*, 114 F.4th at 1037-38. The evidence is even stronger here.

47

The district court disregarded Nestlé USA's evidence as relevant only to "a merits argument" that the court need not address at class certification. 1-ER-20. But a court must not "refus[e] to entertain arguments" going to "the propriety of class certification, simply because those arguments would also be pertinent to the merits." *Comcast*, 569 U.S. at 34. And this Court's decisions make clear that assessing evidence of materiality is *necessary* at class certification. In *Lytle*, for example, the Court held that that district court "correctly found that Plaintiffs had demonstrated that the presumption of reliance applied" only because the district court had examined the relevant evidence on what "a reasonable consumer would have understood the challenged statements to have promised" and found that the plaintiffs' evidence "'outweighed' the contrary evidence presented by" the defendants. 114 F.4th at 1035. And in *Stearns*, this Court evaluated "the present state of the record" and determined that the statements on a website "were 'materially deficient' as to" a reasonable consumer. 655 F.3d at 1024.

Because determining whether the challenged statements played a substantial role in Nestlé USA consumers' purchasing

48

decisions would thus "'vary from consumer to consumer,'" the class should not have been certified. *Stearns*, 655 F.3d at 1022-23.

## II. The District Court Also Erred in Accepting Falcone's "Full Refund" Damages Model.

The district court further erred in endorsing Falcone's "full refund" damages model, which requires assuming that *every* class member would view Nestlé USA chocolate without the challenged statements on the packaging as worthless. That model doesn't fit the claims of the proposed class, including because it contradicts extensive evidence showing that consumers would value other features of Nestlé USA products (such as taste and affordability). And apart from that ill-fitting model, Falcone has offered nothing capable "of establishing that damages are capable of measurement on a class-wide basis." *Comcast*, 569 U.S. at 34.

### A. *Comcast* Requires Plaintiffs to Offer a Damages Model That Comports with the Claims of the Class Members They Seek to Represent.

A class cannot be certified under Rule 23(b)(3) unless the plaintiff can "establish that damages are susceptible of measurement across the entire class." *Comcast*, 569 U.S. at 34-35. That rule, a

49

consequence of Rule 23(b)(3)'s "demanding" predominance requirement, ensures that "[q]uestions of individual damage calculations" do not "overwhelm questions common the class." *Id.* at 34.

*Comcast* does not require that damages models "be exact," 569 U.S. at 35, which is why "the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)," *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013). Rather, *Comcast* guarantees that the plaintiff's "model purporting to serve as evidence of damages in this class action . . . measure[s] only those damages attributable to" the claims of the class members. 569 U.S. at 35. *Comcast* thus serves not only the predominance requirement, but also the rule that Rule 23 can't be used to "enlarge . . . any substantive right" of class members by allowing them to recover damages based on evidence that wouldn't suffice in an individual action. *Wal-Mart*, 564 U.S. at 367 (quoting 28 U.S.C. § 2072(b)).

*Comcast* itself shows how this rule plays out. There, the plaintiffs asserted various theories of antitrust impact, but only one proved viable. 569 U.S. at 31. The plaintiffs' proposed damages model, however, failed to "isolate damages resulting from [that] one theory." *Id.*

50

at 32.  In reversing class certification, the Supreme Court explained that because of that defect, the plaintiffs' model could not "possibly establish that damages are susceptible of measurement across the entire class"—meaning that individualized damage questions would "inevitably overwhelm" common questions.  *Id.* at 34-35.

