No. 24-7707

---

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

MARIE FALCONE, *individually and on behalf of
all others similarly situated*,
Plaintiff-Appellee,

v.

NESTLÉ USA, INC., *a Delaware Corporation*,
Defendant-Appellant.

---

On Appeal from the United States District Court
for the Southern District of California, San Diego Division
Case No. 3:19-cv-00723-L-DEB, Honorable M. James Lorenz, Presiding

---

## ANSWERING BRIEF OF PLAINTIFF-APPELLEE
## MARIE FALCONE [REDACTED]

---

Helen I. Zeldes
Joshua A. Fields
**SCHONBRUN SEPLOW
HARRIS HOFFMAN &
ZELDES, LLP**
501 West Broadway, Suite 800
San Diego, California 92101
Telephone: (619) 400-4990

George V. Granade
**REESE LLP**
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070

*Counsel for Plaintiff-Appellee Marie Falcone and the Class*
[Additional Counsel Listed on Signature Page]

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................iv

INTRODUCTION ........................................................................................1

JURISDICTIONAL STATEMENT ............................................................2

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ..............2

STATEMENT OF THE CASE ...................................................................3

SUMMARY OF ARGUMENT ...................................................................5

STANDARD OF REVIEW.........................................................................7

ARGUMENT ..............................................................................................8

I.    The District Court Correctly Held the Damages Class
Satisfies Commonality and Predominance ......................................8

    A.    The Elements of Falcone's UCL and CLRA Claims Are
Well Suited for Class Certification...........................................9

    B.    The District Court Correctly Held the Exposure
Requirement Is Met Because All Class Members
Received the Sustainability Representations .......................13

    C.    No Uniform Understanding Is Required ...............................37

    D.    Materiality Is a Common Question .......................................40

II.    Plaintiff's Full Refund Damages Model Supports Class
Certification.....................................................................................43

    A.    Plaintiff's Full Refund Damages Model Comports With
Her Theory of Liability ..........................................................45

# TABLE OF CONTENTS - CONT'D

B.    Plaintiff's Full Refund Damages Model is in Accord with This Court's Decisions and California Law .................53

III.  The District Court Correctly Applied Settled Law When it Held Plaintiff Has Standing to Seek Injunctive Relief .................61

A.    Plaintiff Has Standing to Seek Injunctive Relief .................63

B.    The District Court's Certification of the Injunctive Relief Class under Rule 23(b)(2) Is Appropriate .................66

CONCLUSION .........................................................................70

CERTIFICATE OF COMPLIANCE.........................................71

# TABLE OF AUTHORITIES

*Federal Cases*                                              *Page(s)*

*Allegra v. Luxottica Retail N. Am.*,
  341 F.R.D. 373 (E.D.N.Y. 2022) ........................................................ 31

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013) ............................................................. 12, 29, 41

*Avritt v. Reliastar Life Ins.*,
  615 F.3d 1023 (8th Cir. 2010) ......................................................... 36

*Bailey v. Rite Aid Corp.*,
  2021 WL 4469638 (N.D. Cal. May 26, 2021) ........................ 23, 25, 32

*Bates v. UPS*,
  511 F.3d 974 (9th Cir. 2007) ........................................................... 62

*Berger v. Home Depot United States, Inc.*,
  741 F.3d (9th Cir. 2014) ................................................................... 16

*Berni v. Barilla S.p.A.*,
  964 F.3d 141 (2d Cir. 2020) ............................................................. 68

*Bradach v. Pharmavite, LLC*,
  735 F. App'x 251 (9th Cir. 2018) ...................................................... 37

*Brazil v. Dole Packaged Foods, LLC*,
  660 F. App'x 531 (9th Cir. 2016) ...................................................... 55

*Bush v. Rust-Oleum Corp., No. 20-cv-03268-LB*,
  2024 WL 422080 (N.D. Cal. Feb. 5, 2024) ........................................ 42

*Bustamante v. KIND, LLC*,
  100 F.4th 419 (2d Cir. 2024) ........................................................... 39

*Cabral v. Supple LLC*,
  608 F. App'x 482 (9th Cir. 2015) ...................................................... 29

*Cabrera v. Google LLC, No. 5:11-cv-01263-EJD*,
  2023 WL 5279463 (N.D. Cal. Aug. 15, 2023) ............................... 14, 50

## TABLE OF AUTHORITIES – CONT'D

*Federal Cases - Continued*                                    *Page(s)*

*Capaci v. Sports Research Corp., No. 19-cv-03440-FMO-FFM,*
   2022 WL 1133818 (C.D. Cal. Apr. 14, 2022) .......................... 54, 55-56

*Castillo v. Bank of Am., NA,*
   980 F.3d 723 (9th Cir. 2020) ....................................................... 28-29

*Chamberlan v. Ford Motor Co.,*
   402 F.3d 952 (9th Cir. 2005) .............................................................. 69

*Chowning v. Kohl's Dep't Stores, Inc.,*
   733 F. App'x 404 (9th Cir. 2018) ....................................................... 55

*Clay v. CytoSport, Inc.,*
   2018 WL 4283032 (S.D. Cal. Sept. 7, 2018) .......................... 10, 11, 12

*Clevenger v. Welch Foods Inc.,*
   342 F.R.D. 446 (C.D. Cal. 2022) ................................................. 41, 42

*Comcast Corp. v. Behrend,*
   569 U.S. 27 (2013) ................................................................ 45, 58, 60

*Conrad v. Boiron, Inc.*
   Conrad v. Boiron, Inc., 869 F.3d 536 (7th Cir. 2017) ........................ 69

*Davidson v. Kimberly-Clark Corp.,*
   889 F.3d 956, 970 (9th Cir. 2018) ............................................. *passim*

*DZ Rsrv. v. Meta Platforms, Inc.,*
   96 F.4th 1223 (9th Cir. 2024) .................................................... *passim*

*Elkies v. Johnson & Johnson Servs., Inc., No. 17-cv-07320-GW-JEM,*
   2018 WL 11223465 (C.D. Cal. Oct. 18, 2018) .............................. 38, 59

*Erica P. John Fund, Inc. v. Halliburton Co.,*
   563 U.S. 804 (2011) ........................................................................... 10

*Falcone v. Nestlé USA, Inc.,*
   2024 WL 4868298 (S.D. Cal. Sept. 26, 2024) ................................... 3, 5

# TABLE OF AUTHORITIES – CONT'D

*Federal Cases - Continued*                                    *Page(s)*

*Falcone v. Nestlé, USA, Inc.,*
2023 WL 4551083 (S.D. Cal. July 13, 2023) ...................................... 39

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.,*
326 F.R.D. 592 (N.D. Cal. 2018) ............................................ 37-38, 43

*FTC v. Figgie Int'l,*
994 F.2d 595 (9th Cir. 1993) ............................................................ 50

*Guzman v. Polaris Indus., Inc.,*
345 F.R.D. 174 (C.D. Cal. 2023) ...................................................... 42

*Hadley v. Kellogg Sales Co.,*
324 F. Supp. 3d 1084 (N.D. Cal. 2018) ............................................ 42

*Hawkins v. Kroger Co.,*
337 F.R.D. 518 (S.D. Cal. 2020) ...................................................... 52

*Hodsdon v. Mars, Inc.*
Hodsdon v. Mars, Inc., 891 F.3d 857 (9th Cir. 2018) ........................ 57

*In re Arris Cable Modem Consumer Litig.,*
327 F.R.D. 334 (N.D. Cal. 2018) ................................................. 31, 33

*In re Johnson & Johnson Talcum Powder Products Marketing, Sales
Practices & Liability Litigation,*
903 F.3d 278 (3d Cir. 2018) ......................................................... 68-69

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.,*
609 F. Supp. 3d 942 (N.D. Cal. 2022) .................................... 23, 35, 37

*In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Pracs. Litig.,*
422 F. Supp. 3d 194 (D.D.C. 2019) .................................................. 43

*Keating v. Nordstrom, Inc.,*
2020 U.S. Dist. LEXIS 63124 (D. Alaska Apr. 10, 2020) ................. 59

*Kenney v. Fruit of the Earth, Inc.,*
2024 WL 457898 (9th Cir. Oct. 25, 2024) .......................................... 67

## TABLE OF AUTHORITIES – CONT'D

*Federal Cases - Continued*                                    *Page(s)*

*Krommenhock v. Post Foods, LLC*,
   334 F.R.D. 552 (N.D. Cal. 2020) ................................................. *passim*

*Kumar v. Salov N. Am. Corp.*,
   2016 WL 3844334 (N.D. Cal. July 15, 2016) ...................................... 21

*Lambert v. Nutraceutical Corp.*,
   870 F.3d 1170 (9th Cir. 2017) ...................................... 45, 49-50, 52, 59

*Leyva v. Medline Indus. Inc.*,
   716 F.3d 510 (9th Cir. 2013) ............................................................. 52

*Lytle v. Nutramax Lab'ys, Inc.*,
   114 F.4th 1011 (9th Cir. 2024) ........................................... 1, 45, 52, 53

*Lytle v. Nutramax Lab'ys, Inc., No.* 19-cv-00835-FMO-SP,
   2022 WL 1600047 (C.D. Cal. May 6, 2022) ....................................... 37

*Mazza v. American Honda Motor Co.*,
   666 F.3d (9th Cir. 2012) ........................................................ 25, 26, 27

*McGinity v. Procter & Gamble Co.*,
   69 F.4th 1093 (9th Cir. 2023) ............................................................ 42

*McGregor v. Chierico*,
   206 F.3d 1378 (11th Cir. 2000) ......................................................... 50

*McMorrow v. Mondelēz Int'l, Inc., No.* 17-cv-2327-BAS-JLB,
   2021 WL 859137 (S.D. Cal. Mar. 8, 2021) ......................................... 60

*Mednick v. Precor, Inc., No. 14 C 3624*,
   2017 WL 2619139 (N.D. Ill. June 16, 2017) ................................. 50-51

*Montera v. Premier Nutrition Corp.*,
   111 F.4th 1018 (9th Cir. 2024) ..................................................... 59-60

*Moore v. Mars Petcare US, Inc.*,
   966 F.3d 1007 (9th Cir. 2020) ................................................ 33, 10, 12

## TABLE OF AUTHORITIES – CONT'D

*Federal Cases - Continued*                                    *Page(s)*

*Moorer v. StemGenex Med. Grp., Inc.*,
   830 F. App'x 218 (9th Cir. 2020) ........................................................ 28

*Myers v. Starbucks Corp., No. 22-55930*,
   2024 WL 3102800 (9th Cir. June 24, 2024) ........................................ 38

*Nguyen v. Nissan North America, Inc.*,
   932 F.3d 811 (9th Cir. 2019) ........................................................ 45, 53

*Nutraceutical Corp. v. Lambert*,
   586 U.S. 188 (2019) ............................................................................ 54

*Orshan v. Apple Inc., No. 5:14-cv-05659-EJD*,
   2023 WL 3568079 (N.D. Cal. Mar. 31, 2023) .................................... 40

*Prescott v. Reckitt Benckiser LLC*,
   2022 WL 3018145 (N.D. Cal. July 29, 2022) ............................. *passim*

*Pulaski & Middleman, LLC v. Google, Inc.*,
   802 F.3d 979 (9th Cir. 2014) ............................................................. 58

*Reitman v. Champion Petfoods USA, Inc.*,
   830 F. App'x 880 (9th Cir. 2020) ...................................................... 55

*Rodman v. Safeway, Inc.*,
   694 F. App'x 612 (9th Cir. 2017) ...................................................... 37

*Shank v. Presidio Brands, Inc., No. 17-cv-00232-DMR*,
   2018 WL 1948830 (N.D. Cal. Apr. 25, 2018) .................................... 67

*Smith v. Keurig Green Mountain, Inc., No. 18-cv-06690-HSG*,
   2020 WL 5630051 (N.D. Cal. Sept. 21, 2020) ............................... 42-43

