No. 24-7707

**IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**

MARIE FALCONE,
individually and on behalf of all others similarly situated,

*Plaintiff-Appellee*,

v.

NESTLÉ USA, INC.,

*Defendant-Appellant*.

On Appeal from the United States District Court
for the Southern District of California
Case No. 3:19-cv-723 | Hon. M. James Lorenz

# APPELLANT'S REPLY BRIEF

Al Kelly
GIBSON, DUNN & CRUTCHER LLP
1900 Lawrence Street, #3000
Denver, CO 80202
(303) 298-5700

Theodore J. Boutrous Jr.
Christopher Chorba
Perlette Jura
Timothy W. Loose
Bradley J. Hamburger
Matt Aidan Getz
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
(213) 229-7000

*Counsel for Appellant Nestlé USA, Inc.*

# TABLE OF CONTENTS

Page

INTRODUCTION ..... 1

ARGUMENT ..... 3

I. Falcone Asks for Unwarranted Deference ..... 3

II. Falcone's Damages Class Lacks Commonality and Predominance ..... 6

III. Falcone's "Full Refund" Damages Model Does Not Match the Class Claims, the Record, or the Case Law ..... 24

IV. Falcone Lacks Standing to Seek Injunctive Relief and Cannot Represent a Rule 23(b)(2) Class ..... 31

CONCLUSION ..... 35

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013) .......... 5

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) .......... 22, 23

*Avritt v. Reliastar Life Ins. Co.*,
615 F.3d 1023 (8th Cir. 2010) .......... 8, 13

*Bahamas Surgery Ctr., LLC v. Kimberly-Clark Corp.*,
820 F. App'x 563 (9th Cir. 2020) .......... 19

*Berger v. Home Depot USA, Inc.*,
741 F.3d 1061 (9th Cir. 2014) .......... 7, 9

*Brown v. La.-Pac. Corp.*,
820 F.3d 339 (8th Cir. 2016) .......... 23

*Bustamante v. KIND, LLC*,
100 F.4th 419 (2d Cir. 2024) .......... 16, 21

*Castillo v. Bank of Am., NA*,
980 F.3d 723 (9th Cir. 2020) .......... 16

*Cohen v. DIRECTV, Inc.*,
178 Cal. App. 4th 966 (2009) .......... 8, 12

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) .......... 3, 4, 14, 24, 26, 28, 29, 30

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) .......... 31, 33, 34

*Davis-Miller v. Auto. Club of S. Cal.*,
201 Cal. App. 4th 106 (2011) .......... 12

*Downey v. Pub. Storage, Inc.*,
44 Cal. App. 5th 1103 (2020) .......................................... 6, 7, 12, 17

*DZ Rsrv. v. Meta Platforms, Inc.*,
96 F.4th 1223 (9th Cir. 2024) .......................................................... 31

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011) ..................................................................... 6, 23

*GE Co. v. Joiner*,
522 U.S. 136 (1997) ........................................................................... 4

*Hodsdon v. Mars, Inc.*,
891 F.3d 857 (9th Cir. 2018) ............................................................ 25

*Juliana v. United States*,
947 F.3d 1159 (9th Cir. 2020) ........................................................... 34

*Kenney v. Fruit of the Earth, Inc.*,
2024 WL 4578981 (9th Cir. Oct. 25, 2024) ....................................... 33

*Kizer v. Tristar Risk Mgmt.*,
13 Cal. App. 5th 830 (2017) .............................................................. 11

*Knapp v. AT&T Wireless Servs., Inc.*,
195 Cal. App. 4th 932 (2011) ............................................................. 12

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011) ................................................. 17, 24, 27, 28

*Lambert v. Neutraceutical Corp.*,
870 F.3d 1170 (9th Cir. 2017) ..................................................... 27, 29

*Leyva v. Medline Indus. Inc.*,
716 F.3d 510 (9th Cir. 2013) ............................................................. 24

*Lytle v. Nutramax Lab'ys, Inc.*,
114 F.4th 1011 (9th Cir. 2024) ................................ 17, 18, 19, 20, 22

*Major v. Ocean Spray Cranberries, Inc.*,
690 F. App'x 564 (9th Cir. 2017) ...................................................... 22

*Marlo v. UPS, Inc.*,
639 F.3d 942 (9th Cir. 2011)........................................................14

*Mass. Mut. Life Ins. Co. v. Superior Court*,
97 Cal. App. 4th 1282 (2002)..................................................9, 10

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012)..........................................................7

*Miller v. Gammie*,
335 F.3d 889 (9th Cir. 2003)..........................................................4

*Moore v. Mars Petcare US, Inc.*,
966 F.3d 1007 (9th Cir. 2020)........................................................8

*Moorer v. StemGenex Med. Grp., Inc.*,
830 F. App'x 218 (9th Cir. 2020)...................................................8

*Myers v. Starbucks Corp.*,
2024 WL 3102800 (9th Cir. June 24, 2024)................................19

*NRDC v. Haaland*,
102 F.4th 1045 (9th Cir. 2024)....................................................30

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022)......................................................5, 8

*Ortiz v. Fibreboard Corp.*,
527 U.S. 815 (1999)........................................................................5

*In re Petrobras Sec.*,
862 F.3d 250 (2d Cir. 2017)...........................................................4

*Pfizer Inc. v. Superior Court*,
182 Cal. App. 4th 622 (2010).......................................................12

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
725 F.3d 244 (D.C. Cir. 2013)......................................................24

*In re Salomon Analyst Metromedia Litig.*,
544 F.3d 474 (2d Cir. 2008) .......... 4