The Supreme Court rejected certification in *Comcast* even though the model the plaintiffs put forward purported to measure damages for all class members.  As the Court explained, without the necessary correspondence between the class members' claims and the damages model, "*any* method of measurement [would be] acceptable so long as it c[ould] be applied classwide, no matter how arbitrary the measurements [would] be."  569 U.S. at 36.  "Such a proposition would reduce Rule 23(b)(3)'s predominance requirement to a nullity."  *Id.*

This Court has since affirmed that aspect of *Comcast*.  Take *Nguyen v. Nissan North America, Inc.*, 932 F.3d 811 (9th Cir. 2019), which addressed a benefit-of-the-bargain measure of damages.  *Id.* at 817.  This Court rejected a *Comcast* argument only after concluding both that the damages model was generally "cognizable" *and* that

51

it comported with the arguments and evidence in the case. *Id.* at 819-22. It did the same in *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979 (9th Cir. 2015), concluding that a "Smart Pricing" model designed to measure the price advertisers would have paid if they "had sufficient data about the performance of ads" was sufficiently related to the claims and experiences of the class members. *Id.* at 982. And in *Olean*, this Court reiterated *Comcast*'s demand that any damages model must be "consistent with the plaintiffs' theory of liability," and approved the model only after determining that it was "capable of establishing [damages] for the class as a whole." 31 F.4th at 666 n.9, 675.

The *Comcast* rule isn't a formality to be skirted over. It is vital to any bid for certification under Rule 23(b)(3), whose stringent standards often preclude certification, *Small*, 122 F.4th at 1198. And without a model that complies with *Comcast*, a plaintiff cannot hope to show that class certification is warranted. As one court put it: "No damages model, no predominance, no class certification." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 254 (D.C. Cir. 2013).

**B.    Falcone's "Full Refund" Model Contravenes California Law, This Court's Decisions, and Undisputed Evidence in the Record.**

Falcone offered just one method of calculating damages on a classwide basis: assume that, without the challenged statements, the Nestlé USA products "are worthless" and require Nestlé USA to provide "a full refund of the purchase price for each class member." 5-ER-881. The district court accepted that model. 1-ER-22. In doing so, it overlooked a fundamental inconsistency between the claims here and the proposed model.

Under the UCL and CLRA, plaintiffs are not automatically entitled to a full refund even if they are "deceived by misrepresentations into making a purchase"; they can recover only the "extra money paid" as compared to the price they would have paid "but for the misrepresentation." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 329-30 (2011). A full-refund model has no place where, as here, many people still would have paid something for the products even without the challenged statements. And the district court's reasons for overlooking this issue wither under scrutiny.

**1.** Because *Comcast*'s mandate is that any classwide damages model must match the asserted theory of liability, 569 U.S. at 35-36, courts begin by assessing the claims asserted on behalf of the class members, *e.g.*, *Nguyen*, 932 F.3d at 818-19. The UCL and CLRA require courts to compare the original purchase price with whatever the plaintiff "otherwise would have been willing to expend" without the challenged statements. *Kwikset*, 51 Cal. 4th at 330.

In defending her model, Falcone put significant weight on the fact that the UCL and CLRA permit plaintiffs to seek restitution. 5-ER-882. But restitutionary remedies don't provide any way around the need to perform a real-world assessment of what each party would've paid absent the label statements. Rather, the "restitution" available under the UCL and CLRA is measured as "[t]he difference between what the plaintiff paid *and the value of what the plaintiff received*." *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 130-31 (2009) (emphasis added).

California courts have thus emphasized that, "no matter how [assertedly] egregious the defendant's conduct," plaintiffs are not entitled to a "full refund" as a restitutionary measure so long as they

"obtained value" from the products they bought. *Tobacco Cases II*, 240 Cal. App. 4th at 794. In *Tobacco Cases II*, for instance, the plaintiffs challenged terms such as "Lights," claiming they would deceive consumers into believing cigarettes were healthier. *Id.* at 784. The plaintiffs argued that the court could disregard fact-intensive questions about "the difference between what [consumers] paid for Marlboro Lights and the value they actually received" and instead award "a full refund of consumer expenditures" on the cigarettes. *Id.* The Court of Appeal rejected that argument, confirming that "the proper measure of restitution was the difference between the price paid and the actual value received." *Id.* at 787. And without evidence "establish[ing] any price/value differential," the court could not award restitution. *Id.* at 802.