*Stearns v. Ticketmaster Corp.*,
   655 F.3d 1013 (9th Cir. 2011) ................................................... *passim*

*Suchanek v. Sturm Foods, Inc.*,
   311 F.R.D. 239 (S.D. Ill. 2015) ........................................................ 53

# TABLE OF AUTHORITIES – CONT'D

*Federal Cases - Continued*                                      *Page(s)*

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ............................................................ 62

*Tait v. BSH Home Appliances Corp.*,
   289 F.R.D. 466 (C.D. Cal. 2012) ......................................... 26

*Testone v. Barlean's Organic Oils, LLC*,
   2021 WL 4438391 (S.D. Cal. Sept. 28, 2021) ..................................... 23

*Tucker v. Post Consumer Brands, LLC, No. 19-cv-03993-YGR*,
   2020 WL 1929368 (N.D. Cal. Apr. 21, 2020) ..................................... 67

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) ............................................................ 9

*Van v. LLR, Inc.*,
   61 F.4th 1053 (9th Cir. 2023) ............................................ 60

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ............................................................ 9

*Waldrup v. Countrywide Fin. Corp.*,
   2018 WL 799156 (C.D. Cal. Feb. 6, 2018) ......................................... 59

*Walker v. Life Ins. Co. of the Sw.*,
   953 F.3d 624, 631 (9th Cir. 2020) .............................................. *passim*

*Waller v. Hewlett-Packard Co.*,
   295 F.R.D. 472 (S.D. Cal. 2013) ......................................... 38

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) ....................................... 10, 12

*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010) ............................................. 1

## TABLE OF AUTHORITIES – CONT'D

*State Cases*                                                        *Page(s)*

*Bank of the W. v. Superior Ct.*,
    833 P.2d 545 (Cal. 1992) (en banc) ................................................... 15

*Cohen v. DIRECTV, Inc.*,
    101 Cal. Rptr. 3d 37 (Ct. App. 2009) ................................................. 28

*Comm. On Children's Television, Inc. v. Gen. Foods Corp.*,
    673 P.2d 660 (Cal. 1983) (en banc) .............................................. 15-16

*Davis-Miller v. Auto. Club of S. California*,
    134 Cal. Rptr. 3d 551 (Ct. App. 2011) .............................................. 28

*Downey v. Pub. Storage, Inc.*,
    258 Cal. Rptr. 3d 290 (Ct. App. 2020) .................................. 27, 26, 27

*In re Tobacco II,*
    240 Cal. App. 4th 779 (2015) ...................................................... 54, 55

*Kasky v. Nike, Inc.*,
    27 Cal. 4th 939 (2002) ....................................................................... 45

*Kwikset Corp. v. Superior Ct.*,
    51 Cal. 4th 310 (2011) ............................................... 43, 46, 48, 56, 58

*Massachusetts Mut. Life Ins. v. Superior Ct.*,
    119 Cal. Rptr. 2d 190 (Ct. App. 2002) ......................................... 12, 16

*McAdams v. Monier, Inc.*,
    105 Cal. Rptr. 3d 704 (Ct. App. 2010) .............................................. 12

*Sevidal v. Target Corp.*,
    117 Cal. Rptr. 3d 66 (Ct. App. 2010) ................................................ 28

*Weinstat v. Dentsply Internat., Inc.*,
    103 Cal. Rptr. 3d 614 (Ct. App. 2010) ......................................... 17, 18

## TABLE OF AUTHORITIES – CONT'D

*State Statutes*                                                    *Page(s)*

Cal. Bus. & Prof. Code § 17200 ............................................................... 10

Cal. Bus. & Prof. Code § 17203 ................................................... 11, 13, 14

Cal. Bus. & Prof. Code § 17204 ............................................................... 10

Cal. Bus. & Prof. Code § 17580.5 ........................................................... 43

Cal. Civ. Code § 1770 .............................................................................. 11

Cal. Civ. Code § 1780 .............................................................................. 11

### *Other*

19 U.S.C. § 1307 ...................................................................................... 51

Federal Civil Procedure Rule 23 ..................................................... *passim*

## **INTRODUCTION**

It is important to note at the outset that this appeal pertains only to an order granting class certification and that discovery on the merits has not been completed.

The Honorable M. James Lorenz – a highly respected senior judge with over twenty-five years of judicial experience as a federal judge – certified the class after he correctly examined the evidentiary record and considered all the requirements of Federal Civil Procedure Rule 23. Under governing Ninth Circuit law, the District Court's certification decision can only be reversed for an abuse of discretion. *Lytle v. Nutramax Lab'ys, Inc*., 114 F.4th 1011, 1023-24 (9th Cir. 2024) (We review the "decision to certify a class and any particular underlying Rule 23 determination involving a discretionary determination for *an abuse of discretion*...We review evidentiary rulings for *an abuse of discretion*….We review factual findings underlying a class certification *ruling for clear error*."). Moreover, "[w]hen reviewing a grant of class certification, we accord the district court noticeably more deference than when we review a denial of class certification." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1171 (9th Cir. 2010).

1

Despite the strict standard and narrow scope of review, Defendant-Appellant Nestlé USA, Inc. ("Defendant" or "Nestlé") attacks Judge Lorenz's decision. But Nestlé has failed to meet the standard and show that Judge Lorenz's decision was an abuse of discretion. For this reason alone, the appeal should be denied.

## JURISDICTIONAL STATEMENT

Falcone agrees with Nestlé's statements of the basis for claiming the challenged order is appealable; the statutory basis of jurisdiction of this Court; the dates of the challenged order and the petition for review; and the rule under which the appeal is timely.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.     Should the Court reverse the District Court's grant of class certification based on Defendant's improper attempt to apply an incorrect standard where the challenged misrepresentations appeared on every label at issue?

2.     Should the Court reverse the District Court's grant of class certification based on Defendant's mischaracterization of the evidence?

3. Should the Court reverse the District Court's grant of class certification where the Plaintiff offered a damages theory applicable to all class members?

4. Should the Court reverse the District Court's certification of an injunctive relief class even though the District Court applied the correct standard?

## STATEMENT OF THE CASE

Nestlé is the world's largest food company and is best known for its chocolate products. It purchases approximately 414,000 tons of cocoa annually. *See Falcone v.* Nestlé *USA, Inc.*, 2024 WL 4868298, at \*1 (S.D. Cal. Sept. 26, 2024).

Nestlé is well-aware that child labor is rampant in its chocolate supply chain and that these children are subjected to what the International Labor Organization terms the "Worst Forms of Child Labor" – including trafficking, slavery, and exposure to toxic chemicals and hazardous tools. [Excerpts of Record ("ER") 6-ER-890, 893, 901-2, 904, 907.] Despite its claims that its "Nestlé Cocoa Plan" ("NCP") "works to improve conditions in cocoa-farming communities" [Appellant's Opening Brief ("AOB") 7] Nestlé's own documents show that child labor

3

has increased in Côte D'Ivoire – where Nestlé gets much of its chocolate for its cocoa - over that period [6-ER-894,12-13, 904]. Nestlé is also aware that the "[c]hocolate industry drives rainforest disaster in [the] Ivory Coast"—and that at the current pace of deforestation, there will be no forest left in the Ivory Coast by 2030. [6-ER-890-1].

Nestlé nevertheless markets its products as "sustainably sourced", "responsibly sourced", using "sustainably harvested cocoa beans", that "improve the lives of cocoa farmers", and provides "better lives" while flaunting the "Nestlé Cocoa Plan", "Rainforest Alliance" and/or "Utz" logos (collectively the "Sustainability Representations"). [6-ER-892]. As the demand for sustainably and ethically sourced goods has skyrocketed, cocoa with "sustainability" labeling claims has too - outselling cocoa without such claims more than 3 to 1. [6-ER-898]. To maintain its competitive market share, and despite its knowledge of its child labor problem, Nestlé nonetheless puts sustainability labeling on the Products at issue. Plaintiff alleges that calling these products "sustainably sourced," or labeling them as "improving the lives of farmers," when they are made by enslaved child laborers is not only deceptive, but abhorrent. [6-ER-930].

4

Plaintiff regularly purchased Defendant's chocolate chip and cocoa mix products with the Sustainability Representations on them [6-ER-892]. Plaintiff alleges that she would not have purchased the products if she had known the truth. *Id.* The Sustainability Representations led Plaintiff and other consumers to believe that the products were produced in accordance with environmentally and socially responsible standards. Plaintiff alleges that she relied on these representations when she purchased Defendant's products. *Id.*

In her operative complaint Plaintiff claims violations of California's consumer protection laws, namely the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq. ("CLRA"), and the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq. ("UCL"), on her own behalf as well as on behalf of a putative class of California consumers. She seeks injunctive relief and a refund for the products purchased. *Id.*

## SUMMARY OF ARGUMENT

Having reviewed and considered the correct legal criteria and the evidence both parties submitted, the District Court, in a well-reasoned Order, properly found the Damages Class for Plaintiffs' UCL and CLRA

5

claims meets Rule 23's commonality and predominance requirements. Under applicable, well-settled law, the District Court correctly held all members of the certified class were exposed to the Sustainability Representations because Nestle disseminated them, which is all that is required to show absent class member exposure. Moreover, since the exposure requirement for all class members was met, Article III standing issues did not preclude class certification. Additionally, Plaintiff was not required to show a uniform understanding of the Sustainability Representations by absent class members, as Nestle incorrectly contends. The District Court was correct to find materiality was a common question, based on evidence such as Nestle's own internal consumer research studies, rendering the UCL and CLRA claims suitable for class treatment. The District Court also correctly held Plaintiff's full refund theory comports with her liability theory, and that the proposed full refund damages model can be measured across the entire class, in line with controlling Ninth Circuit precedent. Nestle's arguments to the contrary fail entirely.

Lastly, the District Court properly certified an injunctive relief class, and its holding that Plaintiff had standing to seek injunctive relief

because she would like to purchase Nestle's products at issue in the future but can't trust them directly aligns with this Court's recent controlling precedent from *DZ Reserve v. Meta Platforms*. Nestle's argument to the contrary is just wrong. Moreover, the District Court correctly found an injunction or declaratory judgment in this instance would provide relief to each member of the class, so certification of a Rule 23(b)(2) class was proper.

Put simply, the District Court's well-reasoned Order is properly based on controlling California and Ninth Circuit law, and none of Nestle's arguments support reversal here.

## STANDARD OF REVIEW

The Ninth Circuit "review[s] a district court's decision to certify a class for abuse of discretion." *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1230 (9th Cir. 2024) (citing *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 663 (9th Cir. 2022) (en banc)). "A class certification order is an abuse of discretion if the district court applied an incorrect legal rule or if its application of the correct legal rule was based on a factual finding that was illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *Id.*

7

at 1231-32. "When reviewing an order granting class certification, we accord the district court noticeably more deference than when we review a denial." *Id.* at 1232. "We review the district court's determination of underlying legal questions de novo, and its determination of underlying factual questions for clear error." *Id.*

**ARGUMENT**

**I.    The District Court Correctly Held the Damages Class Satisfies Commonality and Predominance**

Nestlé asserts the District Court's rulings as to commonality and predominance are erroneous on three grounds, all of which are meritless.

First, Nestlé challenges the District Court's determination that the exposure requirement under California law is met, both as a legal matter [AOB 26-28, 32-38], and as a factual matter [*id.* at 29-31]. The District Court, however, correctly construed the law regarding exposure, *see infra* Arg. §§ I.A, I.B.1-2, and its factual determinations were not clearly erroneous, *see infra* Arg. § I.B.3. Nestlé further contends the District Court's ruling on exposure leads to absent class members lacking Article III standing. [AOB 38-40]. This contention is also meritless. *See infra* Arg. § I.B.4.

8

Second, Nestlé challenges the District Court's determination that deception is a common, predominating question. [AOB 40-43]. Nestlé is wrong, as the "reasonable consumer" test applicable to Falcone's claims is objective, and no uniform understanding of the representations need be shown. *See infra* Arg. §§ I.A, I.C.