*Sevidal v. Target Corp.*,
189 Cal. App. 4th 905 (2010) .......... 6, 10, 11, 12, 13, 14

*Shaeffer v. Califia Farms, LLC*,
44 Cal. App. 5th 1125 (2020) .......... 17, 19, 22

*Small v. Allianz Life Ins. Co. of N. Am.*,
122 F.4th 1182 (9th Cir. 2024) .......... 3

*Speerly v. GM, LLC*,
— F.4th —, 2025 WL 1775640
(6th Cir. June 27, 2025) .......... 2, 17, 21

*Stearns v. Ticketmaster Corp.*,
655 F.3d 1013 (9th Cir. 2011) .......... 18

*In re Tobacco Cases II*,
240 Cal. App. 4th 779 (2015) .......... 25, 29

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009) .......... 11, 12, 13

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 8, 12

*In re Vioxx Class Cases*,
180 Cal. App. 4th 116 (2009) .......... 25

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .......... 1, 4, 5, 12, 13, 20, 23

*Weinstat v. Dentsply Int'l, Inc.*,
180 Cal. App. 4th 1213 (2010) .......... 9, 10

*Wolin v. Jaguar Land Rover N. Am., LLC*,
617 F.3d 1168 (9th Cir. 2010) .......... 3

**Constitutional Provisions**

U.S. Const. amend. V ........................................................................ 5

U.S. Const. amend. VII ...................................................................... 5

U.S. Const. art. III ........................................................................ 8, 12

**Statutes**

28 U.S.C. § 2072 ........................................................................ 12, 13

**Regulations**

Guides for the Use of Environmental Marketing Claims,
77 Fed. Reg. 62122 (Oct. 11, 2022) ............................................. 24

**Rules**

Fed. R. Civ. P. 23 ........................................................ 1, 2, 4, 5, 13

Fed. R. Civ. P. 23(a) ........................................................................ 3

Fed. R. Civ. P. 23(b)(2) .................................................................. 31

Fed. R. Civ. P. 23(b)(3) .................................................................. 26

Fed. R. Civ. P. 23(f) ........................................................................ 3

Fed. R. Civ. P. 82 .......................................................................... 13

## INTRODUCTION

Because "Rule 23 does not set forth a mere pleading standard," plaintiffs seeking class certification must "prove" its requirements are "*in fact*" satisfied. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Yet Falcone's defense of certification rests on one unsupported assumption after another. This Court, she insists, should assume that every member of the sprawling class actually saw the statements she challenges *and* relied on those statements in deciding to buy Nestlé USA chocolate products. The Court should also, Falcone continues, assume that every single class member would not have paid anything for any of the products absent the statements. And on top of all that, the Court should ignore that Falcone gave sworn testimony establishing that she faces no risk of future injury from revised labels she described as "perfect."

But *evidence*, not assumptions, is required for class certification. And each of the assumptions Falcone asks for is contradicted by extensive evidence: many consumers did not see the small-font, mostly back-label statements before buying Nestlé USA chocolate products; still more did not prioritize those statements in deciding

whether to buy; others still would have paid something for the products even absent those statements; and Falcone's own testimony about her satisfaction with the current labels remains clear as day.

Legally, Falcone fares no better. Federal and California courts alike have rejected evidence-free assumptions that consumers were exposed to or relied on challenged misrepresentations, that allegedly mislabeled products are automatically worthless, and that consumers who understand what labels mean and how to confirm their accuracy are somehow at risk of future injury from the labels.

A class action is not a vehicle to obtain an advisory opinion about how a sweeping class *might* have been injured. Certification is available only if the plaintiff proves that the claims and defenses relevant to each class member can be resolved without resort to individualized proceedings. And that inquiry "cannot be answered by 'maybe,' 'perhaps,' and other 'what ifs' that leave the hard questions for later or, worse, that ignore the questions that cut against certification." *Speerly v. GM, LLC*, — F.4th —, 2025 WL 1775640, at *11 (6th Cir. June 27, 2025) (en banc). Because Falcone did not satisfy Rule 23's core requirements, this Court should reverse.

# ARGUMENT

## I. Falcone Asks for Unwarranted Deference.

This Court granted Rule 23(f) review because the certification order implicates recurring, unresolved issues. But with a paean to deference, Falcone suggests this Court should rubber-stamp the order, citing irrelevant details such as the district judge's time on the bench or the mere fact that the order granted certification. AB 1.

That is not the law. This Court reviews class-certification decisions for abuse of discretion, but "'the district court never has discretion to get the law wrong.'" *Small v. Allianz Life Ins. Co. of N. Am.*, 122 F.4th 1182, 1191 (9th Cir. 2024). And class certification is far from automatic; it "is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).

Falcone also misplaces her reliance on the notion that class-certification grants deserve "more deference" than denials. AB 1 (quoting *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1171 (9th Cir. 2010)). *Wolin* borrowed that notion from loose language in a Second Circuit decision, *Wolin*, 617 F.3d at 1171 (citing

*In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474, 480 (2d Cir. 2008)), only to have the Second Circuit then repudiate it as "out of step with recent Supreme Court authority," *In re Petrobras Sec.*, 862 F.3d 250, 260 n.11 (2d Cir. 2017) (citing, *e.g.*, *Comcast*, 569 U.S. 27, and *Dukes*, 564 U.S. 338).