Although this Court hasn't had the chance in a published opinion to address a full-refund model like Falcone's, it has rejected similar models in memorandum dispositions. In *Chowning v. Kohl's Department Stores, Inc.*, 733 F. App'x 404 (9th Cir. 2018), the Court recognized that a "'full refund' is unavailable" where the plaintiff "received some value" from the products. *Id.* at 406. So too in *Brazil v.*

*Dole Packaged Foods, LLC*, 660 F. App'x 531 (9th Cir. 2016), which explained that a full refund wouldn't be appropriate for class members claiming that an "All Natural" label was misleading given synthetic ingredients where the plaintiff hadn't shown the products to be "valueless." *Id.* at 535; *accord, e.g.*, *Reitman v. Champion Petfoods USA, Inc.*, 830 F. App'x 880, 882 (9th Cir. 2020). District courts, too, have explained that "the full refund model is not appropriate in mislabeled food and beverage cases, because the model fails to take into account that consumers still received some benefit when they consumed the product." *Capaci v. Sports Rsch. Corp.*, 2022 WL 1133818, at *16 (C.D. Cal. Apr. 14, 2022) (cleaned up). Those decisions are straightforward applications of *Comcast* and California law.

**2.** In resisting the foregoing, Falcone asked the district court to assume that, for *every* consumer and *every* Nestlé USA product at issue, the value of what they received is $0—i.e., that, without the challenged statements, the products are "worthless." 5-ER-882. Neither the cases nor the facts support this argument.

Falcone's chief case below was *Lambert v. Nutraceutical Corp.*, 870 F.3d 1170 (9th Cir. 2017), *vacated*, 586 U.S. 188 (2019). She

suggested that *Lambert* endorsed full-refund methods for all CLRA and UCL claims. 5-ER-882. Not at all: *Lambert* explained that full-refund models are permissible only "when a product is shown to be worthless" and approved such a model only because the plaintiff had "presented evidence that the product at issue was valueless." 870 F.3d at 1174, 1183. That conclusion was unremarkable: the product there was a sham aphrodisiac ("Cobra Sexual Energy," promising "'animal magnetism' and 'potency wood'") that, in reality, provided none of the promised benefits that led consumers to buy the product in the first place. *Id.* at 1175, 1183. The other decisions Falcone cited followed that pattern; each involved a product for which there would be "'no reason to buy'" it absent the misrepresentations. *E.g.*, *Capaci*, 2022 WL 1133818, at \*15; *see* 5-ER-882.

Falcone has offered zero evidence showing that the chocolate products here would be worthless to *every one* of the millions of California consumers who bought them, absent statements on the packaging about "responsible" or "sustainable" cocoa sourcing. That gap alone would require rejection of the full-refund model. But that model is all the more improper because the record reveals that many

consumers did *not* view the products as worthless. Falcone herself gave one example: she testified that she received value from the chocolate she bought because Nestlé USA's products "taste better" than other chocolates. 4-ER-502. Her experts offered still more evidence, providing a survey indicating that over 30% of chocolate consumers were at least "indifferent" to child labor in the supply chain. 3-ER-419. And Nestlé USA, too, presented evidence showing that the challenged statements wouldn't affect the price consumers were willing to pay, 5-ER-694-701—and the statements certainly wouldn't be *the sole reason* consumers bought the products.

This Court has encountered this scenario before. *Hodsdon v. Mars, Inc.*, 891 F.3d 857 (9th Cir. 2018), also involved claims about child labor in the cocoa supply chain. *Id.* at 859-60. As the Court explained, there's a difference between products that are "incapable of use by any consumer" (e.g., a laptop with a broken screen) and those for which asserted deficiencies affect only individual consumers' "subjective preferences." *Id.* at 864. Recognizing that the existence of child labor in the supply chain does not affect "chocolate's function as chocolate," this Court acknowledged what the evidence here

58

confirms: "some consumers of chocolate are not concerned about the labor practices used to manufacture the product." *Id.* That's correct and, although *Hodsdon* itself affirmed dismissal of a duty-to-disclose claim, its reasoning is fatal to Falcone's total-refund model.