Third, Nestlé challenges the District Court's determination that materiality under the CLRA can be resolved classwide. [AOB 43-49]. Here as well, Nestlé's arguments miss the mark, as materiality is also governed by an objective standard and supports certification here. *See infra* Arg. §§ I.A, I.D.

## A. The Elements of Falcone's UCL and CLRA Claims Are Well Suited for Class Certification

Rule 23(a)(2) demands at least one common question of law or fact, for which "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 359 (2011). Rule 23(b)(3) predominance "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). "Considering whether 'questions

9

of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011).

Here, the elements of Falcone's UCL and CLRA claims are well suited for satisfying commonality and predominance.

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." CAL. BUS. & PROF. CODE § 17200. To state a UCL claim based on false advertising, "it is necessary only to show that members of the public are likely to be deceived," under an objective "reasonable consumer" standard. *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011); *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020); *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *accord Clay v. CytoSport, Inc.*, 2018 WL 4283032, at \*6 (S.D. Cal. Sept. 7, 2018) (Lorenz, J.). Additionally, to have statutory standing for a UCL claim, the named plaintiff—but only the named plaintiff—must also establish she suffered injury in fact and lost money or property "as a result of" the defendant's deceptive conduct. CAL. BUS. & PROF. CODE § 17204. The court may enjoin deceptive conduct under the UCL, and it

10

may order restitution "to restore to any person in interest any money or property, real or personal, which ***may have been acquired*** by means of such unfair competition." CAL. BUS. & PROF. CODE § 17203 (emphasis added).

The UCL's fraudulent prong, unlike a claim for common law fraud, does not require proof that a deceptive statement was "reasonably relied upon by a victim who incurs damages" to state a claim for injunctive relief, *In re Tobacco II Cases*, 207 P.3d 20, 29, 34-35 (2009) ("*Tobacco II*"), and section 17203's requirement to show money "may have been acquired" by the defendant to obtain restitution is "patently less stringent than the standing requirement for the class representative," *id.* at 35. The "UCL's focus" is "on the defendant's conduct, rather than the plaintiff's damages, in service of the statute's larger purpose of protecting the general public against unscrupulous business practices." *Stearns*, 655 F.3d at 1020; *accord Clay*, 2018 WL 4283032, at *6.

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." CAL. CIV. CODE § 1770(a). The CLRA allows suits by a "consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be

11

unlawful by [the CLRA]." CAL. CIV. CODE § 1780. The "reasonable consumer" standard also applies under the CLRA. *Moore*, 966 F.3d at 1017; *Williams*, 552 F.3d at 938. Additionally, unlike the UCL, the plaintiffs in a CLRA action must show "the deception caused them harm." *Stearns*, 655 F.3d at 1022; *accord Clay*, 2018 WL 4283032, at \*6. However, "if the trial court finds material misrepresentations were made to the class members, at least an inference of reliance would arise as to the entire class." *Massachusetts Mut. Life Ins. v. Superior Ct.*, 119 Cal. Rptr. 2d 190, 197 (Ct. App. 2002); *accord McAdams v. Monier, Inc.*, 105 Cal. Rptr. 3d 704, 710 (Ct. App. 2010) (plaintiffs may satisfy their burden of "showing causation as to each [class member] by showing materiality as to all"). Materiality is judged by an objective standard. *Tobacco II*, 207 P.3d at 39; *see also Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013) ("Because materiality is judged according to an objective standard, the materiality of [the defendant's] alleged misrepresentations and omissions is a question common to all members of the class [the plaintiff] would represent."); *DZ Rsrv.*, 96 F.4th at 1235.

**B. The District Court Correctly Held the Exposure Requirement Is Met Because All Class Members Received the Sustainability Representations**

**1. To Satisfy the Exposure Requirement, California Law Only Requires Material Representations to Be _Disseminated_ to the Class Members**

The District Court identified and applied the correct legal rule regarding exposure of the absent class members to the Sustainability Representations. More specifically, the court correctly held that under Ninth Circuit precedent, dissemination is all that is required to show exposure. 1-ER-18; 1-ER-21 (first citing *DZ Rsrv.*, 96 F.4th at 1237; and then citing *Walker v. Life Ins. Co. of the Sw.*, 953 F.3d 624, 631 (9th Cir. 2020)).

To certify a damages class pursuing UCL claims regarding deceptive advertising, exposure to the deceptive advertising by the absent class members must be shown to ensure the claims are sufficiently cohesive to warrant representative adjudication. *See Stearns*, 655 F.3d at 1020, 1022.

The exposure requirement itself is ***not the same*** as a reliance requirement for the absent class members, as the exposure requirement derives from California Business and Professions Code section 17203 and

13

the requirement that classes be cohesive. *See* CAL. BUS. & PROF. CODE § 17203 (authorizing restitution award of any money which "may have been acquired" through the UCL violation); *Tobacco II*, 207 P.3d at 35 ("may have been acquired" language is "patently less stringent" than "as a result of" language in Business and Professions Code section 17204); *see also Cabrera v. Google LLC*, No. 5:11-cv-01263-EJD, 2023 WL 5279463, at *33 (N.D. Cal. Aug. 15, 2023). Ninth Circuit and California authorities establish that exposure only requires that information be disseminated to the absent class members. As the Ninth Circuit explained in *Walker v. Life Insurance Company of the Southwest*, "[i]n the seminal California case on UCL class actions, *In re Tobacco II Cases*, the defendants moved to decertify a UCL class for the reason that individualized issues—*i.e.*, whether all class members were exposed to, relied on, and were injured by allegedly false and deceptive advertisements—predominated over common ones." *Walker*, 953 F.3d at 630 (citing *Tobacco II*, 207 P.3d at 28). "The California Supreme Court interpreted this statute to mean that only the named plaintiff, but not absent ones, must show proof of 'actual reliance' at the certification

14

stage." *Id.* (quoting *Tobacco II*, 207 P.3d at 38); *see also Tobacco II*, 207 P.3d at 35 n.14.

Relying on a line of California cases going back over 40 years, "wherein courts 'repeatedly and consistently . . . h[eld] that relief under the UCL is available without individualized proof of deception, reliance and injury,' the [California Supreme] court [in *Tobacco II*] reasoned that 'requiring all unnamed members of a class action to individually establish standing would effectively eliminate the class action lawsuit as a vehicle for the vindication' of rights under the UCL." *Walker*, 953 F.3d at 630 (quoting *Tobacco II*, 207 P.3d at 35-36); *see Bank of the W. v. Superior Ct.*, 833 P.2d 545, 553 (Cal. 1992) (en banc) ("The purpose of [orders of restitution under California Business and Professions Code section 17203] is 'to deter future violations of the unfair trade practice statute and to foreclose retention by the violator of its ill-gotten gains.' The Legislature considered this purpose so important that it authorized courts to order restitution without individualized proof of deception, reliance, and injury if necessary to prevent the use or employment of an unfair practice."); *Comm. On Children's Television, Inc. v. Gen. Foods Corp.*, 673 P.2d 660, 668-69 (Cal. 1983) (en banc) ("To state a cause of

15

action under [the UCL] for injunctive relief, it is necessary only to show that 'members of the public are likely to be deceived.' Allegations of actual deception, reasonable reliance, and damage are unnecessary. The court may also order restitution without individualized proof of deception, reliance, and injury if it 'determines that such a remedy is necessary "to prevent the use or employment" of the unfair practice . . . .'").

The Ninth Circuit has "repeatedly relied on *Tobacco II* in recognizing 'what amounts to a conclusive presumption' of reliance in UCL cases." *Walker*, 953 F.3d at 630. "***The presumption serves to relieve UCL plaintiffs of their obligation to establish absent class members' reliance***" *Id.* at 630-31 (emphasis added) (citations omitted).

Thus, the exposure inquiry for UCL claims only asks if misrepresentations were "actually made" to all class members. *See Berger*, 741 F.3d at 1069. Similarly, the reliance inference available for CLRA claims only requires material misrepresentations to have been "made to the class members." *Massachusetts Mut. Life Ins.*, 119 Cal. Rptr. 2d at 197; *see Berger*, 741 F.3d at 1070.

Dissemination is all that is necessary to show exposure even if the representations at issue are in small font on the back of a product's

16

packaging, because the exposure requirement does not also include a prominence requirement. *Prescott v. Reckitt Benckiser LLC*, 2022 WL 3018145, at \*5 (N.D. Cal. July 29, 2022) ("California law does not support a requirement that an alleged misrepresentation must be prominently displayed on the label or packaging before classwide exposure may be inferred."); *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 565 (N.D. Cal. 2020) (rejecting argument that exposure requirement also includes a prominence requirement). Put another way, "[w]hether 'all or most consumers' were ***actually exposed to and relied on Challenged Statements are not relevant questions*** under the California consumer protection statutes at issue." *Krommenhock*, 334 F.R.D. at 581 n.24 (emphasis added).

Several cases support this proposition. First, in *Weinstat v. Dentsply International, Inc.*, the crux of the plaintiff dentists' UCL claim was the defendant made representations indicating the devices at issue could be used in oral surgery, but in fact they were unsafe for such use. *Weinstat v. Dentsply Internat., Inc.*, 103 Cal. Rptr. 3d 614, 620 (Ct. App. 2010). After the class was certified, the defendant sought decertification, arguing "individual issues about the nature and extent of any material

17

misrepresentation would predominate over common issues." *Id.* at 622 n.8. Specifically, the "dentists ***typically did not see*** the [challenged representations] until ***after*** they purchased the [device], and thus the [challenged representations] ***could not have influenced their purchasing decision***." *Id.* at 622 n.8 (emphasis added). While the appellate court rejected the argument on procedural grounds, it also rejected it on the substance, explaining:

> This case involves alleged uniform fraudulent practices— misrepresentations regarding the [device's] safety for surgical use and the concomitant nondisclosure . . .—by [the defendant], ***directed to the entire class***. . . .
>
> A plaintiff's burden . . . is to demonstrate that the representations or nondisclosures in question would likely be misleading to a reasonable consumer. The question of materiality, in turn, is whether . . . a reasonable dentist [would] attach importance to [the defendant's] claim that the [device] was safe for use in surgery. The safety of the [device] would be material to any dentist regardless of when the representation was made. The materiality of [the defendant's] representations concerning the [device's] safety for surgical uses was established objectively by appellants' actual use of the device for oral surgery, in accordance with those representations, ***regardless of whether appellants saw the [challenged representations] before or after purchasing the device***. There are no individual issues concerning the nature and extent of material misrepresentations.

*Id.* (emphasis added). *Weinstat* demonstrates that the key inquiry with respect to exposure is not whether absent class members saw the

representations at issue at time of purchase; instead, exposure was satisfied because the representations were disseminated to the absent class members.

*Krommenhock v. Post Foods, LLC*, is also instructive. In *Krommenhock*, the plaintiffs sought certification of a California class and subclasses bringing UCL and CLRA claims concerning 31 varieties of the defendant's cereal, where the cereal boxes contained a mix of 45 health and wellness statements the plaintiffs asserted were deceptive given the high level of added sugar in the cereals. *Krommenhock*, 334 F.R.D. at 560, 567. The defendant argued predominance was unmet because the plaintiffs failed to show that any misleading representations were communicated classwide. *Id.* at 563. The court rejected the defendant's argument because "[t]he relevant analysis under California law does not consider whether each class member saw and relied on each of the Challenged Statements and in what combination, but instead whether the Challenged Statements were used consistently through the Class Period, supporting an inference of classwide exposure, and whether the Challenged Statements would be material to a reasonable consumer." *Id.* at 563-64.