The Second Circuit was right to sweep the more-deference theory into the dustbin. The Supreme Court has rejected the idea that courts applying abuse-of-discretion review should "categorically distinguish" between granted and denied motions. *GE Co. v. Joiner*, 522 U.S. 136, 142 (1997). And as the Second Circuit observed, the more-deference theory has been squarely "undercut" by a spate of recent Supreme Court decisions. *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). A thumb on the certification side of the scale cannot be squared with the Supreme Court's instructions on the "'rigorous analysis'" Rule 23 requires or the burden of "'affirmatively demonstra[ting] . . . compliance'" with the Rule that is assigned to plaintiffs. *Comcast*, 569 U.S. at 33; *Dukes*, 564 U.S. at 351. It also contradicts the Supreme Court's analytical approach: neither in *Dukes* nor in *Comcast* nor in any other case arising from

a class-certification grant has the Court ever suggested that greater deference should be due. Quite the contrary: the Court has recognized that Rule 23's "stringent requirements . . . in practice exclude most claims." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013). If anything, because a class action "is 'an exception to the usual rule,'" *Dukes*, 564 U.S. at 348, and raises "serious constitutional concerns" under the Due Process Clause and Seventh Amendment, *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845-46 (1999), any thumb on the scale would have to weigh *against* certification.

All of this is doubtless why, although the more-deference notion still makes irregular appearances in this Court's decisions, the Court usually (and properly) reviews class-certification grants under a straightforward abuse-of-discretion framework, unadorned by additional deference. *E.g.*, *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 663 (9th Cir. 2022) (en banc). This Court should address the appropriateness of certification based on a full assessment of the law and evidence—and reject Falcone's invitation to uncritically endorse the district court's ruling.

## II. Falcone's Damages Class Lacks Commonality and Predominance.

The problems in the certification order begin with "the elements of the underlying cause[s] of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). Falcone's CLRA and UCL claims require proof that class members "were exposed to the advertisement[s]" and that the ads were "deceptive" in a "material" way. *Downey v. Pub. Storage, Inc.*, 44 Cal. App. 5th 1103, 1115 (2020). Resolving those claims will turn on individualized inquiries that swamp common issues because (1) many class members never saw the small, mostly back-label statements (creating issues of exposure) and (2) class members' understanding of and importance attributed to the statements vary substantially (reliance). Falcone offers no way around these facts and, instead, tries to rewrite California law and foundational class-certification principles.

**A. Exposure.** A consumer cannot bring claims like Falcone's if she "never saw . . . the alleged misrepresentation." *Sevidal v. Target Corp.*, 189 Cal. App. 4th 905, 910 (2010). California's consumer-deception laws allow lawsuits only by consumers who were deceived,

and a consumer cannot be deceived by something she never saw. And that is as true in a class action as in any other case. As many courts have recognized, no class of consumers can be certified "when the evidence demonstrates variations in how—and, critically, *whether*—class members were exposed to an allegedly deceptive advertisement." *Downey*, 44 Cal. App. 5th at 1117; *accord, e.g.*, *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012).

The evidence here shows no classwide exposure to the challenged statements. For one thing, the class covers dozens of labels featuring different combinations of different statements in different places, OB 8-10, meaning consumers necessarily were not "exposed to the same misrepresentations," *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1069 (9th Cir. 2014). For another, the evidence reveals variation in whether class members saw the challenged statements *at all*. After reviewing survey evidence, pre-litigation market research, and academic literature, Nestlé USA's expert concluded that "virtually *no one*" would have seen the small-font, mostly back-label statements Falcone challenges. 5-ER-723 ¶ 66; OB 30-31. That finding is unremarkable, as this case involves low-cost, name-brand

goods that many consumers buy without "read[ing] about the product on . . . the back of the box." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1018 (9th Cir. 2020) (cleaned up).

Because many class members "never saw the alleged misrepresentation[s]," under the CLRA and UCL, they "were, by definition, not injured and cannot recover." *Moorer v. StemGenex Med. Grp., Inc.*, 830 F. App'x 218, 220 (9th Cir. 2020); *accord, e.g.*, *Cohen v. DIRECTV, Inc.*, 178 Cal. App. 4th 966, 979-80 (2009) (if consumers "never saw [the challenged] advertisements or representations," the CLRA and UCL do not "authorize an award for injunctive relief and/or restitution"). Nor could class members have suffered any Article III injury traceable to statements they never knew existed. *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1034 (8th Cir. 2010) (rejecting certification of class raising UCL claims due to lack of Article III standing); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 423-31 (2021). And sorting out which class members actually saw which statements on which labels would require "individualized inquiries" that would "predominate over common questions." *Olean*, 31 F.4th at 668 n.12.

Falcone offers five unpersuasive responses.

*First*, she says the only thing required to establish classwide exposure is that the challenged statements were "present on all the labels," regardless of whether people actually read them. AB 24. But the cases she cites do not support that proposition.

Falcone cites *Berger*, for instance, for the notion that a plaintiff proves exposure whenever statements were "actually made" to class members. AB 16. But *Berger* affirmed the *denial* of class certification on the ground that not all class members were "exposed" to allegedly deceptive statements, in part because there was no evidence that the "language and design" of the contracts at issue "alert[ed] customers" to the issues the plaintiff sued over—i.e., there was insufficient classwide evidence that consumers actually would have seen the relevant language. 741 F.3d at 1069. Contrary to Falcone's suggestion, *Berger* did not hold that exposure could be found merely when consumers *could have* seen the statements.