Falcone can't insist that the Court assume, contrary to the hard facts in the record, that the only reason the entire class bought all the products was because of the challenged statements. Rule 23 "'does not set forth a mere pleading standard'"; plaintiffs seeking certification must prove it is warranted "through evidentiary proof." *Comcast*, 569 U.S. at 33. Allowing Falcone to obtain certification based on a mere assumption, and one contradicted by the facts at that, would permit her to "plead [her] way to class certification, which [she] may not do." *Black Lives Matter L.A. v. City of Los Angeles*, 113 F.4th 1249, 1264 (9th Cir. 2024).

**3.** The district court defended its acceptance of the full-refund method on three grounds, each of which amounted to legal error.

*First*, the district court invoked the California Supreme Court's decision in *Kwikset*. As the court viewed that decision, many consumers care about labor practices and other intangible qualities, and their

59

injuries cannot be "erased" based on the notion that one allegedly tainted product is "functionally equivalent" to another. 1-ER-23 (quoting *Kwikset*, 51 Cal. 4th at 329).

The district court misunderstood *Kwikset*'s relevance. That case addressed whether one consumer had standing to bring individual consumer-protection claims challenging "Made in USA" labels, which is why the California Supreme Court focused on the fact that such a label may "matter[]" to "*some* consumers," including the plaintiff. 51 Cal. 4th at 328-29 (emphasis added). Nothing in *Kwikset* suggested that a full-refund damages model would be appropriate for *every* consumer in a sweeping class. To the contrary, *Kwikset* reiterated that the relevant question is the price each consumer "might have been willing to pay if the product had been labeled accurately." *Id.* at 329. That aspect of the decision is irreconcilable with the district court's reasoning that *Kwikset* created a blanket rule under which every deceived consumer is entitled to recover the full purchase price of a product, no matter its true value.

The district court also made much of dicta from *Kwikset* discussing examples of features that *could* affect a product's value to

60

some consumers, 1-ER-23, but those examples only illustrate the sorts of individualized issues that preclude classwide application of a full-refund damages model here. True, "[w]hether a particular food is kosher or halal may be of enormous consequence to an observant Jew or Muslim," *Kwikset*, 51 Cal. 4th at 328—but anyone else who buys food that's mislabeled as kosher or halal wouldn't necessarily consider it *worthless*, even if he may have paid somewhat less for it. True, too, "[w]hether a wine is from a particular locale may matter to the oenophile," *id.*, but for most palates, a $30 bottle supposedly from Bordeaux doesn't suddenly become worth $0 if it turns out to be from California.

The question, then, isn't whether *some* people care about child labor. It's whether *every consumer* cares about that issue to such a uniform degree that she would not pay one penny for chocolate without back-label statements about the cocoa sourcing. The record forecloses an affirmative answer to that question—which means an across-the-board full-refund remedy isn't available. *Tobacco Cases II*, 240 Cal. App. 4th at 802.

*Second*, the district court mused that it wasn't a problem if the damages were "uncertain" or an "approximation." 1-ER-23. That's missing the point. If Falcone had offered a classwide model capable of measuring the prices each class member would have paid absent the challenged label statements, then a certain amount of imprecision wouldn't have precluded certification. But the issue here isn't a model that produces a result of $2.00 when damages in fact were $1.93. It's a model that, because it would grant everyone a *full refund* even when they would have paid *something* for the products absent the label statements, is wholly disconnected from the proper restitutionary remedy under California law. Apart from any issue about how "exact" a model is, the Supreme Court has rejected such an "arbitrary" measure of classwide damages. *Comcast*, 569 U.S. at 35.