The defendant in *Krommenhock* further argued the court should "consider whether certain of the Challenged Statements are prominent enough on the Products' packages to support classwide inferences [of exposure] as a matter of law," since according to the defendant, "an inference of class-wide exposure to an alleged misrepresentation affixed to a product's packaging might not be warranted if the alleged misrepresentation is not sufficiently prominently displayed on the packaging," particularly where a representation "only appeared (1) on the back panel of the . . . packaging; (2) 'in small font'; and (3) in the middle of a block of text." *Id.* at 564.

The court rejected the argument. First, as in the case here against Nestlé, "there [was] no dispute that the majority of Challenged Statements were made consistently (or consistently enough) throughout the relevant timeframes on the Products' packages." *Krommenhock*, 334 F.R.D. at 564. Moreover, deciding the prominence issue as a matter of law on class certification was "unnecessary because under California law prominence goes only to the inapposite question of whether significant numbers of prospective class members saw or interacted with the statement." *Id.* at 564-65. "California law does not ask whether class

20

members actually saw or relied on representations, but simply whether the representations were consistently made and were material to a reasonable consumer." *Id.* at 565. "Where, as here, there is evidence that the representation was consistently made on a product's label, the only question is whether it was objectively material to a reasonable consumer." *Id.* "When relevant, prominence goes to the materiality and misleading questions to be resolved by the jury." *Id.*; *see also Kumar v. Salov N. Am. Corp.*, 2016 WL 3844334, at *9 (N.D. Cal. July 15, 2016) (certifying California class and rejecting defendant's contention that exposure was not met, as the defendant's "arguments about whether consumers were likely to notice the challenged phrase on the front of the bottle given the small font size and lack of contrast with the rest of the bottle go to the merits of the claim, not to whether a class should be certified").

In *Prescott v. Reckitt Benckiser LLC*, the defendant argued exposure was unmet as to 45% of the bottles of Woolite laundry detergent at issue because those bottles "displayed the [challenged] language only on the back label." *Prescott*, 2022 WL 3018145, at *4. The defendant further argued that the plaintiffs "submitted no evidence showing that proposed

21

class members or the reasonable consumer reviews the back label before purchase, let alone paid attention to the [challenged] language"; that "two of the named plaintiffs did not rely on the back label when purchasing Woolite detergent"; and that "[o]ne of the named plaintiffs could not remember whether he saw the back label before purchasing the detergent." *Id.*

The court rejected the argument and certified a California class bringing UCL and CLRA claims. *Prescott*, 2022 WL 3018145, at *4-5, *9, *13. The court reasoned that the plaintiffs had "established that the [challenged] representation appeared in one or more forms on each and every bottle of Woolite detergent sold to putative class members" and that "[i]n general, '[w]here the alleged misrepresentation appears on the label or packaging of each item being sold, class-wide exposure to it may be inferred.'" *Id.* at *5. Following *Krommenhock*, the court held "California law does not support a requirement that an alleged misrepresentation must be prominently displayed on the label or packaging before classwide exposure may be inferred," and it therefore concluded that "all putative class members were exposed to the [challenged] representation, *including those who purchased Woolite bottles displaying only the*

22

*[challenged] phrase . . . on the back label*." *Id.* (emphasis added); *see also In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*, 609 F. Supp. 3d 942, 994 (N.D. Cal. 2022) ("*JUUL*") (following *Krommenhock* and rejecting prominence arguments); *Testone v. Barlean's Organic Oils, LLC*, 2021 WL 4438391, at *15 (S.D. Cal. Sept. 28, 2021) ("[T]he Court can, and does, infer class-wide exposure to the allegedly misleading statements here, particularly given that Defendant 'does not contest that its coconut oils were *consistently labeled* with the challenged claims.'").

As explained by Judge Gonzalez Rogers of the Northern District of California:

> Courts find that exposure exists where a court reasonably can infer that the class members would be able to see the misrepresentation at issue . . . [such as] where the alleged misrepresentations are on the package of a product or on a product label . . . . By contrast, courts find that the exposure requirement is *not* met where class members could not, under *any circumstances*, have seen or heard the misrepresentation at issue, such as where, for example, the label containing the misrepresentation was never affixed to the product purchased by the class members; or the misrepresentations were made in advertising campaigns that were very limited and were unlikely to have reached every class member.

*Bailey v. Rite Aid Corp.*, 2021 WL 4469638, at *2 n.4 (N.D. Cal. May 26, 2021) (citations omitted).

Here, under *Tobacco II*, *Walker*, *Weinstat*, *Krommenhock*, *Prescott*, and *Bailey*, and as the District Court correctly held, the exposure requirement is easily met because all class members received the Sustainability Representations. As Nestlé does not dispute, the Sustainability Representations were present on all the labels of all of the challenged Products. [3-SER-455-521; 4-SER-523-571; 5-SER-573-590]. And Nestlé does not, and cannot, dispute that all Damages Class members had to have purchased the products to be in the class, by definition, and therefore the Sustainability Representations must have been disseminated to all class members. Under California law and Ninth Circuit authority, nothing further is required.

> ### 2. The Cases on Which Nestlé Relies Are Inapposite and Do Not Show That the Exposure Requirement Demands More Than Dissemination of the Sustainability Representations to the Class Members

Nestlé challenges the District Court's determination that exposure was met on legal grounds, arguing exposure demands more than dissemination of the Sustainability Representations to all class members. [AOB at 26-28, 32-38]. Instead, Nestlé maintains exposure requires proof that each class member actually saw, instead of only

having a "mere 'opportunity'" to see, the representations at issue. *E.g.*, *id.* at 32 ("[N]othing in the decisions of this Court or California appellate courts supports the notion that exposure is established merely when consumers *could have* seen challenged statements."). Nestlé misconstrues the law, and the cases upon which it relies are inapposite.

First, Nestlé relies on *Mazza v. American Honda Motor Co.* to argue exposure means "everyone in the class [must] have *viewed* the allegedly misleading advertising." [AOB 32] (quoting *Mazza*, 666 F.3d at 596); *see also id.* at 35, 36. *Mazza*, however, did not concern product labeling; it concerned advertisements, which allegedly misrepresented the characteristics of the "Collision Mitigation Braking System" ("CMBS") in certain automobiles. *Mazza*, 666 F.3d at 585. The advertisements included only product brochures available at dealerships; television commercials that ran sporadically; an ad that ran in some magazines; and smaller-scale marketing efforts including two commercials on the defendant's intranet which were viewable on kiosks at dealerships; a website for car owners  containing video clips; and a single article in a magazine distributed by the defendant. *Id.* at 586-87. The Ninth Circuit held "the small scale of the advertising campaign does not support a

25

presumption of reliance," *id.* at 594, and "the limited scope of that advertising makes it unreasonable to assume that all class members viewed it," *id.* at 596. The problem in *Mazza* was not that the class members received but may not have read or comprehended the challenged representations; rather, it was that the class members could have purchased the CMBS without ever coming in contact at all with the advertisements at issue. Here, no such issue exists, ***as it is undisputed that all class members received the Sustainability Representations as the packaging itself for all the products at issue had the Sustainability Representations on them***. *DZ Rsrv.*, 96 F.4th at 1237; *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 482 (C.D. Cal. 2012) ("*Mazza* . . . has no relevance to the present case, where Plaintiffs' theory is . . . that partial representations *on the product itself* are misleading.").

Nestlé relies heavily on *Downey v. Public Storage, Inc.*, but *Downey* is inapposite for the same reasons as *Mazza.* [*See, e.g.*, AOB 33]. The plaintiffs challenged as deceptive statements regarding a $1 promotional rate for the first month's rent for the defendant's storage units. *Downey v. Pub. Storage, Inc.*, 258 Cal. Rptr. 3d 290, 295-96 (Ct. App. 2020). The

26

statements were made in television commercials, on banners affixed to some physical facilities, on various internet search engines and social media sites, on some of the defendant's webpages, briefly in radio commercials, and sometimes by other businesses. *Id.* at 295. As in *Mazza*, the problem was not that all class members received but may not have read or comprehended the statements regarding the $1 rate; rather, it was that class members could have purchased the storage units without ever coming in contact with the challenged advertisements at all. *Id.* at 301. The court explained, "[w]hile the [UCL] . . . authorize[s] restitution for money or property 'which may have been acquired' by means of a . . . deceptive advertisement, [it does] not authorize restitution for money or property *definitively not acquired* through such means," *id.* at 304-05 (citations omitted). The case did not involve representations on product labeling necessarily received by all class members.[1]

Nestlé cites a number of other cases that are all similarly off point, as all of them concerned representations that at least some class

---

[1] In an oddly-worded and unclear parenthetical, Nestlé suggests *Downey* rejected the "conclusive presumption" discussed in *Stearns*. [AOB 36-37]. Not so. Instead, the *Downey* court correctly held that *Stearns* requires exposure to be met before the "conclusive presumption" is applied. *Downey*, 258 Cal. Rptr. 3d at 306.

members never received, and none of them concerned representations on

product labels that all class members necessarily received:

- *Moorer v. StemGenex Medical Group, Inc.* [AOB 32-33] concerned representations only on a website and in emails. *Moorer v. StemGenex Med. Grp., Inc.*, 830 F. App'x 218, 2019 (9th Cir. 2020) (unpublished).

- *Sevidal v. Target Corp.* [AOB 20, 33] concerned representations on a website that could only be accessed by navigating to an item-specific screen and clicking on an "Additional Info" tab. *Sevidal v. Target Corp.*, 117 Cal. Rptr. 3d 66, 73 (Ct. App. 2010).

- *Cohen v. DIRECTV, Inc.* [AOB 34] addressed "print advertising" and "other promotional materials" that not all class members received. *Cohen v. DIRECTV, Inc.*, 101 Cal. Rptr. 3d 37, 40, 47 (Ct. App. 2009).

- *Davis-Miller v. Automobile Club of Southern California* [AOB 36] concerned a roadside battery assistance program that was "minimally advertised during the proposed class period in *Westways Magazine*, MemberSaver guides, renewal mailers and on [the defendant's] website." *Davis-Miller v. Auto. Club of S. California*, 134 Cal. Rptr. 3d 551, 565 (Ct. App. 2011).

Nestlé also relies upon *Castillo v. Bank of America, NA* [AOB 19, 20, 28, 35], but *Castillo* is off point because the plaintiff did not show all class members were affected by the defendant's challenged formulas for calculating overtime pay, as some class members did not work overtime and some did work overtime but were not underpaid. *Castillo v. Bank of*

*Am., NA*, 980 F.3d 723, 730-31 (9th Cir. 2020). The case did not involve labeling at all.

While *Cabral v. Supple LLC* [AOB 33] did involve product labeling, the issue was that some labels bore the challenged representation, and some did not. *Cabral v. Supple LLC*, 608 F. App'x 482, 483 (9th Cir. 2015) (unpublished). Here, all Product labels bore the Sustainability Representations.

Nestlé contends the District Court held questions of exposure go "to the merits," [AOB 35 (quoting 1-ER-21)], but this ignores the context of the District Court's statement. The District Court was rejecting the argument that "the Sustainability Representations were not material because they were mostly placed on the back of the package and . . . most consumers were therefore not 'exposed' to the Sustainability Representations." [1-ER-21]. The District Court did not hold that exposure was a merits issue; instead, it held, following *Amgen*, 568 U.S. at 459, and *DZ Reserve*, 96 F.4th at 1235, that ***materiality*** was a merits issue. [1-ER-20-21]. The District Court continued on to hold that the relevant inquiry with respect to exposure is "whether Defendant communicated the Sustainability Representations to the class members,"

29

[1-ER-21], thereby properly applying the many precedents discussed above, including *Walker*, *see supra* Arg. § I.B.1. As to exposure, the District Court correctly concluded that all class members were exposed because "by definition" all class members received the Sustainability Representations. [1-ER-21].