Nor do *Weinstat v. Dentsply International, Inc.*, 180 Cal. App. 4th 1213 (2010), or *Massachusetts Mutual Life Insurance Co. v. Superior Court*, 97 Cal. App. 4th 1282 (2002), help Falcone. *Weinstat*

involved claims that the defendant "concealed" from dentists that an oral-surgery device was "unsafe for [its intended] use." 180 Cal. App. 4th at 1220. In that unrelated context, specific affirmative misrepresentations were irrelevant because "nondisclosures" of the safety defect would have been material to any buyer. *Id.* at 1223 n.8. Yet Falcone admits she does not assert any nondisclosure-based theory. AB 57. *Massachusetts Mutual*, too, involved the alleged "failure to disclose" information about dividend rates in an insurance policy, and likewise has nothing to offer in this case about alleged affirmative misrepresentations on labels. 97 Cal. App. 4th at 1286.

Falcone insists that cases from this Court and California courts requiring consumers to have "viewed" or "seen" the challenged statements are irrelevant because they "did not concern product labeling." AB 25. But Falcone never explains why the exposure analysis for labels would be different from the analysis for "advertisements." *Id.*

In reality, the exposure analysis works the same. In *Sevidal*, for instance, consumers viewing products on Target's website *could* click on an "Additional Info" tab, where they would see the challenged "Made in US" claim. 189 Cal. App. 4th at 913. But consumers

also could "purchase an item without ever seeing whether it is identified as 'Made in US'"—meaning many "absent class members never saw the . . . alleged misrepresentation." *Id.* at 910, 913. The court thus found no uniform exposure and denied certification. As in *Sevidal*, so too here: consumers buying Nestlé USA's chocolate products *might* have looked at back-label statements of the sort Falcone challenges, but it was also possible (and, according to the evidence, far more likely) for consumers to buy the products without ever seeing those statements. Whether the cases involve advertisements or statements on labels, the core point remains: a consumer cannot be injured by an alleged misrepresentation she never saw.

*Second*, Falcone argues that courts can certify consumer-deception classes provided the named plaintiff was exposed to the challenged statements, even if other class members were not. AB 14-19. That argument relies on a flawed reading of *In re Tobacco II Cases*, 46 Cal. 4th 298 (2009). California "appellate decisions have concluded *Tobacco II* is 'irrelevant' to a class certification motion" because it dealt only with class representatives' standing rather than "an examination of commonality." *Kizer v. Tristar Risk Mgmt.*, 13

Cal. App. 5th 830, 849 (2017). Thus, for more than a decade, California courts have held that *Tobacco II* did not "abrogate[] the requirements of exposure and deception that . . . must be proven when plaintiffs seek to recover restitution under the unfair competition law and false advertising law." *Downey*, 44 Cal. App. 5th at 1120; *accord Cohen*, 178 Cal. App. 4th at 980-81; *Sevidal*, 189 Cal. App. 4th at 921-28; *Pfizer Inc. v. Superior Court*, 182 Cal. App. 4th 622, 631-34 (2010); *Knapp v. AT&T Wireless Servs., Inc.*, 195 Cal. App. 4th 932, 945 (2011); *Davis-Miller v. Auto. Club of S. Cal.*, 201 Cal. App. 4th 106, 123-25 (2011).

Even if Falcone's argument worked as a matter of California law, it would not in federal court because it would violate the Rules Enabling Act, 28 U.S.C. § 2072(b). Permitting absent class members to recover damages based on what *someone else* saw would "enlarge . . . [their] substantive right[s]"; it would give them a windfall they never could have obtained in individual cases, where they would have to prove that they saw the challenged statements. *Dukes*, 564 U.S. at 367 (quoting 28 U.S.C. § 2072(b)). And that problem is just as grave when seen through the lens of Article III. *TransUnion*, 594 U.S.

at 431; *see* Fed. R. Civ. P. 82 (Federal Rules cannot augment "the jurisdiction of the district courts"). As the Eighth Circuit put it: any view "that *Tobacco II* holds that a single injured plaintiff may bring a class action on behalf of a group of individuals who may not have had a cause of action themselves . . . is inconsistent with the doctrine of standing as applied by federal courts." *Avritt*, 615 F.3d at 1034.

Consider the experience of Dr. Andrea Matthews, Falcone's consumer-perception expert. Dr. Matthews testified that she bought Toll House chocolate chips but did not feel "deceived" because she "did not specifically look at the sustainability claim." 2-ER-64. In an individual case, Dr. Matthews would have no claim because she "never saw" the challenged statements and so never "'lost money or property as a result of'" the statements. *Sevidal*, 189 Cal. App. 4th at 910, 923-24. But by Falcone's reasoning, Dr. Matthews would gain a claim as an absent class member simply because the statements were "disseminated" to her. AB 24. Rule 23 cannot create a claim where none existed before, for Dr. Matthews or any other consumer who never saw the challenged statements. *Dukes*, 564 U.S. at 367 (citing 28 U.S.C. § 2072(b)).

*Third*, Falcone argues that Nestlé USA did not provide enough evidence that "class members did *not* see" the challenged statements. AB 32 (emphasis altered). That, however, gets things backward. Falcone bears the burden of showing sufficient exposure to warrant certification; it is never the defendant's burden to disprove the appropriateness of certification. *Marlo v. UPS, Inc.*, 639 F.3d 942, 947 (9th Cir. 2011); *see Comcast*, 569 U.S. at 33.

Falcone has not carried that burden here. She offers no evidence that all or even most class members saw the statements. Instead, she insists that Nestlé USA must have *wanted* consumers to read the statements because it put them on product labels. AB 32. But Falcone cites no authority for the notion that exposure is satisfied simply because a defendant *hopes* consumers would see statements, even if many do not. And that notion is inconsistent with decisions like *Sevidal*: Target presumably wanted consumers to see its "Made in US" representations in case they were inclined to "purchase merchandise made by American workers," 189 Cal. App. 4th at 911, yet the Court of Appeal held that was insufficient classwide evidence of exposure, *id.* at 910, 913.