*Third*, the district court treated the question "[w]hether the products are worthless" as "a merits issue not decided at class certification." 1-ER-24. The Supreme Court has corrected that error, too. The court of appeals in *Comcast* had reasoned that "an attack on the merits of the methodology had no place in the class certification inquiry," 569 U.S. at 32 (cleaned up)—only for the Supreme Court to

62

explain that a court may not "refus[e] to entertain arguments against [a] damages model that bore on the propriety of class certification, simply because those arguments would also be pertinent to the merits determination." *Id.* at 34. That's a principle the Supreme Court has long insisted on, *e.g.*, *Dukes*, 564 U.S. at 351-52 (citing *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982)), and repeated since, *e.g.*, *Goldman Sachs*, 594 U.S. at 122.

Falcone's full-refund model is an all-or-nothing proposition; without it, she has offered no other way for the district court to assess damages across the enormous class here. As in *Comcast*, a "straightforward application of class-certification principles" dictates the correct result: "[w]ithout presenting another methodology, [Falcone] cannot show Rule 23(b)(3) predominance," so the class "was improperly certified." 569 U.S. at 34.

## III. The District Court Further Erred in Certifying an Injunctive-Relief Class Because Falcone Lacks Standing to Seek Such Relief.

The district court also erred in ruling that Falcone may seek injunctive relief on behalf of a Rule 23(b)(2) class. No such class can be certified unless its representative has standing to seek that relief—

i.e., unless she demonstrates that she "'has suffered or is threatened with a concrete and particularized legal harm, coupled with a sufficient likelihood that [s]he will again be wronged in a similar way.'" *DZ Rsrv.*, 96 F.4th at 1240; *accord NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 926 F.3d 528, 533 (9th Cir. 2019).

In ruling that Falcone has standing to seek injunctive relief on behalf of a Rule 23(b)(2) class, the district court erred in two ways. First, Falcone faces no imminent risk of being deceived by Nestle's *current* labels, which Falcone described as "perfect." Second, the district court's conclusion that Falcone faces an imminent injury was based on her assertion that she "can no longer rely on" Nestlé USA's labeling, 1-ER-7, 1-ER-25, but that assertion can't be squared with the evidence—including Falcone's own testimony establishing that she knows *exactly* where to find the information substantiating the statements she challenges. Because Falcone has not shown any genuine likelihood of being deceived, she cannot "'realistically'" demonstrate any "imminent threat of future injury" and has no standing to seek injunctive relief. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967-69 (9th Cir. 2018).

### A. Falcone's Testimony Proves That She Is Satisfied with Nestlé USA's Current Labels.

"Past exposure" to alleged deception can't confer standing to seek an injunction unless a plaintiff "faces a 'real or immediate threat . . . that [s]he will again be wronged in a similar way.'" *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010). Falcone has not shown that she faces such a threat. To the contrary, she called the current Nestlé USA labels "perfect" and said she has every intention of buying them as currently labeled. 4-ER-527-30. Falcone cannot establish a risk of imminent harm from buying products with which she is entirely satisfied.

In ruling that Falcone had standing to seek injunctive relief, the district court relied on her statement that she no longer buys Nestlé USA products because she "do[esn't] know what to trust anymore." 1-ER-14. The court suggested that Nestlé USA was "misconstru[ing]" Falcone's testimony, 1-ER-6—but the only misconstruction was the district court's, which disregarded all of Falcone's detailed, contrary testimony revealing her lack of standing.

After initially expressing her doubts, Falcone was shown the Nestlé Cocoa Plan reports she thought had never been published. And after reading copies of the reports, Falcone agreed they proved that Nestlé USA was "putting [its] money where [its] mouth is" and "delivering" on the statements on its labels. 4-ER-537, 4-ER-540. Falcone also reviewed the current labels that had been in use for about five years before her deposition, which, to her "surprise[]," she found to be "perfect." 4-ER-529-31.