Relatedly, Nestlé also suggests the District Court held the exposure requirement was met because Nestlé "intended" for consumers to see the Sustainability Representations, quoting footnote 9 of the District Court's opinion. [AOB 32]. However, the issue that the District Court discussed in footnote 9 was whether the Sustainability Representations were *material* even though they were on the back of the label. [1-ER-21 n.9]. The District Court indicated that if it were to resolve the merits of the materiality question, Plaintiff would prevail because Plaintiff had submitted evidence that "Defendant itself considered back-of-the-label sustainability advertising important" and "found it 'compelling' for the Toll House brand to place the Sustainability Representations on the back—the same side as the cookie recipe." *Id.* In sum, the District Court correctly determined that exposure is met because Nestlé "made" the Sustainability Representations to all class members, and its statement

that, if it were to resolve materiality on the merits, Plaintiff would prevail, is supported by the evidence and is not clearly erroneous.

Nestlé argues the presumption of reliance "only" applies in the context of an extensive and long-term fraudulent advertising campaign, which it contends is not present here. [AOB 36, 37]. Nestlé is wrong. "[L]imited advertising is irrelevant in the instant case because the misrepresentations upon which Plaintiffs allegedly relied were on the [Products'] packaging." *In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 366 (N.D. Cal. 2018); *accord Allegra v. Luxottica Retail N. Am.*, 341 F.R.D. 373, 410 (E.D.N.Y. 2022) (explaining that exposure may be inferred (1) "[w]here the alleged misrepresentation appears on the label or packaging of each item being sold" or, alternatively, (2) in the context of an extensive and long-term ad campaign).

### 3. The Class Members Were Exposed to the Sustainability Representations

Nestlé contends most consumers never saw the back of the Product packaging. [AOB 30-31]. As discussed above, the exposure requirement is met because the Sustainability Representations were disseminated to all class members.

31

Moreover, contrary to Nestlé's argument, there is no indication that class members did not **see** the back of the packaging. *See Bailey*, 2021 WL 4469638, at \*2 n.4 (noting "the inherently high likelihood that in the process of buying the product, the consumer would have seen the misleading statement on the product [label]"). Indeed, Nestlé goes to great lengths to make sure consumers **do** read the back of its labels – indeed that's why it places its famous Nestlé Toll House Cookie Recipe is on the back of all of its chocolate chip packages. ▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

Contrary to Nestlé's argument, the studies by Nestlé's expert, Dr. Ran Kivetz, do not reflect whether consumers merely "saw" the Sustainability Representations. [*See* AOB 30-31]. Instead, they are a "memory test" which assessed whether consumers were able to ***read*** the representations within a brief window of time and then ***recall*** what they had read. [3-ER-387] ("Dr. Kivetz imposes short-term memory limitations on consumers that artificially deflate the likelihood that consumers will report their perceptions of the claim in question. In his surveys, Kivetz allowed respondents to look at the packaging, which contained a large number of claims, but then removed the packaging from view before asking any questions regarding the packaging."). According to Plaintiff's rebuttal expert, Dr. Andrea Lynn Matthews, "[m]emory tests are inappropriate for capturing all of the messages that consumers perceive on a package when a large number of claims are present." *Id.; see also id.* at 388-9, 398. The key point here is that exposure only requires dissemination[2] *See In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. at 366.

---

[2] Citing *Moore v. Mars Petcare US, Inc.*, Nestlé argues consumers often do not have time or interest to read the back of the box. [AOB 31]. This misconstrues *Moore*, which stated the opposite: "qualifiers in packaging,

The District Court correctly held that Dr. Kivetz's survey and Nestlé's market research regarding eye tracking go, at most, to materiality. [1-ER-21]. Nestlé also argues academic literature indicates most consumers do not "focus" on small-font, back-label statements, but this as well goes only to materiality. [*See* AOB 31]. Nestlé's evidence does not show class members did not receive the Sustainability Representations, nor could it. But, moreover, Nestlé's expert is common evidence that it relies upon for its defense – underscoring that class certification was not an abuse of discretion by the District Court.

Nestlé also makes a distinct argument that the Sustainability Representations are not sufficiently uniform because the 59 different labels at issue each feature a combination of six different challenged statements. [AOB 29]. Nestlé is wrong. As the District Court correctly held, the Sustainability Representations are sufficiently uniform. 1-ER-13. All of the Product labels include the Nestlé Coca Plan logo, and

---

usually on the back of a label or in ingredient lists, 'can ameliorate any tendency of the label to mislead.'" *Moore*, 966 F.3d at 1017. The rule from *Moore*, which Nestlé only partially quotes in its brief, is that if the front label makes a misrepresentation (including a misrepresentation in a brand name), the plaintiff's claim is not defeated at the motion to dismiss stage if the back label includes conflicting information that reveals the truth. *Id.* at 1017-18.

all include either a "responsibly sourced" claim, a "sustainably sourced" claim, or the representation that Nestlé is "improving the lives of cocoa farmers," or combinations of the foregoing three representations. [3-SER-494-521; 4-SER-523-571; 5-SER-575-590]. Nestlé itself admits "responsibly sourced" means the same thing as "sustainably sourced," and "improves the lives of cocoa farmers" is deceptive for the same reasons as the "sustainably sourced" and "responsibly sourced" claims. [1-SER-113]. The variations in wording here are immaterial because the message Nestlé conveyed to consumers is part of a "common course of conduct" and is likely to deceive reasonable consumers for the same reasons. *DZ Rsrv.*, 96 F.4th at 1236 ("[T]he class action mechanism would be impotent if a defendant could escape much of his potential liability for fraud by simply altering the wording or format of his misrepresentations across the class of victims."); *JUUL*, 609 F. Supp. 3d at 969 (predominance met where "the messaging, although using different imagery and wording, conveyed consistent messages about JUUL products that would be likely to deceive reasonable consumers in similar ways"); *Prescott*, 2022 WL 3018145, at *5 ("It is undisputed that every putative class member purchased Woolite bottles displaying the phrases

35

'COLOR RENEW' and/or 'revives color.' Plaintiffs argue, and the Court agrees, that these phrases are so similar that they may be viewed collectively as a single representation regarding the effect of Woolite detergent on clothing."); *Krommenhock*, 334 F.R.D. at 560 (certifying class where representations were "a mix of 45 statements that plaintiffs assert are rendered false and misleading given the amount of added sugar included in Post's Products").

### 4. Article III Standing Issues Do Not Preclude Certification

Finally, Nestlé's contention that many class members lack Article III standing due to lack of exposure [AOB 38-40] is incorrect under Ninth Circuit precedent because the exposure requirement is met and all class members were financially injured due to Nestlé's deceptive representations. *Stearns*, 655 F.3d at 1020-21 (that California law provides right to relief without more particularized proof of injury or causation is insufficient to defeat class standing).

Nestlé's reliance on *Avritt v. Reliastar Life Ins.*, 615 F.3d 1023 (8th Cir. 2010), is misplaced. [*See* AOB 39-40]. The evidence here does not go "to individual conversations and representations made to individual class members, but instead [goes] solely to class wide advertising and publicity

36

by [Nestlé]." *Rodman v. Safeway, Inc.*, 694 F. App'x 612, 614 (9th Cir. 2017) (unpublished).

## C.    No Uniform Understanding Is Required

Nestlé argues consumers do not uniformly understand the Sustainability Representations. [AOB 40-43]. However, the reasonable consumer standard applicable to Falcone's claims does not require her to make any such showing. Under the UCL and CLRA, "plaintiffs do not have the 'burden to establish that there is a uniform understanding among putative class members as to the meaning of [the information at issue], or that all or nearly all of them shared any specific belief.'" *JUUL*, 609 F. Supp. 3d at 995; *accord Bradach v. Pharmavite, LLC*, 735 F. App'x 251, 255 (9th Cir. 2018) (unpublished). Nestlé "point[s] to no controlling authority showing that a plaintiff must establish at the class certification stage that consumers have a uniform interpretation of the term that gives rise to the alleged deception," and California federal courts "routinely hold to the contrary." *Lytle v. Nutramax Lab'ys, Inc.*, No. 19-cv-00835-FMO-SP, 2022 WL 1600047, at *15 (C.D. Cal. May 6, 2022); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 613 (N.D. Cal. 2018) ("[T]he standard requires only that the Court find there

is a probability that reasonable consumers could be misled, not that they all believed 'Made From Real Ginger' means the same thing."); *Elkies v. Johnson & Johnson Servs., Inc.*, No. 17-cv-07320-GW-JEM, 2018 WL 11223465, at \*4 (C.D. Cal. Oct. 18, 2018) ("[A]t least as to the CLRA claim, the law appears to be that class members do *not* have to have a uniform understanding of the meaning behind the challenged representation."); *Waller v. Hewlett-Packard Co.*, 295 F.R.D. 472, 484-85 (S.D. Cal. 2013) (holding defendant's arguments regarding uniformity of understanding "rest[ed] on a fundamental understanding of what a UCL and FAL claim require, which is very little").

Nestlé also argues it is "doubtful that any of the challenged statements are even *plausibly* deceptive to reasonable consumers." [AOB 40]. The District Court, however, properly rejected Nestlé's contentions that Plaintiff's claims are not plausible when it denied Nestlé's motion to dismiss, and that order is not currently available for appellate review.[3]

---

[3] Contrary to Nestlé's suggestion, AOB 40-41, this case is not like *Myers v. Starbucks Corp.* because the representation at issue in *Myers*, "We buy cocoa from Rainforest Alliance Certified™ farms, traceable from the farms into our factory," does not indicate the products are made without child labor and rainforest deforestation, unlike the Sustainability Representations. *See Myers v. Starbucks Corp.*, No. 22-55930, 2024 WL 3102800, at \*1 (9th Cir. June 24, 2024).

*See Falcone v.* Nestlé, *USA, Inc.,* 2023 WL 4551083 (S.D. Cal. July 13, 2023).

Nestlé also repeats its argument that the Sustainability Representations are not sufficiently uniform because the 59 labels include different representations. [AOB 41]. The Court should reject this argument for the reasons given above.

Nestlé's reliance on *Bustamante v. KIND, LLC*, is misplaced. [See AOB 41-43]. Bustamante dealt with "all natural" representations, which are not at issue here. *Bustamante v. KIND, LLC*, 100 F.4th 419, 423 (2d Cir. 2024). Moreover, *Bustamante* affirmed an order granting **summary judgment** and did not address class certification. *Id.* at 424, 434. The court specifically distinguished the situation before it from the class certification stage. *Id.* at 434 ("In sum, while the 'evidence' to which plaintiffs point may have sufficed to overcome a motion to dismiss, or to support a motion for class certification, it fails to raise a triable issue of fact at summary judgment."). *Bustamante* has no bearing here.

Nestlé contends that "most consumers do not interpret Nestlé USA's labels as saying or implying anything about child labor at all" and

39

that "the class is full of consumers who were not injured." [AOB 42-43]. While Falcone disputes these arguments on the merits, the critical point here is that they support commonality and predominance, as the reasonable consumer standard is objective—either Falcone will prevail and deception will be shown classwide or Nestlé will prevail and the deception element will fail classwide.

### D. Materiality Is a Common Question

Nestlé's merits-based arguments in support of the proposition that the Sustainability Representations are not material to consumers demonstrate that class certification is appropriate here, as these arguments show the existence of a common question with a common answer (which need not be resolved at this stage of the proceedings). [4] [*See* AOB 43-49]. Nestlé's materiality argument will either succeed or fail with respect to all members of the Class at once and is a common issue that predominates over individualized ones. *Amgen*, 568 U.S. at 468. "California courts have 'expressly rejected the 'view that a plaintiff must

---

[4] To the extent that Nestlé contends materiality is an element of Falcone's UCL claim, Nestlé is wrong. *Tobacco II*, 207 P.3d at 29, 35; *Walker*, 953 F.3d at 630; *Orshan v. Apple Inc.*, No. 5:14-cv-05659-EJD, 2023 WL 3568079, at *11 (N.D. Cal. Mar. 31, 2023). The Court should reject Nestlé's materiality argument as to the UCL claim for this reason alone.

produce a consumer survey or similar extrinsic evidence to prevail on a claim that the public is likely to be misled by a representation.'" *Clevenger v. Welch Foods Inc.*, 342 F.R.D. 446, 459 (C.D. Cal. 2022). "[A] lack of such evidence does not prevent class certification—even when defendants offer their own extrinsic proof suggesting that the misrepresentation is *not* material to consumers." *Id.*

Nestlé contends *Stearns* stands for the proposition that if a representation is not material, reliance is an individualized issue. [AOB 45]. *Stearns* predates *Amgen*, in which the United States Supreme Court held:

> A failure of proof on the *common* question of materiality ends the litigation and thus will never cause individual questions of reliance or anything else to overwhelm questions common to the class. Therefore, under the plain language of Rule 23(b)(3), plaintiffs are not required to prove materiality at the class-certification stage. In other words, they need not, at that threshold, prove that the predominating question will be answered in their favor.