The problem runs deeper still because Falcone barely disputes the evidence Nestlé USA presented showing that consumers did *not* see the statements. She swipes at some of that evidence, including a survey indicating that fewer than 15% of consumers saw the challenged statements that she contends "artificially deflates" the statistical likelihood of exposure. AB 33. But she never disputes that many or most consumers, all of whom are lumped into the class, never saw the statements. And with respect to Nestlé USA's other evidence—including an eye-tracking study showing that consumers often do not look at the part of the label with the challenged statements, OB 31—Falcone offers an incorrect and ultimately futile assertion that the evidence "goes only to materiality." AB 34; *see infra* at 17-24 (no basis to presume materiality, either).

*Fourth*, Falcone argues that variation in the challenged statements is irrelevant because she thinks statements such as "supporting farmers" and "sustainably harvested" all "mean[] the same thing." AB 34-35. Even if that pure say-so were enough for Falcone's individual claims, she provides no evidence that *all consumers* in the class would find those statements to be equivalent. The best she can

do is cite internal emails suggesting that some Nestlé USA employees used the terms interchangeably. AB 35. But even if Nestlé USA "had its own conception of the" statements, that would not reveal any "consumer's understanding" of those statements. *Bustamante v. KIND, LLC*, 100 F.4th 419, 433 (2d Cir. 2024). And Falcone's desire to treat those terms as interchangeable flies in the face of the record evidence demonstrating that consumers do not view them that way. 5-ER-774-78 ¶¶ 132-35, 151.

*Fifth*, Falcone asserts that exposure creates no standing issues because "all class members were financially injured." AB 36. That assertion is not grounded in any classwide evidence. Falcone never explains how consumers could be "injured" by small-font, back-label statements they never saw. And this Court has rejected that very notion, explaining that, absent exposure, consumers "'could not have been harmed by the defendant's allegedly unlawful conduct.'" *Castillo v. Bank of Am., NA*, 980 F.3d 723, 730 (9th Cir. 2020).

**B. Reliance.** Yet another element of the claims Falcone advances on behalf of the class precludes certification: she has no

classwide way to determine whether individual class members relied on the deceptive statements she alleges.

To recover under California's false-advertising statutes, a consumer must show both that the challenged representations were "likely to deceive" a hypothetical "reasonable consumer" *and* that she in fact "relied on" them in buying the product. *Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1137 (2020) (cleaned up). As the California Supreme Court has made clear, there is no getting around the reliance requirement: courts "allow one party who subjectively relied on a particular deception in entering a transaction to sue, while simultaneously precluding another who subjectively did not so rely from suing." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 330 n.14 (2011). For this reason, "reliance tends to pose 'an insuperable barrier to class certification.'" *Speerly*, 2025 WL 1775640, at *16.

This Court and California courts invoke "materiality" in assessing reliance in class actions. *See, e.g.*, *Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1022 (9th Cir. 2024); *Downey*, 44 Cal. App. 5th at 1115. If a plaintiff presents "evidence to show that the challenged statements would be materially misleading to a reasonable

consumer," then courts presume reliance. *Lytle*, 114 F.4th at 1035. But that presumption is rebutted whenever evidence indicates that "individualized assessments will be needed to determine whether any given class member actually relied on" the statements when buying the product. *Id.* If such assessments are required, "the class should not be certified." *Id.*; *see Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022-23 (9th Cir. 2011) (if alleged misrepresentation "is not material as to all class members," the class "should not be certified").

Falcone falls short both in seeking the presumption and in trying to explain why any presumption would not be rebutted here.

**1.** No presumption of reliance applies because Falcone offered no evidence to show that the challenged statements would be "misleading to a reasonable consumer." *Lytle*, 114 F.4th at 1035. Falcone theorizes that statements such as "supporting farmers" imply that the products are made without any risks of "child labor" in the supply chain. AB 38 n.3. But the labels do not say that, and nothing in the record substantiates her assertion that consumers would see

"supporting farmers" or similar statements and leap to conclusions about each link in the supply chain.

That gap matters. Courts routinely reject theories of deception that require these sorts of "inferential leaps" based on implied statements. *Shaeffer*, 44 Cal. App. 5th at 1139. In fact, this Court rejected California consumer-deception claims last year based on similar statements about Rainforest Alliance and cocoa sourcing, declining to make the same inferential leaps Falcone requests from such statements to assertions about child labor or deforestation. *Myers v. Starbucks Corp.*, 2024 WL 3102800, at *1 (9th Cir. June 24, 2024).

The district court never reached this issue because it concluded, wrongly, that Falcone "need not prove materiality at the class certification stage." 1-ER-20. That approach does not comport with *Lytle*, which requires plaintiffs to prove that statements would be material and deceptive to a reasonable consumer to obtain class certification. 114 F.4th at 1035; *see Bahamas Surgery Ctr., LLC v. Kimberly-Clark Corp.*, 820 F. App'x 563, 566 (9th Cir. 2020) (vacating class judgment for lack of classwide evidence of materiality). And for her part, Falcone points only to generic statistics from "internal

consumer studies" suggesting some consumers care about "sustainability" in the abstract. AB 43; 5-ER-862. Those statistics do nothing to show that reasonable consumers would have been deceived by these specific statements on these specific products, and cannot supplant actual survey evidence sufficient to invoke the presumption of reliance in the first instance.