Falcone's earlier uncertainty about the trustworthiness of the labels, therefore, was based on a plain misunderstanding regarding the Nestlé Cocoa Plan reports and what the current labels actually say. Once Falcone saw the reports and current labels, she no longer held that view. Her testimony wasn't ambiguous on this point. She agreed that any "issues with the packaging" had "been remedied" by the labels Nestlé USA currently uses. 4-ER-526-27. Already "remedied" labels cannot possibly subject Falcone to any "'real or immediate threat'" of future harm. *Mayfield*, 599 F.3d at 970.

Falcone's resounding endorsement of the current labels goes deeper still. She testified that she has no issue with Nestlé USA's

66

labeling a cocoa product "sustainably sourced" so long as it follows the Rainforest Alliance's guidelines—which it does.  4-ER-513-14. By Falcone's account, "all [she] want[ed] to see happen" by bringing this case was for Nestlé USA to publish reports, continue making progress supporting cocoa farmers, and refrain from displaying the Nestlé Cocoa Plan logo on the front of packaging.  4-ER-500, 4-ER-533, 4-ER-536-37, 4-ER-540-41.  But there is no dispute that Nestlé USA has long satisfied those conditions since before Falcone became the plaintiff in this case.  4-ER-664-65, 4-ER-672-74.

Because Falcone approves of the current labels, she is at no risk of suffering a "repeated injury" from, and has no standing to represent an injunctive-relief class challenging, those labels.  *Davidson*, 889 F.3d at 967.

### B.  Falcone Has Not Shown That She Will Be Unable to Rely on Nestlé USA's Labels in the Future.

In limited circumstances, a previously deceived consumer "may" have standing to seek injunctive relief if she cannot buy a product because she is "unable to rely on" the statements on its labels in the future.  *Davidson*, 889 F.3d at 971-72.  That theory of

injury isn't available to Falcone, either. Far from having "'no way of determining'" the truth of the statements on Nestlé USA's labels, *id.*, Falcone acknowledged that she knows exactly how to verify those statements by accessing the regularly updated, publicly available Cocoa Plan reports.

Because Falcone must prove her Article III standing "with the manner and degree of evidence required at the successive stages of the litigation," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992), at this stage, she must prove that she has standing "by a preponderance of the evidence," *DZ Rsrv.*, 96 F.4th at 1240; *see also, e.g.*, *Dukes*, 564 U.S. at 350-52 (party seeking class certification must "affirmatively demonstrate" that all requirements are satisfied "*in fact*"). Her vague statement that she "do[esn't] know what to trust anymore," 1-ER-7, doesn't bring her over that line. Rather, her own testimony shows that she is happy with the current labels and that her earlier distrust was fueled by nothing more than misunderstandings about whether Cocoa Plan reports had been published and what the current labels looked like. *See supra* at pp. 11-12.

Even aside from these admissions, Falcone cannot prove she has standing to seek injunctive relief because she has a clear "'way of determining'" the accuracy of Nestlé USA's labels in the future. *Davidson*, 889 F.4th at 971-72. Specifically, she can look at the Cocoa Plan reports, all of which are hosted on a public website listed on every one of the challenged product labels, *see supra* at pp. 7-12.

In *Davidson*, the plaintiff challenged labels stating that a wipe was "flushable." 889 F.4th at 970-72. The plaintiff had no way to determine the accuracy of the label before buying (because the only way to see whether a wipe is "flushable" is by flushing it). This Court emphasized that the plaintiff's inability to "determine whether the representation 'flushable' is in fact true" before buying was central to her Article III standing to seek prospective relief. *Id.* at 971-72 (cleaned up).