*Amgen*, 568 U.S. at 468. And in *DZ Reserve*, the Ninth Circuit followed *Amgen* in affirming certification of a Rule 23(b)(3) damages class pursuing a fraud claim, holding "proof of materiality 'is not a prerequisite to class certification.'" *DZ Rsrv.*, 96 F.4th at 1235. District courts considering certification of CLRA claims have also followed *Amgen* to

41

hold materiality is a common question, even if the plaintiffs may lose on materiality on the merits, because materiality is governed by an objective standard. *Clevenger*, 342 F.R.D. at 459 n.8; *see also Guzman v. Polaris Indus., Inc.*, 345 F.R.D. 174, 185 (C.D. Cal. 2023); *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1115-16 (N.D. Cal. 2018).

Nestlé asserts Falcone offered no evidence of materiality. [AOB 45]. This misapprehends the Rule 23(b)(3) inquiry and ignores the objective nature of the materiality requirement. *Bush v. Rust-Oleum Corp.*, No. 20-cv-03268-LB, 2024 WL 422080, at *3 (N.D. Cal. Feb. 5, 2024); *Hadley*, 324 F. Supp. 3d at 1115-16.[5] "In any case, California's statutory adoption of the FTC's Green Guides — which speak to the challenged label claims at issue — means that materiality is adequately proven at this stage." *Bush*, 2024 WL 422080, at *4; *Smith v. Keurig Green Mountain, Inc.*, No. 18-cv-06690-HSG, 2020 WL 5630051, at *6 (N.D. Cal. Sept. 21, 2020);

---

[5] Nestlé's reliance on *McGinity v. Procter & Gamble Co.* is misplaced. [*See* AOB 46]. *McGinity* was decided at the pleading stage, and the court held the single survey at issue was insufficient on its own to render the claim plausible. *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1098-99 (9th Cir. 2023). *McGinity* was not about class certification and did not address commonality or predominance.

*Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 329 (2011); CAL. BUS. & PROF. CODE § 17580.5; [6-ER-908-10].

Moreover, "it is clear under California law that not only is materiality judged by an objective standard, but also materiality to a reasonable consumer does not mean it has to be material to every consumer." *In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Pracs. Litig.*, 422 F. Supp. 3d 194, 255 (D.D.C. 2019); *Fitzhenry-Russell*, 326 F.R.D. at 613-14 (evidence that 25% of consumers cared about representation was sufficient evidence of materiality for certification). As the District Court correctly noted, Plaintiff offered ample evidence of Nestlé's internal "consumer studies, [which] underscore[] that materiality can be proved (or disproved) on a classswide basis from consumer research and surveys." [1-ER-20].

## II. Plaintiff's Full Refund Damages Model Supports Class Certification

Nestlé's contention that the District Court erred because its acceptance of a full refund damages model on the facts is inconsistent with Class Members' claims and is in conflict with unpublished Ninth Circuit decisions and California appellate decisions also lacks merit. As the District Court correctly held, Plaintiff demonstrated that a full

43

refund of the purchase price Class Members paid for the Products is appropriate in these circumstances. [1-ER-22-24]. Contrary to its Sustainability Representations, ███████████████████████



███████████████████████████████████████████ [8-ER-

1425-29.] Accordingly, the Products are worthless to consumers who, ███

████████████████████████ [8-ER-1441-42; *See* also [7-SER-1006-

1008]. The District Court's approval of Plaintiff's full refund theory is sufficiently supported by this classwide evidence, this Court's prior decisions, and well-settled California law.

## A. Plaintiff's Full Refund Damages Model Comports With Her Theory of Liability

At the class certification stage, Plaintiff must proffer a damages model that is compatible "with [her] liability case" and shows "that damages are susceptible of measurement across the entire class." *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). California law "requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation." *Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1183 (9th Cir. 2017), *rev'd on other grounds*, 139 S. Ct. 710 (2019) (citations omitted); *accord Lytle*, 114 F.4th 1011 at 1025; *Nguyen v. Nissan North America, Inc.*, 932 F.3d 811, 817 (9th Cir. 2019).

A full refund is available under the UCL and CLRA where "a product is shown to be worthless" or has "only *de minimis* value." *Lambert*, 870 F.3d at 1174, 1183. California's Supreme Court has aptly appreciated that "[f]or a significant segment of the buying public, ***labor practices do matter in making consumer choices***." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 969 (2002)(emphasis added). Indeed, as the California Supreme Court later observed:

Whether a particular food is kosher or halal may be of enormous consequence to an observant Jew or Muslim. Whether a wine is from a particular locale may matter to the oenophile who values subtle regional differences. Whether a diamond is conflict free may matter to the fiancée who wishes not to think of supporting bloodshed and human rights violations each time she looks at the ring on her finger. And whether food was harvested or a product manufactured by union workers may matter to still others.

*Kwikset Corp.,* 51 Cal. 4th at 328-39 (2011) (footnote omitted).

Contrary to Nestlé's mischaracterization of *Kwikset* as permitting plaintiffs to "recover only" the "extra money paid" compared to the price they would have paid "but for the misrepresentation" ["AOB" at 53], *Kwikset* recognized that the "economic harm—the loss of real dollars from a consumer's pocket—"endures "whether or not a court may objectively view the products as functionally equivalent." *Kwikset*, 51 Cal.4th at 329. For instance, "[n]onkosher meat might taste and in every respect be nutritionally identical to kosher meat, but to an observant Jew who keeps kosher, the former would be worthless." *Id.* at 330. Likewise, Nestlé's child labor-sourced Products might taste and be nutritionally identical to non-child-labor-sourced chocolate, but to consumers, who Nestlé is acutely aware feel strongly about not supporting a supply chain rife with child labor and destructive environmental practices, the former is worthless.

46

Nestlé claims that Plaintiff has offered no evidence showing that the Products are worthless to Class Members, but Nestlé is wrong. The record indisputably establishes that Plaintiff would not have paid for the Products at all had she known the truth about Nestlé's cocoa supply chain practices. She also submitted ample internal Nestlé documents produced during discovery in support of class certification which show Nestlé knows that consumers are demanding sustainability, making conscious purchasing decisions, and like Plaintiff would similarly consider the Products to be worthless but for the misrepresentations. Nestlé's incomplete and misleading citation of Plaintiff's deposition transcript omits her testimony that on learning the truth about Nestlé's supply chain, she was "really upset" and it "broke [her] heart" to learn of child labor, of children being "trafficked, bought, [and] carrying pesticides," that "the ground that they're harvesting isn't taken care of," and that Nestlé is continuing the "chopping down [of] the rainforest, instead of properly managing the environment." [1-SER-128-129, 130-131, 134, 138, 141-142, 145-146]. She also no longer purchases the Products. [*Id.* at 1-SER-127, 141, 143-144, 164-165]; 1-ER-6. In fact, as pled from the very outset, and confirmed in her class certification motion, Plaintiff

47

would not have purchased Nestlé's Products had she been aware of the misrepresentations. [6-ER-930].

Plaintiff's conviction is shared by Class Members, as the evidence makes clear. ███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██ ████ ███ █████████ ███ █████ ███ ███ ██ ████████

███████████████████████████████████████

███████████████████████████████████████

██ █ █ ███████ █████████ This overwhelming classwide evidence demonstrates that Plaintiff's full refund theory comports with her liability case. It is no surprise then that Nestlé completely ignores it.

Instead, Nestlé cites part of an expert survey attached to the Declaration of Roger Mendez that Plaintiff submitted on reply, inaccurately claiming that it shows over 30% of chocolate consumers to

48

be indifferent to the issue of child labor in the supply chain. [AOB 58, citing 3-ER-419] The figure Nestlé cites actually refers to the survey's unremarkable finding that over 30% of chocolate consumers are indifferent to whether a product says on the label that it was "Responsibly Sourced." [3-ER-417] Nestlé fails to mention that the same survey found that 63.1% of consumers are *more likely* to purchase a product labeled as such and, of particular import here, that 69.3% of consumers would be less likely to purchase the product if child labor was used in the harvesting of the cocoa used to make the product. [3-ER-417, 419]. Just as Nestlé ignores classwide evidence based on its own documents showing the Products are worthless to consumers, Nestlé omits key findings from Plaintiff's expert survey, offering instead its own misleading, self-serving rendition.

Even *assuming arguendo* that Nestlé's Products provide some sort of culinary value, such value is *de minimis* at best and does not foreclose a full refund damages model. *Lambert*, 870 F.3d at 1183 ("The full refund model measures damages by presuming a full refund for each customer, on the basis that the product has no or only a *de minimis* value"); *FTC v. Figgie Int'l*, 994 F.2d 595, 606 (9th Cir. 1993) ("Customers who purchased

49

rhinestones sold as diamonds should have the opportunity to get all of their money back….The fraud in the selling, not the value of the thing sold, is what entitles consumers in this case to full refunds[.]"); *McGregor v. Chierico*, 206 F.3d 1378, 1388-89 (11th Cir. 2000) (holding that even if fraudulently sold printer toner was useful and valuable, "the seller's misrepresentations tainted the consumer's purchasing decisions" such that the appropriate measure of damages was the gross sales price of the toner, thereby providing consumers the equivalent of a full refund) (citing *Figgie*, 994 F.2d at 606); *cf. Cabrera v. Google LLC*, No. 5:11-cv-01263-EJD, 2023 WL 5279463, \*31 (N.D. Cal. Aug. 15, 2023) (noting that the *Kwikset* observation that non-kosher meat would be worthless to an observant Jew "would remain unchanged even if the non-kosher meat was nutritionally or culinarily superior to kosher meat"); *Mednick v. Precor, Inc.*, No. 14 C 3624, 2017 WL 2619139, at \*9 (N.D. Ill. June 16, 2017) (finding untenable the line of reasoning that a full refund model must depend on a "stringent assumption" that "'not a single consumer received a single benefit'" from defendant's product because "then a full refund can never be an appropriate measure of damages").

In *JUUL*, the court rejected the defendants' argument that the JUUL product "provided some value to consumers" and approved a full refund model where plaintiffs' "theory [was] that because it was illegal or inherently unfair to market and sell the JUUL product to youth, youth purchasers received no value from it at all." Analogously, it is inherently unfair for Nestlé to market and sell its Products to consumers because, contrary to its representations, the Products are sourced through child labor and result in environmental devastation. The United States government agrees that child labor is an abhorrent practice that should be combatted, authorizing the Customs and Border Protection to block goods made with forced child labor from entering the United States market under 19 U.S.C. § 1307.[6] This pall of inherent unfairness renders this case markedly different from the majority of mislabeled food cases in which consumers purchased a product advertised as containing a particular ancillary premium quality, like "all natural" or "healthy," only to discover that the product was not as advertised. *See Hawkins v. Kroger Co.*, 337 F.R.D. 518, 542 (S.D. Cal. 2020) (approving full restitution

---

[6]https://static1.squarespace.com/static/5810dda3e3df28ce37b58357/t/5e4607e90bd7ed452a1c8c6e/1581647858374/FINAL+307+PETITION+WITH+EXHIBITS.pdf

damages model where plaintiff showed "that any value she obtained by consuming the breadcrumbs was erased when she found out they contained trans fat [dangerous to human health], and that any value class members received will be erased when they find out the same.").