**2.** Even if a presumption applied, it would be rebutted here by evidence showing varying consumer understanding and opinion—all of which demonstrate that "individualized assessments will be needed to determine whether any given class member actually relied on the label." *Lytle*, 114 F.4th at 1035.

There is no viable way to discern individual class members' understanding of the challenged statements "in one stroke," *Dukes*, 564 U.S. at 350, and the class-action mechanism cannot be used to suppress Nestlé USA's right to present its individualized defenses on that score, *id.* at 367. The vague terms Falcone challenges—such as "sustainable" and "responsible"—are subject to "divergent consumers' expectations," meaning no jury "could apply these shifting definitions to reach a conclusion as to whether the use of the [challenged

statements] was deceptive." *Bustamante*, 100 F.4th at 433. The evidence presented below confirms that different consumers understand the challenged statements to mean different things; in fact, only 3% of surveyed consumers interpreted Nestlé USA's labels as saying anything about child labor. 5-ER-774-78 ¶¶ 132-35. So there would be no way to establish what individual class members understood the challenged statements to mean (if they read the statements at all) without "ask[ing] each consumer *why* he purchased" the chocolate products. *Speerly*, 2025 WL 1775640, at *17.

Unrebutted evidence below also showed that the challenged statements were immaterial to many consumers' purchasing decisions. Nestlé USA's expert conducted surveys and concluded that the challenged statements "do not materially increase consumers' likelihood of buying, or willingness to pay for," Nestlé USA products. 5-ER-803-05 ¶¶ 175-77. And even the generic studies Falcone submitted showed that 67% of consumers do not "mak[e] purchasing decisions with sustainability in mind." 4-ER-467-68. Separating these consumers from those who would find the challenged statements material would require individual, fact-intensive inquiries.

Falcone's response to all this is to say that individual consumers' understanding is irrelevant to "the reasonable consumer standard." AB 37. But that conflates two distinct requirements. Showing that "a particular statement may be 'fraudulent' to a 'reasonable consumer'" is only one part of the test; establishing an individual consumer's "standing is different and, more to the point, more demanding" than the reasonable-consumer analysis. *Shaeffer*, 44 Cal. App. 5th at 1137. Falcone's musings about hypothetical reasonable consumers say nothing about whether she can prove, on a classwide basis, how each class member subjectively understood the statements. *See Major v. Ocean Spray Cranberries, Inc.*, 690 F. App'x 564, 565 (9th Cir. 2017) (affirming summary judgment based on an individual consumer's understanding). And that lack of proof is enough to rebut the presumption of reliance. *Lytle*, 114 F.4th at 1035.

*Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*, 568 U.S. 455 (2013), is not to the contrary. *Amgen* addressed the specialized "fraud-on-the-market premise," which posits that "the price of a security traded in an efficient market will reflect all publicly available information about a company." *Id.* at 458. The fraud-

on-the-market premise, unique to securities law, applies only where a plaintiff can "prove" the case involves "an efficient market," *Dukes*, 564 U.S. at 351 n.6—i.e., that millions of people trading stocks around the world account for news about publicly traded companies near-instantaneously, so stock prices necessarily reflect all material statements about a company. *See Halliburton*, 563 U.S. at 811. But that principle does not apply in consumer-deception cases; there is no NASDAQ for the grocery-store price of Toll House chocolate chips. As the Eighth Circuit put it, *Amgen* "do[es] not stand for th[e] proposition" that there is an "inference" that "satisfies factual causation between [a defendant]'s alleged unfair or deceptive trade practice and [a consumer]'s damages." *Brown v. La.-Pac. Corp.*, 820 F.3d 339, 348 n.5 (8th Cir. 2016).

Finally, Falcone argues the Court can ignore materiality because of "California's statutory adoption of the FTC's Green Guides," which she says "speak to the challenged label claims at issue." AB 42. But Falcone identifies no part of the Green Guides that would be relevant here. Nor could she: the Green Guides "do not address . . . sustainab[ility]" claims and say nothing about any of the

challenged statements at issue here. Guides for the Use of Environmental Marketing Claims, 77 Fed. Reg. 62122, 62124 (Oct. 11, 2022).

## III. Falcone's "Full Refund" Damages Model Does Not Match the Class Claims, the Record, or the Case Law.

To support class certification, a classwide damages model must match the theory of liability. *Comcast*, 569 U.S. at 34-35; *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013). But Falcone's damages model does not match the claims she advances because it would award a full refund to every class member even though neither the law nor the record supports that dramatic relief. Once Falcone's model falls away, so too does her bid for certification. *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 254 (D.C. Cir. 2013) ("No damages model, no predominance, no class certification.").

**A.** Where plaintiffs claim they were "deceived by misrepresentations into making a purchase," they can recover only the "extra money paid" due to the misrepresentations—meaning courts must determine what price the plaintiffs would have paid "but for the misrepresentation." *Kwikset*, 51 Cal. 4th at 329-30. So a full refund is available only if the plaintiffs otherwise would have paid not one cent for

the product. If they "obtained value" of any kind from the products, a full refund is unavailable. *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 794 (2015); *accord, e.g.*, *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 130-31 (2009).

Falcone does not dispute these principles; she agrees a full refund is available only "where 'a product is shown to be worthless.'" AB 45; *accord id.* at 55. But therein lies the problem: this is not a case where the products are worthless to most, much less all, class members. Falcone's experts indicate that people value many factors in chocolate products, not just features of the supply chain. 3-ER-416. Nestlé USA produced extensive evidence confirming that the challenged statements are not the only reason consumers bought the products. 5-ER-694-701. Falcone herself identified value (the superior taste of Nestlé USA products) unrelated to concerns about child labor. 4-ER-502. And this Court has recognized, as common sense dictates, that chocolate is not valueless *to everyone* no matter "the labor practices used" to produce it. *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 864 (9th Cir. 2018). When people go to the store for chocolate chips or hot cocoa mix, many factors beyond labor practices will influence

which products they pick up—including brand recognition and loyalty, price (including discounts), taste, nostalgia, and much more.