Unlike the *Davidson* plaintiff, Falcone has not shown that she "has 'no way of determining'" whether Nestlé USA's labels are accurate. Nor could she. Falcone knows exactly where to find that information: in the Nestlé Cocoa Plan reports, which she cited in her complaint. 4-ER-489-90; 6-ER-911. She doesn't have to buy Nestlé USA's

69

products or eat the chocolate to know whether its cocoa meets her definition of "sustainably sourced"—all it takes is a quick visit to the Cocoa Plan website. Because Falcone has a clear way of verifying the veracity of Nestlé USA's product labels before purchase, she does not satisfy the *Davidson* standard. *See Kenney v. Fruit of the Earth, Inc.*, 2024 WL 4578981, at *1 (9th Cir. Oct. 25, 2024) (no standing for injunctive relief where plaintiff "need not purchase the [product] again to determine whether" its label was accurate).

This reading of *Davidson* is consistent with how other courts have assessed claims for injunctive relief in false-advertising cases. For instance, in *Berni v. Barilla S.p.A.*, 964 F.3d 141 (2d Cir. 2020), the court held the plaintiffs lacked standing to seek injunctive relief (a different pasta label), reasoning that even if the plaintiffs had "been deceived by the product's packaging once," the "next time they buy one of the newer pastas, they will be doing so with exactly the level of information that they claim they were owed from the beginning." *Id.* at 148. Likewise, in *In re Johnson & Johnson Talcum Powder Products Marketing, Sales Practices & Liability Litigation*, 903 F.3d 278 (3d Cir. 2018), the court rejected a claim seeking

injunctive relief, explaining that "[t]he premise that former customers could again be deceived by the very sort of advertising practices over which they were already pursuing equitable relief was a premise unmoored from reality," and Article III does not allow for "this sort of 'stop me before I buy again' claim." *Id.* at 292-93; *see also Conrad v. Boiron, Inc.*, 869 F.3d 536, 542 (7th Cir. 2017) (where the plaintiff was "fully aware of the fact that [the challenged product] is nothing but sugar water," an injunction could not "redress any potential injury for him, and that lack of redressability defeats standing").

Although *Davidson* recognized that consumers *may* have standing to sue even after learning of a deception, it did not hold that a previously deceived consumer *automatically* has standing to seek prospective relief. A plaintiff cannot manufacture injury to force a labeling change by crying deception when the truth is easy to find. Such a rule would create an incurable defect, where a consumer would have standing to sue to change a company's labels even if the company provided all the information to assess the accuracy of the label statements with every product. Instead, a plaintiff must show an "*inability* to rely on the validity of the information advertised."

71

*Davidson*, 889 F.3d at 971 (emphasis added). Here, Falcone has provided *no* evidence of a threat of future harm, and thus does not have standing to seek injunctive relief on behalf of herself or a class.

## CONCLUSION

The Court should reverse the order granting class certification.

Dated: March 10, 2025

Respectfully submitted,

/s/ Theodore J. Boutrous Jr.
Theodore J. Boutrous Jr.

*Counsel for Appellant*
*Nestlé USA Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**  24-7707

I am the attorney or self-represented party.

**This brief contains**  13,873  **words,** including  659  words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

⦿ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated [               ].

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**  s/ Theodore J. Boutrous Jr.  **Date**  March 10, 2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**                                                                 *Rev. 12/01/22*

## CERTIFICATE OF SERVICE

I certify that on March 10, 2025, I electronically filed the following with the Clerk of Court for the U.S. Court of Appeals for the Ninth Circuit using the ACMS system:

> Appellant's Opening Brief
> Excerpts of Record, Index Volume
> Excerpts of Record, Volumes 1-6

Counsel for the parties to the case are registered ACMS users and will be served by that system.

Dated:  March 10, 2025               Respectfully submitted,

                                     /s/ Theodore J. Boutrous Jr.
                                     Theodore J. Boutrous Jr.

                                     *Counsel for Appellant*
                                     *Nestlé USA Inc.*