Given that Plaintiff's full refund theory aligns with her liability case, as the District Court correctly concluded, a full refund "may be calculated by multiplying the average retail price by the number of units sold" during the Class period, *Lambert*, 870 F.3d at 1174-75, and other formulas that approximate damages for the Class, *see id*. at 1183 & n.9. [1-ER-23]. These damages do not need to be calculated at this stage. *Lytle*, 114 F.4th at 1025; *Lambert*, 870 F.3d at 1182 ("Uncertainty regarding class members' damages does not prevent certification of a class as long as a valid method has been proposed for calculating those damages."); *Leyva v. Medline Indus. Inc*., 716 F.3d 510, 514 (9th Cir. 2013) ("that damages could feasibly and efficiently be calculated once the common liability questions are adjudicated" satisfies predominance). Fundamentally, "if there was ever a case where [a full refund] theory was appropriate, this may be it." *Suchanek v. Sturm Foods, Inc*., 311 F.R.D. 239, 258 (S.D. Ill. 2015) (approving full refund damages model where

52

because the product was "overwhelmingly instant coffee, its value is nothing[;] [t]hat is, the deceptive packaging caused consumers to pay for a product they never would have purchased had they known it was not ground coffee").

## B. Plaintiff's Full Refund Damages Model is in Accord with This Court's Decisions and California Law

Nestlé's contention that Plaintiff's full refund damages model contravenes precedent is belied by Plaintiff's citations to the above caselaw. Because Nestlé knows that this Court's decisions and California Supreme Court authority permit a full refund theory where appropriate—as here—Nestlé relies on three unpublished Ninth Circuit opinions, misconstrues California law and thus fails to demonstrate the District Court's acceptance of Plaintiff's full refund damages model was erroneous.

To start, Nestlé claims *Lambert* was "vacated" [AOB 56-7], but the Ninth Circuit recently relied on *Lambert* in decisions including *Lytle*, 114 F.4th at 1025, 1034 n.10, and *Nguyen v. Nissan North America, Inc.*, 932 F.3d 811, 817 (9th Cir. 2019). This is because the grounds on which the Supreme Court reversed *Lambert* and remanded do not affect the legal principles therein regarding class action damages calculations under

53

California law, *see Nutraceutical Corp. v. Lambert*, 586 U.S. 188, 190 (2019), and because these legal principles remain settled law in California, *In re Tobacco II*, 240 Cal. App. 4th 779, 795 (2015); *Capaci v. Sports Research Corp.*, No. 19-cv-03440-FMO-FFM, 2022 WL 1133818, *15 (C.D. Cal. Apr. 14, 2022).

In opposing class certification, Nestlé tried to distinguish *Lambert* and its progeny on the ground that Plaintiff "offered zero evidence showing that the chocolate products here would be worthless to *every one* of the millions of California consumers who bought them, absent [the Sustainability Representations]." [AOB 57]. But the District Court's determination that a full refund model is appropriate was based on classwide evidence as well as similar fact patterns discussed in *Kwikset*, as explained above. [1-ER 23] (citing Pl.'s Exs. 13 & 29 at 731).

The three unpublished Ninth Circuit opinions Nestlé relies on also do not demonstrate legal error. [AOB 55-56]. All three rely on *Tobacco II*, 240 Cal. App. 4th at 795, for the same legal proposition upon which the District Court relied—that full refunds may be available for worthless products. *Reitman v. Champion Petfoods USA, Inc.*, 830 F. App'x 880, 882 (9th Cir. 2020); *Chowning v. Kohl's Dep't Stores, Inc.*, 733 F. App'x 404,

54

406 (9th Cir. 2018); *Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 534 (9th Cir. 2016). The facts of the unpublished decisions, however, are distinguishable because, here, Plaintiff has explained why the products are valueless. *Reitman*, 830 F. App'x at 882 (plaintiff failed "to explain why a risk of contamination render[ed] the [dog food] product completely valueless"); *Chowning*, 733 F. App'x at 406 (plaintiff "admit[ted] that she received some value from the articles of clothing" at issue); *Brazil*, 660 F. App'x at 533, 535 (plaintiff did not show defendant's products, labeled "All Natural Fruit," were valueless due to the presence of synthetic citric and ascorbic acid). These unpublished decisions are entirely fact-specific and the outcomes fact-driven. Similarly, with respect to the fact-specific full refund inquiry, the facts of *Tobacco II* are distinguishable because the products there were not worthless. *Tobacco II*, 240 Cal. App. 4th at 802 (plaintiffs did not dispute that they obtained value from Marlboro Lights apart from the deceptive advertising). *Capaci v. Sports Research Corp.*, which Nestlé also cites [AOB 56], is in accord with this proposition, and its holding supports Plaintiff. *Capaci v. Sports Rsch. Corp.*, 2022 WL 1133818, at *15-17 (C.D. Cal. Apr. 14, 2022). Nestlé's assertions concerning *Kwikset* fail to show error as well. As the

55

District Court recognized, *Kwikset* demonstrates labor practices can render a product worthless even if it might otherwise have some value. *Kwikset*, 51 Cal. 4th at 328-39; [1-ER 23]. According to Nestlé, however, the court held "that *Kwikset* created a blanket rule under which every deceived consumer is entitled to recover the full purchase price of a product, no matter its true value." [AOB 60]. Nestlé misstates the Order. The District Court supported its approval of a full refund damages model because Plaintiff made a sufficient showing that the products would be worthless to consumers but for the misrepresentations by citing to Nestlé's own internal documents evidencing that Nestlé itself believes "[c]onsumers" in general care about how their products are produced, and child labor practices are "key issues" for concern "in Defendant's industry." [1-ER-23]. Contrary to Nestlé's argument that *Kwikset's* discussion of examples of features that affect a products' value illustrates "the sorts of individualized issues that preclude classwide application" of a full refund model [AOB 61], the District Court's statement that "strong consumer feelings" are the reason child labor practices are such a "key issue" in Nestlé's industry does not indicate that *individualized* "strong . . . feelings" are the basis for the court's approval of a classwide

full refund damages model. [1-ER-23]. The model is instead based on classwide evidence.

Nestlé's reliance on *Hodsdon v. Mars, Inc.*, 891 F.3d 857 (9th Cir. 2018), is woefully misplaced since in that case, the plaintiffs pled an ***omissions*** theory, arguing that the defendant had a ***duty to disclose*** information about child labor practices in its cocoa supply chain (versus here where a company voluntarily makes marketing statements on their labels), but failed to allege that the existence of slave or child labor in the supply chain affected the chocolate product's central function as chocolate—a necessary element in establishing a defendant's duty to disclose. *Id.*, 863-64. The Ninth Circuit recognized in *Hodsdon* that "the central functionality of the product is not based on [consumers'] subjective preferences about a product." *Id.*, 864. This analysis within the context of a duty to disclose omitted information, however, has no bearing on whether Plaintiff, who has backed her full refund theory with classwide evidence that Nestlé's Products are worthless to consumers, may seek a full refund of the purchase price for herself and the Class and does not undercut *Kwikset's* holding that "the economic harm—the loss of real dollars from a consumer's product—is" not undone ***even if "a***

*court might objectively view the products as functionally equivalent." Kwikset*, 51 Cal.4th at 329 (emphasis added).

Further, Nestlé's attempt to minimize *Kwikset's* relevance by claiming it is simply a case about standing fares no better. This Court has expressly relied on *Kwikset* in determining whether the plaintiff's proposed method for calculating damages satisfies the predominance requirement at the class certification stage. *See Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988-89 (9th Cir. 2014) (applying concepts from *Kwikset* in concluding that the plaintiff's proposed method for calculating restitution is not "arbitrary" under *Comcast*). In addition, far from being an "arbitrary" measure of classwide damages, Plaintiff's full refund model measures what consumers would have paid but for the misrepresentations, *i.e.*, \$0, which is consistent with her liability case and supported by classwide evidence. *Comcast* is distinguishable because there, the proposed damages methodology failed to measure damages resulting from the particular antitrust theory on which the defendant's liability was premised. *Comcast*, 569 U.S. 27 at 36. Plaintiffs' damages model does not suffer from such defect. As correctly recognized by the District Court, her "restitution theory is based on the contention that the

Sustainability Representations deceived consumers into purchasing Defendant's products and that this caused damage common to the class members," thus her theory "stems from Defendant's liability-creating actions." [1-ER-22].

Finally, Nestlé claims that the District Court improperly treated the question as to whether Nestlé's Products are worthless as a merits question not suitable for decision at class certification, but it is well-settled that whether a plaintiff will ultimately be able to prove "damages to a reasonable certainty on the basis of [her] full refund model is a question of fact that should be decided at trial." *Lambert*, 870 F.3d at 1184. Courts within this Circuit have routinely applied this principle. *See, e.g., Waldrup v. Countrywide Fin. Corp.*, 2018 WL 799156, *16 (C.D. Cal. Feb. 6, 2018) ("In seeking a full refund, plaintiffs will have the burden at trial to prove that defendant's [] violations rendered the appraisals worthless to borrowers."); *Elkies v. Johnson & Johnson Servs., Inc.*, 2018 WL 11223465, *9 (C.D. Cal. Oct. 18, 2018); *Keating v. Nordstrom, Inc.*, 2020 U.S. Dist. LEXIS 63124, *17 (D. Alaska Apr. 10, 2020); *cf. Montera v. Premier Nutrition Corp.*, 111 F.4th 1018, 1030-33 (9th Cir. 2024) (finding no error where plaintiff's counsel asked the jury for a full

refund, and the district court instructed the jury that the class was "'injured by purchasing Joint Juice if it was valueless for its advertised purpose'"). Nestlé's citation to *Comcast*, 569 U.S. at 34, for the unremarkable proposition that lower courts must determine that Rule 23 is satisfied even when that requires inquiry into the merits is of no moment because the District Court here entertained all arguments bearing on the propriety of class certification and reached a reasoned decision that a full refund damages model was appropriate in light of classwide evidence demonstrating that Nestlé's Products are worthless to consumers or, at best, have *de minimis* value. Nestlé has failed to show that the District Court's holding regarding Plaintiff's full refund model was erroneous.[7]

---

[7] Nestlé's contention that Plaintiff's full refund model is "an all-or-nothing proposition" and that "she has offered no other way for the district court to assess damages across the enormous class here" is incorrect. [AOB 63] Plaintiff offered the rebuttal declaration of Dr. William Robert Ingersoll with her class certification reply papers in response to Nestlé's opposition to Plaintiff's class certification motion. The rebuttal declaration of Dr. Ingersoll proposes an alternative methodology of measuring damages based on a price premium theory, the purpose of which is to counter Nestlé's argument that a full refund model is not appropriate in this instance. Nestlé moved to strike this rebuttal evidence, among other expert evidence offered for the first time on reply, but because the evidence was introduced on reply, the District Court did not consider this evidence in its decision on Plaintiff's class certification

## III. The District Court Correctly Applied Settled Law When it Held Plaintiff Has Standing to Seek Injunctive Relief

An injunctive relief class under Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief…is appropriate respecting the class as a whole." *DZ Rsrv.*, 96 F.4th at1232 (quoting Fed. R. Civ. P. 23(b)(2)). To establish standing for injunctive relief, "a plaintiff must show that [s]he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (citing *Friends of the Earth, Inc. v. Laidlaw*

---

motion. [ER 26] Accordingly, the District Court denied Nestlé's motion to strike as moot. Id. Should this Court find that a full refund is improper, Plaintiff should be permitted to file a renewed motion for class certification that relies upon a revised conjoint study proposed by Dr. Ingersoll. *See Van v. LLR, Inc.*, 61 F.4th 1053, 1058 (9th Cir. 2023) ("To afford the district court a new opportunity to weigh the predominance of class issues against this individualized issue, we vacate the district court's order certifying the class and remand for further proceedings."); *McMorrow v. Mondelēz Int'l, Inc.*, No. 17-cv-2327-BAS-JLB, 2021 WL 859137, \*7 (S.D. Cal. Mar. 8, 2021) (granting renewed motion for class certification and noting expert "redesigned the survey, this time with a proposal to isolate the price premium attached to the term, 'nutritious'").