Because this is not a full-refund case, any classwide damages model would have had to capture the difference between what class members paid and what they would have paid absent the challenged statements. Falcone never offered such a model. And without a viable model, "[q]uestions of individual damages calculations will inevitably overwhelm questions common to the class," precluding certification under Rule 23(b)(3). *Comcast*, 569 U.S. at 34.

**B.** Falcone offers four arguments in response. None holds water.

*First*, she argues that labor practices "matter in making consumer choices." AB 45 (cleaned up). But the point is not that labor practices are always irrelevant or that they are not vital to some. *Contra id.* at 44, 49. The point is that labor practices are not the *only* thing that matters to *everyone* who buys chocolate. OB 60-61. That is the sort of classwide evidence required to justify a full-refund model like Falcone's, and it is nowhere to be found in this case.

Falcone's continued reliance on inapposite analogies proves the point. AB 46. As Nestlé USA explained (OB 61), "an observant Jew"

may ascribe primary or even exclusive importance to "[w]hether a particular food is kosher," *Kwikset*, 51 Cal. 4th at 328, but other consumers just looking for affordable, tasty food would not. Nothing about the class Falcone hopes to represent is limited to people who view labor practices as the sole reason to buy chocolate products. And unlike *Lambert v. Neutraceutical Corp.*, 870 F.3d 1170 (9th Cir. 2017), where the only conceivable reason anyone would buy "Cobra Sexual Energy" was the claim that the "aphrodisiac dietary supplement" would "provide users with 'animal magnetism' and 'potency wood,'" *id.* at 1174-75, 1183, the unrebutted evidence here remains that people buy chocolate for many reasons beyond statements of the sort Falcone challenges.

Falcone's own citations confirm this distinction. She cites evidence that, as she interprets it, suggests about half of consumers would stop buying from brands that allegedly harm people. AB 48. But at most, that evidence shows that for the *other* half, a full refund would be inappropriate.

*Second*, Falcone argues that courts cannot reject consumer-deception claims based on an intuition that products are "'functionally

equivalent'"—e.g., by treating kosher meat as indistinguishable from non-kosher meat. AB 58 (emphasis omitted). Functional equivalence has nothing to do with this case. To be sure, a claim by someone who keeps kosher does not evaporate simply because the general public may ascribe similar value to "kosher" and "non-kosher" products. *Kwikset*, 51 Cal. 4th at 328-29. But the class here is not limited to those who care exclusively about supply-chain issues (a group to which Falcone does not even belong, *see* 4-ER-502). Instead, it sweeps in all consumers who bought chocolate products, with no regard for how they would value those products *without* the challenged statements. Hence the *Comcast* problem: Falcone's full-refund damages model bears no relationship to the class.

The same problems sink Falcone's assertion that any value of the products would be "*de minimis*." AB 49-50. The record does not come close to supporting a *de minimis* theory. To the contrary, it shows that consumers value many other things about chocolate, from brand familiarity to taste to affordability, beyond considerations about the supply chain. *E.g.*, 3-ER-416; 5-ER-694-701. Because certification is available only if it is shown to be appropriate "'*in fact*,'"

*Comcast*, 569 U.S. at 33, Falcone's sheer speculation cannot sustain the decision below. *See Lambert*, 870 F.3d at 1174-75 (full refund only when product "is shown to be worthless" with "evidence").

*Third*, Falcone suggests this Court should craft a new rule for cases involving a "pall of inherent unfairness." AB 51. No court has adopted that rule. And it is unworkable even on Falcone's telling: she cannot explain why a case about whether breadcrumbs "'contained trans fat [dangerous to human health],'" *id.* at 51-52 (brackets Falcone's), would warrant harsher treatment than one about misleading advertising making cigarettes seem "less dangerous," *Tobacco Cases II*, 240 Cal. App. 4th at 784.

*Fourth*, Falcone offers a non sequitur. Nestlé USA pointed out that the district court erred by treating the key question—"[w]hether the products are worthless"—as "a merits issue not decided at class certification." OB 62 (quoting 1-ER-24). Falcone does not defend that error. Instead, she says certification remains appropriate even if there are questions about how "certain[]" the measure of damages will prove to be. AB 59. Nestlé USA already addressed that argument, too: the problem here is that Falcone's full-refund damages

model does not even *try* to approximate the actual damages that could be available to class members (i.e., what they would have paid for chocolate products absent the challenged statements). The model instead would award all class members a full refund, even those who derive significant value from the products. OB 62. That "arbitrary" model cannot support class certification. *Comcast*, 569 U.S. at 36.

Finally, because the full-refund model has no place here, Falcone pleads for a do-over to present a "price premium theory." AB 60 n.7. But Falcone recognizes why that is a nonstarter: it was "offered for the first time on reply" below. *Id.* In fact, the situation is worse still: Falcone attached a declaration proposing a price-premium theory to her reply brief, but she never once mentioned that declaration or any price-premium theory in the reply itself. Falcone was the master of her bid for class certification, and she "forfeited" any reliance on a price-premium theory by repeatedly "failing to develop it before the district court." *E.g.*, *NRDC v. Haaland*, 102 F.4th 1045, 1077 (9th Cir. 2024). There is no sense in further costly proceedings and expert discovery to permit Falcone to try to develop a damages model that would have been just as available to her at the start.