*Envtl. Servs. (TOC), Inc*., 528 U.S. 167, 180-81 (2000)). "The plaintiff must demonstrate that [s]he has suffered or is threatened with a concrete and particularized legal harm, coupled with a sufficient likelihood that [s]he will again be wronged in a similar way." *Bates v. UPS*, 511 F.3d 974, 985 (9th Cir. 2007) (citations and quotation marks omitted). Plaintiffs in consumer fraud cases "can satisfy the imminent injury requirement by showing they 'will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although [they] would like to.'" *DZ Rsrv*., 96 F.4th at 1240 (quoting *Davidson v. Kimberly-Clark Corp*., 889 F.3d 956, 970 (9th Cir. 2018)).

The District Court properly applied this well-settled law in concluding that Plaintiff has standing to pursue injunctive relief, as she would like to purchase the Products in the future if and when they are produced as advertised, but she can no longer rely on the accuracy of the Sustainability Representations and cannot readily determine whether they have been corrected. Nestlé's contortions of Plaintiff's deposition testimony do not demonstrate error in the District Court's holding.

### A. Plaintiff Has Standing to Seek Injunctive Relief

Citing *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970 (9th Cir. 2018), the District Court held Plaintiff has standing to seek injunctive relief because she "testified she would like to purchase Defendant's products again in the future" but "stopped purchasing them since learning about child labor and environmental damage and has not purchased again because she no longer can rely on Defendant's labeling," [1-ER 7]. Nestlé contends this ruling was erroneous because the District Court ignored testimony by Plaintiff that allegedly contradicts it, including testimony that Plaintiff's concerns with the labels have been remedied, she will buy the Products again, and the efforts of the Nestlé Cocoa Plan substantiate the Sustainability Representations. [AOB 64]. The District Court, however, addressed and rejected Nestlé's arguments that Plaintiff "admitted . . . the labels were not misleading as Defendant was not falling short of its representations," holding instead that "Defendant misconstrues Plaintiff's testimony." [1-ER-6]. The court stated, "Plaintiff testified that the labels were deceptive because the environmental and social responsibility representations were not true,"

63

*id.* [citing 1-SER-126-240], and "[b]ecause of the deception, Plaintiff has lost trust in Defendant's representations," *id.*

Furthermore, the District Court credited Plaintiff's testimony that she would like to purchase the Products again in the future, [1-ER-7], but she has stopped purchasing them since learning about the child labor and environmental damage and has not purchased them again because she can no longer rely on Nestlé's labeling, *id.* Plaintiff testified, "I hope the packaging gets changed, so I can go about my way and buy Nestlé again." [1-SER-136; *see also id.* at 1-SER-202-203, 236. The court carefully analyzed the full record, including the testimony Nestlé cited, and ruled against Nestlé. That is far from legal error.

Nestlé maintains that "there is no dispute that [it] has long satisfied" the conditions Plaintiff allegedly testified would substantiate its "sustainably sourced" label on its Products since before she became the plaintiff in this case, but Nestlé's cherry-picked citations of Plaintiff's deposition testimony are red herrings. [AOB 67]. Plaintiff testified that she "was really upset" and it "broke" her "heart" to learn that Nestlé's package labeling was untrue because, in reality, "children [are] trafficked, bought, carrying pesticides and are six years old, the ground

that they're harvesting isn't taken care of, [and] the continuation of chopping down the rainforest [sic], instead of properly managing the environment." [1-SER-107] (citing 1-SER-128-129, 130-131 (the Product packaging "referenced untruths" because Nestlé is in fact using child labor), *see* 1-SER-134, 138, 141-142, 143-144 (the "pivotal thing" that led Falcone to stop buying chocolate was "the deception" and the "continuation of slave labor, the reduction of the rainforest"), 1-SER-145-146 (testifying it is "really damaging" that the Products were "produced . . . on the backs of little kids").[8]

She also testified that steps Nestlé could take to make her buy the Products again include ensuring that "no child under 15 works in those [cocoa] fields," [1-SER-175, Tr. Dep. Falcone 122:2-4]; that "the fields are taken care of," and that "instead of cutting down more rainforest, work

---

[8] See also 1-SER-147-148 (testifying the UTZ and Rainforest Alliance logos should not be on the Product packaging, even the back or the bottom), 1-SER-149 (the NCP website shows the number of child slaves is rising), 1-SER-150 (despite Nestlé's statements, the number of child slaves "just keeps going up"), 1-SER-151-152, 153 (acknowledging she is claiming she lost money), 1-SER-154-157, 159, 161, 163-168 ("made with sustainable cocoa" means taking care of the environment and the farmers), 1-SER-169-170, 178-179, 188-194, 198, 201, 217-219, 220-221, 228-230, 232-234, 238-239.

on what you have already." [4-ER-493] Ultimately, Plaintiff wants Nestlé "to do the right thing," which means "[d]on't label something that's not true….and don't deceive people who shop." [1-SER-107]

## B. The District Court's Certification of the Injunctive Relief Class under Rule 23(b)(2) Is Appropriate

Nestlé cites *Davidson* for the proposition that a plaintiff has standing to seek label changes if she has "no way of determining" the underlying truth of the label statements moving forward. [AOB 69] This misstates the rule in *Davidson*, which includes no such requirement. *Davidson*, 889 F.3d at 969-70.

Nestlé then argues the Court should reverse the District Court's ruling because, according to Nestlé, Plaintiff can verify Nestlé's labeling statements by accessing its publicly available Cocoa Plan reports. [AOB 70] This argument fails entirely. Going forward, while in a grocery store, for example, at the point of purchase, Plaintiff cannot rely on the Sustainability Representations because she cannot reasonably know whether Nestlé has in fact eradicated child labor and environmental destruction from its supply chain in West Africa. Contrary to Nestlé's assertions [AOB 69], the existence of information on the Nestlé Cocoa Plan website does not clear up the confusion because Plaintiff "[doesn't]

66

know what to trust anymore," *see* [1-ER-7]; she does not believe that the Cocoa Plan website is accurate since despite Nestlé's promise to reduce the number of child laborers, the number has increased [1-SER-109] (quoting [1-SER-232-230](testifying that Nestlé's own document shows the child labor rate increased from 17% to 23% from 2017 to 2019...") ; and the onus is not on Plaintiff at the point of sale to do extensive research to try to discover the truth. *See Tucker v. Post Consumer Brands, LLC*, No. 19-cv-03993-YGR, 2020 WL 1929368, at \*6 (N.D. Cal. Apr. 21, 2020); *Shank v. Presidio Brands, Inc.*, No. 17-cv-00232-DMR, 2018 WL 1948830, at \*5 (N.D. Cal. Apr. 25, 2018). If Plaintiff cannot trust the labeling but desires to purchase the Product, then *Davidson* is satisfied. *Davidson*, 889 F.3d at 969-70.

Nestlé's other authority does not move the needle. In *Kenney v. Fruit of the Earth, Inc.,* 2024 WL 457898, \*1 (9th Cir. Oct. 25, 2024), the plaintiff was aware that the back label of the at-issue sunscreen product disclosed a chemical active ingredient such that the plaintiff would not need to purchase the sunscreen again to determine whether it contained non-zinc active ingredients. No similar facts exist here. The out-of-Circuit decisions Nestlé cites are not controlling and, in any event, are also

67

distinguishable. In *Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 (2d Cir. 2020), the Second Circuit evaluated a classwide settlement approval order and noted that past purchasers of a product who claim to have been deceived by the product's packaging have simply alleged a past harm and are not bound to purchase a product again. Moreover, the class of Barilla purchasers would "not again be under the illusion that the boxes of the newer pastas are filled in the same way as the boxes of the older pastas" because the "next time they buy one of the newer pastas, they will be doing so with exactly the level of information that they claim they were owed from the beginning." *Id.*, 148. Here, by contrast, Plaintiff has satisfied *Davidson* by specifically testifying "she would like to purchase Defendant's products again in the future" but "stopped purchasing them since learning about child labor and environmental damage and has not purchased again because she no longer can rely on Defendant's labeling," [1-ER-7]. Plaintiff "[doesn't] know what to trust anymore," *see* [1-ER-7], and there is no readily-available information at the point of purchase that would improve Plaintiff's position as a knowledgeable consumer.

In *In re Johnson & Johnson Talcum Powder Products Marketing, Sales Practices & Liability Litigation*, 903 F.3d 278, 292-93 (3d Cir.

68

2018), the plaintiff sued the defendant for failure to warn of certain health risks on its baby powder product and was presently aware of those risks; accordingly, the Third Circuit queried how the plaintiff could possibly be deceived again into buying the product without being aware of those same risks. The instant matter is not a failure to warn case, and, again, Plaintiff can no longer rely on Nestlé's labeling and does not know what to trust. [1-ER-7]. And as for *Conrad v. Boiron, Inc.*, 869 F.3d 536, 542 (7th Cir. 2017), the Ninth Circuit expressly distinguished the matter in *Davidson*, observing that the plaintiff in *Conrad* did not "sufficiently allege their intention to repurchase the product at issue as Davidson does here." *Davidson*, 889 F.3d at 969 n. 7. Plaintiff here has made clear that she would like to purchase Nestlé's Products in the future but can no longer rely on the accuracy of the Sustainability Representations.

Suffice to say, Nestlé's argument fails to show error because it is a disagreement with the District Court's application of the law to the facts of the case, not an assertion that it applied the wrong legal standard. *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 962 (9th Cir. 2005).

## CONCLUSION

For the reasons given above, the District Court's Order certifying the Class should be affirmed.

Respectfully submitted,

Date: May 30, 2025

**SCHONBRUN SEPLOW HARRIS HOFFMAN & ZELDES, LLP**

By: *s/ Helen I. Zeldes*

Helen I. Zeldes
California State Bar No. 220051
*hzeldes@sshhzlaw.com*
Joshua A. Fields
California State Bar No. 242938
*jfields@sshhzlaw.com*
501 West Broadway, Suite 800
San Diego, California 92101
Telephone: (619) 400-4990

**REESE LLP**

George V. Granade
California State Bar No. 316050
*ggranade@reesellp.com*
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070

**REESE LLP**

Michael R. Reese
California State Bar No. 206773
*mreese@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

*Counsel for Plaintiff-Appellee Marie Falcone and the Class.*

## **CERTIFICATE OF COMPLIANCE**

I CERTIFY THAT PURSUANT TO Fed. R. App. R. 32 (a)(7)(B) and Ninth Circuit Rule 32-1(a), the attached answering brief is proportionately spaced and has a typeface of 14 point.

I further certify that this brief contains 13,982 words as calculated by Microsoft Word, excluding those parts exempted under Rule 32(f).

Date: May 30, 2025        **SCHONBRUN SEPLOW HARRIS HOFFMAN & ZELDES, LLP**

By: *s/ Helen I. Zeldes*

Helen I. Zeldes
*hzeldes@sshhzlaw.com*

*Counsel for Plaintiff-Appellee Marie Falcone and the Class.*

71

## CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2025 I filed the foregoing ANSWERING BRIEF OF PLAINTIFF-APPELLEE MARIE FALCONE with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the 9th Circuit electronic filing CM/ECF system.

I hereby certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Date: May 30, 2025          **SCHONBRUN SEPLOW HARRIS HOFFMAN & ZELDES, LLP**

By: *s/ Helen I. Zeldes*

Helen I. Zeldes
*hzeldes@sshhzlaw.com*

*Counsel for Plaintiff-Appellee Marie Falcone and the Class.*