## IV. Falcone Lacks Standing to Seek Injunctive Relief and Cannot Represent a Rule 23(b)(2) Class.

"Past exposure" to alleged false advertising does not confer standing to seek an injunction unless a plaintiff "faces a 'real or immediate threat'" that, in the future, "'[s]he will again be wronged in a similar way.'" *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1240 (9th Cir. 2024). So a plaintiff must "realistically" show that "she desires to purchase" the products again but "has 'no way of determining whether the representation [challenged] is in fact true.'" *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967, 971-72 (9th Cir. 2018). Falcone cannot clear that bar for two reasons: she is happy with the current labels and she knows how to determine the accuracy of the labels in the future.

**A.** Falcone testified at her deposition that, although she objected to some of Nestlé USA's older labels, she was satisfied with the current labels. OB 65-67. In her words: she has "no problems" with the current labels and agreed that any issues have "been remedied" by those labels, which she called "perfect," "beautiful," and her "favorite." 4-ER-526-30. She also agreed that Nestlé USA is "putting

[its] money where [its] mouth is" and "delivering" on statements about the Nestlé Cocoa Plan. 4-ER-537, 4-ER-540. Once she saw the current labels, she said: "put them for sale, and I'm going to go buy them." 4-ER-528. Falcone faces zero risk of being harmed by "perfect" labels she has no desire to change.

Falcone addresses none of these statements. She simply parrots the district court's blanket assertion that these direct quotes "'misconstrue[] [her] testimony,'" without explaining how. AB 63. But Falcone cannot change her sworn testimony. The Court need only look to the transcript to see her unambiguously (and repeatedly) testify that she was satisfied with the current labels. 4-ER-526-30.

Falcone also highlights moments from early in her deposition where she said she "hope[d] the packaging gets changed" and did not "know what to trust anymore." AB 64, 67. But that argument ignores the chronology: Falcone's initial statements were based on her recollection of the older labels, and she admitted she had not seen the current labels. Once she was shown the new labels during deposition, she agreed the packaging had already "been remedied." 4-ER-530-31, 4-ER-540-41. She likewise testified that she did not

trust statements about the Nestlé Cocoa Plan only *before* seeing the updated reports, *see* 4-ER-489-90, and after seeing the updated reports during deposition, she explained that she had "change[d] her mind." 4-ER-532-41.

Whatever Falcone thought going into her deposition, she left the room satisfied with Nestlé USA's current labels and the Nestlé Cocoa Plan's efforts to improve conditions in cocoa-farming communities. She thus cannot prove a likelihood of future harm and has no basis to seek injunctive relief.

**B.** Nor can Falcone establish standing by claiming she will not be able to determine the accuracy of Nestlé USA's labels in the future.

Whenever a plaintiff can verify the accuracy of a label without buying the product, any possible prospective harm is too "conjectural or hypothetical" to support standing. *Davidson*, 889 F.3d at 967; *see* OB 70-71; *Kenney v. Fruit of the Earth, Inc.*, 2024 WL 4578981, at *1 (9th Cir. Oct. 25, 2024) (no standing for injunctive relief where consumer "need not purchase the [product] again to determine whether" the label is accurate). Falcone cannot show standing under this rubric because she knows exactly how to determine the accuracy of

representations about the Nestlé Cocoa Plan: she can review the public Nestlé Cocoa Plan reports that, in her own words, show the company is "delivering" on its statements. 4-ER-540. Falcone may disagree with *Davidson*, *see* AB 66, but she cannot wish away its holding or change the facts in the record.

Falcone also cannot pretend that the injunctive relief she seeks involves changes to cocoa-farming practices in West Africa rather than edits to Nestlé USA product labels. AB 65-66. The only relief Falcone sought in her complaint and class-certification motion was an injunction to remove the statements from the labels. 6-ER-925; 5-ER-877. Nestlé USA does not grow cocoa in West Africa, and Falcone cannot change course now and seek a sweeping injunction to change third parties' farming practices in foreign countries—especially because that relief would be neither tied to remedying false-advertising claims nor remotely administrable. *See Juliana v. United States*, 947 F.3d 1159, 1171 (9th Cir. 2020).

## CONCLUSION

The Court should reverse the class-certification order.

Dated: July 21, 2025

Respectfully submitted,

/s/ Theodore J. Boutrous Jr.
Theodore J. Boutrous Jr.

*Counsel for Appellant*
*Nestlé USA Inc.*

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 24-7707

I am the attorney or self-represented party.

**This brief contains** 6,477 **words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

- [x] complies with the word limit of Cir. R. 32-1.
- [ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.
- [ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).
- [ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.
- [ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  - [ ] it is a joint brief submitted by separately represented parties.
  - [ ] a party or parties are filing a single brief in response to multiple briefs.
  - [ ] a party or parties are filing a single brief in response to a longer joint brief.
- [ ] complies with the length limit designated by court order dated ______.
- [ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Theodore J. Boutrous Jr. **Date** July 21, 2025

*(use "s/[typed name]" to sign electronically-filed documents)*

## CERTIFICATE OF SERVICE

I certify that on July 21, 2025, I electronically filed the following with the Clerk of Court for the U.S. Court of Appeals for the Ninth Circuit using the ACMS system:

Appellant's Reply Brief

Counsel for the parties to the case are registered ACMS users and will be served by that system.

Dated: July 21, 2025

Respectfully submitted,

/s/ Theodore J. Boutrous Jr.
Theodore J. Boutrous Jr.

*Counsel for Appellant*
*Nestlé USA Inc.*