No. 24-7707

---

**IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**

---

MARIE FALCONE,
individually and on behalf of all others similarly situated,

*Plaintiff-Appellee*,

v.

NESTLÉ USA, INC.,

*Defendant-Appellant*.

---

On Appeal from the United States District Court
for the Southern District of California
Case No. 3:19-cv-723 | Hon. M. James Lorenz

---

# PETITION FOR PANEL REHEARING OR REHEARING EN BANC

---

Al Kelly
GIBSON, DUNN & CRUTCHER LLP
1900 Lawrence Street, #3000
Denver, CO 80202
(303) 298-5700

Theodore J. Boutrous Jr.
Christopher Chorba
Perlette Jura
Timothy W. Loose
Bradley J. Hamburger
Matt Aidan Getz
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
(213) 229-7000

*Counsel for Appellant Nestlé USA, Inc.*

# TABLE OF CONTENTS

Page

INTRODUCTION AND RULE 40 STATEMENT ............................ 1

BACKGROUND.................................................................... 4

REASONS FOR GRANTING REVIEW ........................................... 9

I. The Majority's Decision Conflicts with *Comcast* and Decisions of This Circuit and California Courts...................... 9

II. The Decision Contravenes the Supreme Court's and This Court's Case Law on Due Process and Article III ......... 14

III. The Decision Deepens a Circuit Split on Prospective Article III Standing in Consumer-Fraud Cases .................... 19

CONCLUSION ......................................................................... 23

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) .......... 16

*Animal Legal Def. Fund, Inc. v. Vilsack*,
111 F.4th 1219 (D.C. Cir. 2024) .......... 21

*Berni v. Barilla S.p.A.*,
964 F.3d 141 (2d Cir. 2020) .......... 20

*Brown v. La.-Pac. Corp.*,
820 F.3d 339 (8th Cir. 2016) .......... 17

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) .......... 1, 2, 6, 9, 10, 11, 12, 13

*Conrad v. Boiron, Inc.*,
869 F.3d 536 (7th Cir. 2017) .......... 21

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) .......... 4, 20, 22, 23

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006) .......... 19

*In re Folgers Coffee Mktg.*,
159 F.4th 1151 (8th Cir. 2025) .......... 1

*Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*,
594 U.S. 113 (2021) .......... 13

*Harnish v. Widener Univ. Sch. of L.*,
833 F.3d 298 (3d Cir. 2016) .......... 17

*Healy v. Milliman, Inc.*,
164 F.4th 701 (9th Cir. 2026) .......... 4, 17, 18

*Hodsdon v. Mars, Inc.*,
891 F.3d 857 (9th Cir. 2018) ........................................... 10

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*,
903 F.3d 278 (3d Cir. 2018) ........................................... 21

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011) ........................................... 15, 16

*Lagrisola v. N. Am. Fin. Corp.*,
96 Cal. App. 5th 1178 (2023) ........................................... 18

*Lambert v. Nutraceutical Corp.*,
870 F.3d 1170 (9th Cir. 2017) ........................................... 11

*Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (2022) ........................................... 3, 18, 19

*Philip Morris USA v. Williams*,
549 U.S. 346 (2007) ........................................... 14

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
725 F.3d 244 (D.C. Cir. 2013) ........................................... 13

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
934 F.3d 619 (D.C. Cir. 2019) ........................................... 19

*Rosenwald v. Kimberly-Clark Corp.*,
152 F.4th 1167 (9th Cir. 2025) ........................................... 2, 10

*Sevidal v. Target Corp.*,
189 Cal. App. 4th 905 (2010) ........................................... 15

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) ........................................... 19

*In re Tobacco II Cases*,
240 Cal. App. 4th 779 (2015) ........................................... 10

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 3, 17, 18

*In re Vioxx Class Cases*,
180 Cal. App. 4th 116 (2009) .......... 10

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .......... 3, 14, 22

*White v. Symetra Assigned Benefits Serv. Co.*,
104 F.4th 1182 (9th Cir. 2024) .......... 19

*Williams v. Reckitt Benckiser LLC*,
65 F.4th 1243 (11th Cir. 2023) .......... 21

**Constitutional Provisions**

U.S. Const. art. III .......... 3, 14, 17, 19, 22

U.S. Const. amend. V .......... 14

**Statutes**

28 U.S.C. § 2072 .......... 14, 16

**Rules**

Fed. R. Civ. P. 23 .......... 4, 7, 12, 14, 20

Fed. R. Civ. P. 40 .......... 1

## INTRODUCTION AND RULE 40 STATEMENT

Marie Falcone sued Nestlé USA, challenging statements on labels of Toll House morsels, Nesquik, and hot chocolate indicating that cocoa was "sustainably" or "responsibly" sourced. She sought to represent classes of millions of consumers, asking the court to assume that every consumer (i) saw the statements, (ii) understood them as promising a supply chain free of all risks of child labor, (iii) bought the products because of those statements, and (iv) would not have paid anything for the products absent the statements. Other courts have held consumer-fraud claims like this "unsuitable for class treatment" because they turn on inherently individualized issues. *E.g.*, *In re Folgers Coffee Mktg.*, 159 F.4th 1151, 1155-57 (8th Cir. 2025). But the district court here certified the classes, and a divided panel affirmed. That split decision presents three reasons for rehearing.

*First*, by approving Falcone's full-refund model of classwide damages, the majority departed from *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). *Comcast* requires consistency between the claims asserted on behalf of class members and the model offered to measure classwide damages. Under California law, "no plaintiff can

recover a full refund unless they prove the product had *no* value to them." *Rosenwald v. Kimberly-Clark Corp.*, 152 F.4th 1167, 1178 (9th Cir. 2025) (cleaned up). Falcone never presented proof that the chocolate here has no value to everyone who bought it. To the contrary, unrebutted evidence shows that the vast majority of people buy chocolate for reasons totally unrelated to supply-chain issues. Yet Falcone's model would award a full refund to everyone anyway. As Judge Clifton explained in dissent, that stark mismatch between the proposed damages model and the damages available under the asserted claims violates *Comcast*.

The majority effectively recognized the *Comcast* violation by inviting Falcone, on remand, to offer a *different* model that she did not develop below. Maj. 6 n.2. That invitation "is telling." Dissent 4. Because Falcone has no viable damages model now, the result should have been denial of certification. And while the majority asserted that all issues with the existing model were "merits" questions off-limits at class certification, Judge Clifton rightly observed that case law forbids "punting the issue down the road." *Id.* at 5.

*Second*, the decision conflicts with Supreme Court and Ninth Circuit precedent relating to defendants' due-process rights and the injury-in-fact requirement. Were this an individual action, Nestlé USA could defend itself by showing that the plaintiff did not see or rely on the challenged statements. Yet the district court and panel majority approved certification based on the theory that exposure and reliance could be presumed classwide, improperly disregarding Nestlé USA's right to assert individualized defenses. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011).

Further, even though "[e]very class member must have Article III standing in order to recover individual damages," *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021), the damages class here contains untold members who suffered no injury traceable to the statements on Nestlé USA labels. That defies this Court's precedent, which recognizes that any class containing "a great number" of uninjured class members cannot be certified. *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 n.14 (2022) (en banc). In fact, the same day the majority issued its decision approving certification here, the Court clarified that absent

class members must be able to "demonstrate evidence of standing" at summary judgment. *Healy v. Milliman, Inc.*, 164 F.4th 701, 708 (9th Cir. 2026). After *Healy*, it is clear that highly individualized adjudications regarding each class member's injury (or lack thereof) will soon be necessary, which makes rehearing even more imperative.

*Third*, the decision below exacerbates an existing conflict over standing to seek prospective relief. Five courts of appeals have held that once a consumer learns product labels are misleading, she lacks standing to seek an injunction to change the labels because she's at no risk of being fooled again. This Court disagreed, albeit only at the pleading stage. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018). As this case shows, *Davidson* makes no sense once a case has progressed to class certification, where all issues bearing on Rule 23's requirements must be satisfied as a matter of fact rather than through mere allegations.

## BACKGROUND

**1.** Nestlé USA sells chocolate products like Toll House chocolate chips and Nesquik chocolate milk. 4-ER-445. It sources its cocoa for those products through the Nestlé Cocoa Plan, which has

spent hundreds of millions of dollars to improve conditions in farming communities worldwide. 4-ER-600. The Cocoa Plan provides resources to help independent farmers and seeks to improve social conditions by monitoring and supporting remediation of child-labor risks. 4-ER-586-96.

This case involves 59 different labels on various Nestlé USA products. Maj. 4. The labels feature different statements, mostly on the back of the packaging, referring to the Cocoa Plan—e.g., that the products feature "Sustainably sourced cocoa through the Nestlé Cocoa Plan" or that the Plan "works to help improve the lives of cocoa farmers." 4-ER-446-48, 4-ER-546-50.

**2.** Falcone sued Nestlé USA under California's Unfair Competition Law and Consumers Legal Remedies Act. Maj. 2. She claims Nestlé USA's labels were "deceptive" because they "impl[ied] that [the products] were produced free of child labor" even though some risk of child labor remains in the global cocoa supply chain. *Id.* at 1-2; *see* 6-ER-889-928.

When deposed, Falcone told a different story. After reviewing the current labels on Nestlé USA products and public reports from

the Cocoa Plan, Falcone declared the labels "perfect," agreed Nestlé USA was "putting [its] money where [its] mouth is," and testified that she would continue buying the chocolate. 4-ER-526-29, 4-ER-537, 4-ER-540-41.

**3.** Falcone sought certification of damages and injunctive-relief classes comprising millions of California consumers who bought various Nestlé USA products since mid-2015. 5-ER-844. Falcone did not offer an expert on damages, instead claiming that the products are "worthless" without the challenged statements and that every consumer deserves a "full refund." 5-ER-881. Nor did she offer expert reports on consumer perception, materiality, or damages.

Nestlé USA argued that Falcone's full-refund model contravened *Comcast* because California law does not permit a full refund in cases where consumers receive some value from products apart from the challenged statements. 4-ER-468-71. Nestlé USA also submitted expert testimony showing the vast majority of class members never saw the statements and would not interpret them as making implicit claims about child labor or rely on them in deciding to buy chocolate. 5-ER-694-701. And it argued that Falcone lacked standing

to seek injunctive relief because she testified that she was satisfied with Nestlé USA's labels and knew where to go to review the Cocoa Plan's progress in the future. 4-ER-453-55, 4-ER-471.

The district court certified both classes. It approved Falcone's full-refund damages model on the theory that there are "strong consumer feelings" about labor issues. 1-ER-23. The court dismissed Nestlé USA's evidence that most consumers would not deem the products "worthless" as "a merits issue not [to be] decided at class certification." 1-ER-24. The court also reasoned that common questions would predominate because issues such as exposure and reliance could be "presumed" classwide. 1-ER-17-20. And it ruled that Falcone had standing to seek prospective relief because, early in her deposition—before examining the current labels and learning about the Cocoa Plan's efforts—she stated that she wanted to buy Nestlé USA products but did not "know what to trust anymore." 1-ER-7.

**4.** On Rule 23(f) review, the panel affirmed in a 2–1 decision.

The panel split over Falcone's full-refund damages model. The majority concluded that the model sufficiently "stems from Nestlé's [alleged] liability-creating actions" and that "whether the products

are worthless," as required for a full refund, "is a merits issue not decided at class certification." Maj. 6. In a footnote, the majority asserted that a "price premium" model—which Falcone never developed below and did not even identify as a possibility until her class-certification reply brief—might be "more appropriate." *Id.* at 6 n.2.

Dissenting, Judge Clifton objected that Falcone's full-refund model is "highly implausible," "not supported by any evidence," and "contradicted by Falcone's personal acknowledgment" that she paid for a Butterfinger bar after filing her complaint simply because she likes the taste. Dissent 1-3. Judge Clifton also observed that the majority and Falcone, by proposing an unexplored "price premium" alternative, had "tacitly admit[ted]" that the full-refund model is unsupportable. *Id.* at 4-5. And he disagreed that the propriety of the model was a "merits" question to be "punt[ed] . . . down the road." *Id.* at 5. As he put it, Falcone cannot "merely allege that her theory . . . stems from Nestlé's liability-creating actions"; she "must proffer *evidence* to support 'a workable model.'" *Id.* at 6 (emphasis added).

The panel rejected Nestlé USA's other arguments. It reasoned that questions relating to exposure and reliance could be presumed

or resolved classwide. Maj. 3-5. And it held that Falcone's assertion that she "does not trust Nestlé's reporting in its Cocoa Plan" gave her standing to seek injunctive relief. *Id.* at 2-3.

## REASONS FOR GRANTING REVIEW

### I. The Majority's Decision Conflicts with *Comcast* and Decisions of This Circuit and California Courts.

*Comcast* established a simple but vital rule. Plaintiffs seeking certification must "establish that damages are susceptible of measurement across the entire class." 569 U.S. at 35. And whatever model they offer must "measure only those damages attributable to th[e] theory" on which plaintiffs seek classwide recovery. *Id.* Otherwise, plaintiffs could secure certification based on "*any* method of measurement . . . so long as it can be applied classwide, no matter how arbitrary." *Id.* at 36.

Decisions like the panel majority's threaten to erase *Comcast* from the law. Falcone's full-refund model is indefensible under California law, this Court's precedent, and the undisputed evidence. Permitting class certification anyway, and sidestepping concerns about the model as "merits" issues beyond the pale at class

certification, is exactly what *Comcast* forbade. This Court should grant rehearing to restore *Comcast* to its rightful status.

**1.** California law holds that consumer-fraud plaintiffs cannot recover a full refund if they "obtained value" from the products they bought. *In re Tobacco II Cases*, 240 Cal. App. 4th 779, 794 (2015). Instead, California's consumer-protection laws permit consumers to recover only "the difference between what [they] paid and the value of what [they] received." *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (2009). In short, "no plaintiff can recover a full refund unless they prove the product had *no* value to them." *Rosenwald*, 152 F.4th at 1178 (cleaned up).

That rule should have been easy to apply here. This Court has already recognized that chocolate is not valueless to everyone no matter "the labor practices used" to produce it. *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 864 (9th Cir. 2018). The evidence confirms this intuition: Falcone admitted she bought Nestlé USA products because of their superior taste, 4-ER-502; her experts agreed that people buy chocolate for reasons unrelated to cocoa sourcing, 3-ER-415-

17; and Nestlé USA's expert showed that the challenged statements wouldn't affect the price consumers would pay *at all*, 5-ER-694-701.

On the law, Falcone offered no valid defense of the model. The only appellate authority she cited was *Lambert v. Nutraceutical Corp.*, 870 F.3d 1170 (9th Cir. 2017), which approved a full-refund model because the plaintiff "presented evidence that the product at issue"—a sham aphrodisiac—"was valueless." *Id.* at 1174-75, 1183. And while she protested that labor practices "'matter in making consumer choices,'" AB 45, she never supplied evidence showing they are the *only* thing that matters to *everyone* who buys chocolate.

**2.** The majority's decision approving the model anyway—over Judge Clifton's dissent—repeats every error corrected in *Comcast*.

The majority reasoned that it was enough for there to be some "logical connection" between the damages model and the liability theory. Maj. 6. The majority then approved the full-refund model because Falcone's "theory" is that the chocolate would be "worthless" without the statements. *Id.* And as for the uniform evidence that the chocolate would *not* be worthless to every consumer, the majority deemed it "a merits issue not decided at class certification." *Id.*

As Judge Clifton explained, Falcone's evidence-free "theory" "is too shaky a foundation to support the class certification order." Dissent 1. *Comcast* requires not some abstract "logical connection" between model and theory, but rather factual proof "that damages are susceptible of measurement across the entire class" because the model captures "only those damages" individual class members could recover. *Id.* (quoting *Comcast*, 569 U.S. at 35). Falcone's full-refund model rests on premises—that "discovery of the alleged misrepresentations regarding sustainability would render the purchased Nestlé USA chocolate products to become *entirely valueless*" to "*every purchaser*"—that are "implausible," "not supported by any evidence," and "contradicted" by undisputed evidence showing consumers do *not* consider all chocolate worthless absent statements about cocoa sourcing. *Id.* at 2-3. In short, "[c]lass certification is to be based on evidence," and that evidence is nowhere to be found here. *Id.* at 4.

Nor are these flaws "merits" issues that must be deferred until later. In *Comcast*, the Supreme Court held that walling off "merits issues" from the Rule 23 analysis "flatly contradicts [its] cases requiring a determination that Rule 23 is satisfied, even when that

requires inquiry into the merits." 569 U.S. at 35. After *Comcast*—to say nothing of many cases reiterating the point since, *e.g.*, *Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, 594 U.S. 113, 122 (2021)—the majority's view is indefensible.

As Judge Clifton highlighted, the majority and Falcone effectively conceded the *Comcast* problem by offering that the district court on remand "may want to consider" an alternative price-premium model—one Falcone never developed below and never even mentioned until her reply brief. Maj. 6 n.2; *see* Dissent 4. Whatever the merits of some still-undeveloped model, what's certain is that the *existing* model is bunk—and that means the certification order that depends on it must be vacated. *See In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 253 (D.C. Cir. 2013) ("No damages model, no predominance, no class certification.").

Supreme Court decisions deserve more respect than that afforded *Comcast* here. This Court should grant rehearing.

## II. The Decision Contravenes the Supreme Court's and This Court's Case Law on Due Process and Article III.

Imagine a plaintiff came to court challenging statements on a label that she concedes she did not read or rely on. The consumer could not recover: she wasn't deceived and suffered no injury because she received everything she bargained for. The millions-strong class here is full of these sorts of consumers—yet the majority approved certification anyway. In doing so, it violated both the Due Process Clause and Article III.

**1.** Due process guarantees defendants "an opportunity to present every available defense" against liability. *Philip Morris USA v. Williams*, 549 U.S. 346, 353 (2007). The Rules Enabling Act reinforces that mandate by providing that Rule 23 cannot be read to "abridge . . . any substantive right." 28 U.S.C. § 2072(b). Accordingly, no class can "be certified on the premise that [the defendant] will not be entitled to litigate" its defenses "to individual claims." *Dukes*, 564 U.S. at 367. Yet the majority's decision is irreconcilable with Nestlé USA's right to litigate defenses to key elements of absent class members' claims, including exposure and reliance.

To prevail under California's consumer-protection laws, a consumer must prove an "economic injury arising from reliance on [the defendant's] misrepresentations." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 327 (2011). That requires proving that the consumer both "saw" the statements and "relied on" them. *Id.*

Unrebutted evidence reveals that many consumers who bought Nestlé USA products never saw the mostly back-label statements Falcone challenges, much less relied on Falcone's strained interpretation of the statements in deciding whether to buy. OB 27-38. In an individual action, Nestlé USA could raise each consumer's lack of exposure and reliance to defend against their claims. But by blessing certification, the majority decision overlooks Nestlé USA's right to raise those same defenses with respect to absent class members.

As to exposure, the majority asserted that "all that is required" is that the statement be found "on the products' packaging." Maj. 3. Yet under California law, consumers must actually *see* the challenged statement—a mere *opportunity* to have seen it is insufficient. *E.g.*, *Sevidal v. Target Corp.*, 189 Cal. App. 4th 905, 910 (2010). The

majority papers over the exposure requirement, improperly expanding class members' substantive rights to recover.

As to reliance, the majority opines that consumers' individual experiences are irrelevant and that reliance "can be proved or disproved on a class-wide basis from consumer research." Maj. 5. California law rejects that premise, too. An individual consumer's reliance must be assessed by reference to his individual experience, and courts will "allow one party who subjectively relied on a particular deception in entering a transaction to sue, while simultaneously precluding another who subjectively did not so rely from suing." *Kwikset*, 51 Cal. 4th at 330 n.14. Under the Rules Enabling Act and due process, Nestlé USA cannot be denied the right to probe individual class members' reliance (or lack thereof). But the majority's decision never accounts for that sort of individualized factfinding.

The majority misplaced its reliance (at 5) on *Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*, 568 U.S. 455 (2013). *Amgen* revolved around a "fraud-on-the-market premise" unique to securities law. *Id.* at 458. As other courts have recognized, that doctrine cannot be used to satisfy the causation and reliance elements

of claims involving everyday consumer products. *E.g.*, *Brown v. La.-Pac. Corp.*, 820 F.3d 339, 348 n.5 (8th Cir. 2016); *Harnish v. Widener Univ. Sch. of L.*, 833 F.3d 298, 311-13 (3d Cir. 2016). Those elements can be established here only through individualized evidence—not inapposite shortcuts imported from other areas of the law.

**2.** The majority's decision also violates Article III by certifying a damages class full of consumers who suffered no injury.

"Every class member must have Article III standing in order to recover individual damages." *TransUnion*, 594 U.S. at 431. That requirement to demonstrate standing applies "at all stages of litigation"—not just at trial. *Id.*; *see Healy*, 164 F.4th at 708.

Here, unrebutted evidence demonstrates that *most* class members suffered no injury—either because they never saw the challenged statements, did not interpret them to make promises about the risks of child labor in the supply chain, or did not rely on such promises in deciding to buy chocolate. OB 13-14. So if Falcone were to "prevail[] in this case, many of [the absent class members] would first learn that they were 'injured' when they received a check

compensating them for their supposed 'injury.'" *TransUnion*, 594 U.S. at 438.

The majority brushed this aside, citing *Olean* for the proposition that the presence of uninjured class members "does not, by itself, defeat class certification." Maj 3 n.1. But that omits what *Olean* said next: courts still must decide whether the individualized task of identifying uninjured class members "would predominate over common questions," meaning any class containing "a great number" of uninjured class members cannot be certified. 31 F.4th at 668 n.12, 669 n.14. The class here presents exactly the sort of predominance and overbreadth concerns *Olean* identified—yet the majority approved it for certification.

Consider what will happen next if the certification order stands. As this Court clarified on the same day it issued the decision here, not just Falcone but also "unnamed class members" will have to "demonstrate evidence of standing" at summary judgment. *Healy*, 164 F.4th at 708. But because standing for these claims depends on consumers' "subjective" experiences, *Lagrisola v. N. Am. Fin. Corp.*, 96 Cal. App. 5th 1178, 1194 (2023), assessing standing will require

"analysis of each plaintiff's individual circumstances"—an inquiry that will swamp any common issues, *White v. Symetra Assigned Benefits Serv. Co.*, 104 F.4th 1182, 1195 (9th Cir. 2024).

*Olean* already conflicts with decisions from other circuits holding that no class can be certified if it contains members who lack Article III standing, *e.g.*, *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006), or where the number of uninjured members is more than de minimis, *e.g.*, *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 934 F.3d 619, 625-26 (D.C. Cir. 2019). The majority decision here exacerbates the conflict by extending *Olean* and permitting certification even when unrebutted evidence indicates that *most* class members suffered no injury. The Court should grant rehearing and reverse.

## III. The Decision Deepens a Circuit Split on Prospective Article III Standing in Consumer-Fraud Cases.

"To seek injunctive relief, a plaintiff must show" that, absent an injunction, she will suffer injury that is "actual and imminent, not conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Every other circuit has thus held that when a

consumer learns product labels are misleading, she cannot seek injunctive relief because she cannot be deceived again. This Circuit disagreed in *Davidson*, a pleading-stage decision, and now *Davidson* is wreaking havoc in Rule 23(b)(2) injunctive-relief class actions. This Court should grant rehearing to align its case law with that of other circuits.

**1.** Five circuits have found no standing to pursue injunctive relief for plaintiffs like Falcone:

- In *Berni v. Barilla S.p.A.*, 964 F.3d 141 (2d Cir. 2020), the Second Circuit held that consumers lacked standing to seek an injunction to change pasta-box labels: even if they had "been deceived by the product's packaging once," the "next time they buy one of the newer pastas, they will be doing so with exactly the level of information that they claim they were owed from the beginning." *Id.* at 148.
- The Third Circuit rejected the notion "that former customers could again be deceived by the very sort of advertising practices" they challenge as "a premise unmoored from reality."

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 292 (3d Cir. 2018).

- In *Conrad v. Boiron, Inc.*, 869 F.3d 536 (7th Cir. 2017), the Seventh Circuit held that because a consumer was "fully aware" of alleged problems with a product, an injunction could not "redress any potential injury for him." *Id.* at 542.
- The Eleventh Circuit in *Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243 (11th Cir. 2023), held that allegations that consumers would "like to" buy products again but are "unable to rely on" the labels are "plainly insufficient to establish a threat of imminent or actual harm." *Id.* at 1254-56.
- And in *Animal Legal Defense Fund, Inc. v. Vilsack*, 111 F.4th 1219 (D.C. Cir. 2024), the D.C. Circuit reasoned that a plaintiff's "reliance on labels she knows to have been misleading" would be "a self-inflicted injury" that cannot support standing. *Id.* at 1228.

**2.** Falcone's only purported basis for an injunction changing Nestlé USA's labels is that she "would like to purchase these products again in the future" but no longer "trust[s]" Nestlé USA's

statements. Maj. 2; *see* 1-ER-7. In the Second, Third, Seventh, Eleventh, and D.C. Circuits, that would not have been enough for standing. The panel reached a different result only by applying this Court's decision in *Davidson*.

In *Davidson*, a consumer challenged a label promising "flushable" wipes. 889 F.3d at 970-72. At the pleading stage, this Court held it was plausible the plaintiff faced imminent harm because, absent an injunction, she would "be unable to rely on the product's advertising or labeling in the future." *Id.* at 967-72.

*Davidson* recognized that the question presented was "close." 889 F.3d at 971. But what began as a debatable pleadings decision has become untenable where, as here, it is extended to permit certification of a sweeping class helmed by someone with no legitimate evidence of Article III standing.

This case shows why *Davidson* ought not apply once a case moves beyond the pleadings to Rule 23, which "does not set forth a mere pleading standard." *Dukes*, 564 U.S. at 350. Falcone's argument for injunctive relief relies on the notion that she *may* buy Nestlé USA products in the future, but not until statements about

the Cocoa Plan are removed. Maj. 2. But Falcone elsewhere asserts that the products are "worthless" absent the statements she is trying to remove. *Id.* at 6. The idea that Falcone risks injury because she "does not trust Nestlé's reporting in its Cocoa Plan," *id.* at 2, also does not pass muster: there's no reason to think Falcone *would* trust that reporting if Nestlé USA removed references to the Plan altogether. *Id.* at 2. At bottom, that a consumer may refrain from buying something that does not satisfy all her preferences is not an injury; it is how consumers make choices in a competitive market.

This Court should grant rehearing to overrule *Davidson*, or at least clarify that its rule is limited to the pleadings stage and does not permit class certification under these circumstances.

## CONCLUSION

The Court should grant panel rehearing or rehearing en banc.

Dated: February 23, 2026

Respectfully submitted,

/s/ Theodore J. Boutrous Jr.
Theodore J. Boutrous Jr.

*Counsel for Appellant*
*Nestlé USA, Inc.*

## CERTIFICATE OF COMPLIANCE

I certify that this petition complies with the word limit of Circuit Rule 40-1(b) because it contains 4,165 words, excluding portions exempted under Federal Rule 32(f). I also certify that the petition complies with the typeface and type-style requirements of Federal Rules 32(a)(5)(A) and (6) because it has been prepared in 14-point New Century Schoolbook font.

Dated: February 23, 2026

Respectfully submitted,

/s/ Theodore J. Boutrous Jr.
Theodore J. Boutrous Jr.

*Counsel for Appellant*
*Nestlé USA, Inc.*

**NOT FOR PUBLICATION**

FILED

JAN 9 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MARIE FALCONE, individually and on behalf of all others similarly situated,

Plaintiff - Appellee,

v.

NESTLE USA, INC.,

Defendant - Appellant.

No. 24-7707

D.C. No. 3:19-cv-00723-L-DEB

MEMORANDUM*

Appeal from the United States District Court
for the Southern District of California
M. James Lorenz, District Judge, Presiding

Argued and Submitted November 19, 2025
Pasadena, California

Before: CLIFTON, BYBEE, and DE ALBA, Circuit Judges.
Dissent by Judge CLIFTON.

Appellant Nestlé USA, Inc. ("Nestlé") challenges the district court's order certifying two state-based classes. Appellees allege that Nestlé used deceptive package labeling, claiming its chocolate products were "sustainably" or "responsibly" sourced, implying that they were produced free of child labor and

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

deforestation. Namely, Appellees assert false-advertising claims under California's Unfair Competition Law ("UCL") and Consumer Legal Remedies Act ("CLRA"). We review a district court's order certifying a class for abuse of discretion. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 663 (9th Cir. 2022) (en banc). We have jurisdiction pursuant to 28 U.S.C. § 1292 and Federal Rule of Civil Procedure 23(f). We affirm.

1. The district court did not err in certifying Appellees' injunctive relief class because Marie Falcone, the named plaintiff, has Article III standing. *See Summers v. Easth Island Inst.*, 555 U.S. 488, 493 (2009) (setting forth the standing elements). To establish standing for injunctive relief in a class action, at least one named plaintiff must satisfy the standing requirements. *DZ Rsrv. V. Meta Platforms, Inc.*, 96 F.4th 1223, 1239 (9th Cir. 2024). Here, Falcone repeatedly testified that she loves Nestlé products and that she would like to purchase these products in the future but that she stopped purchasing them when she learned about child labor and environmental damage. Although she described one of Nestlé's current labels as having a "perfect placement," she also testified that she does not trust Nestlé's reporting in its Cocoa Plan. Reviewing Falcone's deposition testimony in full, this is sufficient to confer Article III standing. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970 (9th Cir. 2018) (noting that plaintiffs in consumer fraud cases "can satisfy the imminent injury requirement by showing

they will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although [they] would like to." (internal quotation marks omitted)); *see also Olean*, 31 F.4th at 663 (reviewing findings of fact for clear error). Thus, the district court properly found that Falcone has Article III standing.

2. The district court did not abuse its discretion in finding that common questions of law and fact predominate over individual inquiries for the damages class. *See* Fed. R. Civ. P. 23(a)(1), (b)(3); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Nestlé argues that exposure was not met because whether a class member saw the misrepresentation is an individual question that predominates. Here, all the class members were exposed to the misrepresentation because it was on the products' packaging and, by definition, class members must have bought the products at issue to be part of the class; in labeling fraud cases, this is all that is required. Thus, exposure is a common question that predominates over individual inquiries.[1]

---

[1] Nestlé argues that the district court erred in treating exposure as a merits issue. Nestlé misreads the district court's order. The district court was not simply rejecting exposure as being a merits question; instead, it was rejecting Nestlé's argument that the sustainability representations were not *material* because they were mostly located on the back-label of the package. Thus, the district court found that *materiality*, not exposure, was a merits issue.

As to Nestlé's argument that class members lack Article III standing, as Nestlé concedes, we have previously held that the possibility that some class members suffered no injury does not, by itself, defeat class certification. *See*

Nestlé further argues that misrepresentation cannot be accomplished on a class-wide basis because the sustainability representations vary throughout the 59 different labels at issue. But the variations are slight, and we have found that "variations in messaging are not necessarily fatal to class certification." *See DZ Rsrv.*, 96 F.4th at 1236 ("[D]ifferently worded sales pitches[] and disparate modes of exposure" do not defeat uniformity of representations to meet commonality.). As to Nestlé's argument that the sustainability representations do not have an "objective definition," this argument is unavailing. *See Noohi v. Johnson & Johnson Consumer Inc.*, 146 F.4th 854, 870–71 (9th Cir. 2025) (noting that for CLRA and UCL claims, we "have consistently held that a plaintiff need not establish at the class certification stage that class members share a uniform understanding of the contested term.").

Regarding materiality and reliance, the district court correctly found that these elements of Appellees' consumer fraud claims raised common issues supporting class certification. Because Appellees can prove materiality and reliance with an objective, reasonable consumer standard, we have recognized that both elements of consumer protection laws are "generally susceptible to common

---

*Olean*, 31 F.4th at 669, 680–81. In any event, Appellees' argument that class members would not have spent money on Nestlé's products had they known about the misrepresentations is a "quintessential injury-in-fact." *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011).

proof." *Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1034 (9th Cir. 2024). The district court found that materiality, and therefore reliance, can be proved or disproved on a class-wide basis from consumer research and surveys without having to scrutinize materiality as to every single class member. *See Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 481 (2013). Falcone's and Nestlé's evidence on this point underscores this. Lastly, as the district court correctly found, Plaintiffs need not prove materiality at the class certification stage. For Rule 23(b)(3) purposes, the relevant question is not whether Falcone has successfully proven materiality, but rather whether the materiality inquiry is a common question susceptible to common proof that helps to establish predominance. *See Lytle*, 114 F.4th at 1025, 1034–35.

Thus, the district court did not abuse its discretion in finding commonality and predominance to certify the damages class.

3. Finally, the district court did not abuse its discretion in finding that Falcone's full refund theory of liability stems from her theory of deception, and the calculation of the refund is possible on a class-wide basis. Nestlé argues that this theory of liability contravenes *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) and California law. Nestlé's argument is unpersuasive. We have not construed *Comcast* as requiring plaintiffs to provide a class-wide method for calculating damages at the class certification stage, but rather as requiring only that plaintiffs

demonstrate a logical connection between their damages model and their theory of liability. *See Pulaski & Middleman, LLC v. Google. Inc.*, 802 F.3d 979, 987–88 (collecting cases); *see also Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1183 (9th Cir. 2017), *rev'd on other grounds by Nutraceutical Corp. v. Lambert*, 586 U.S. 188 (2019) (California law "requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation." (quoting *Pulaski*, 802 F.3d at 989)). Here, Falcone alleges that Nestlé misled consumers, in violation of the UCL and CLRA, by labeling the products at issue with sustainability representations that deceived them into buying the products, and this caused damage common to the class members. Her theory is that once class members learn about the misrepresentation, the value of the products they bought will be worthless or de minimis. *See Lambert*, 870 F.3d at 1183. Thus, as the district court correctly found, Falcone's theory of restitution stems from Nestlé's liability-creating actions and whether the products are worthless is a merits issue not decided at class certification.[2] *See id.* at 1184 ("Whether [Falcone] could prove damages to a reasonable certainty on the basis of h[er] full refund model is a question of fact that

---

[2] The district court may want to consider Dr. William Robert Ingersoll's proposal for a price premium (conjoint) damages model as a more appropriate way to measure Falcone's damages. This alternative model can be considered under the rules at an appropriate time. *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment.").

should be decided at trial.”).

**AFFIRMED.**

FILED

JAN 9 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*Falcone v. Nestlé USA, Inc.*, 24-7707

CLIFTON, Circuit Judge, dissenting:

My colleagues conclude that "the district court did not abuse its discretion in finding that Plaintiff Marie Falcone's full refund theory of liability stems from her theory of deception, and the calculation of the refund is possible on a class-wide basis." Majority at 5. I disagree. The only damages model offered by Falcone is contrary to fact. Falcone tacitly admits as much. So do my colleagues in the majority. That is too shaky a foundation to support the class certification order entered by the district court in this case. At the class certification stage, Falcone must offer a damages model that is "consistent with [her] liability case" and demonstrates "that damages are susceptible of measurement across the entire class." *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). She must also propose a "valid method" and a "workable method" for calculating damages. *Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1182, 1184 (9th Cir. 2017), *rev'd and remanded on other grounds,* 586 U.S. 188 (2019). She has not done so.

"The False Advertising Law, the Unfair Competition Law, and the CLRA authorize a trial court to grant restitution to private litigants asserting claims under those statutes." *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 694 (2006). "The difference between what the plaintiff paid and the value of what the

plaintiff received is a proper measure of restitution." *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (2009).

Falcone did not offer a "valid method" of calculating damages on a classwide basis. *Lambert*, 870 F.3d at 1182. Falcone merely contended that a full refund of the purchase price for each class member is appropriate because the products are worthless to consumers who disagree with Nestlé's alleged labor practices. She then proposed that damages be calculated by multiplying the average retail price by the number of units sold. This is not, however, a case where all class members would be entitled to a full refund of the purchase price. Restitution based on a full refund is only warranted if not a single class member derived any benefit from the chocolate products. *See In re Tobacco Cases II*, 240 Cal. App. 4th 779, 795–96 (2015) ("A full refund *may* be available in a UCL case when the plaintiffs prove the product had *no* value to them . . . since the price paid minus the value actually received equals the price paid."); *see also Lambert*, 870 F.3d at 1183 ("The full refund model measures damages by presuming a full refund for each customer, on the basis that the product has no or only a de minimis value.").

Falcone's proposed damages model relies on two premises: (1) the discovery of the alleged misrepresentations regarding sustainability would render the purchased Nestlé chocolate products to become *entirely valueless* to (2) *every*

*purchaser* of the chocolates. Both of these are highly implausible and not supported by any evidence offered by Falcone. Indeed, they were contradicted by Falcone's personal acknowledgement that Nestlé products are superior in taste and by her own inability to resist purchasing a Butterfinger bar even after she became aware of the allegations against Nestlé. She bought and paid for the product despite knowing what she contends make the product "valueless" to every purchaser, putting the lie to that allegation. To the extent Falcone attempts to rely on Nestlé's internal surveys indicating that sustainability representations influence consumer purchasing decisions, these documents fall far short of supporting the proposition that every purchaser would find the products valueless upon learning of Nestlé's alleged practices.

During oral argument, Falcone's counsel suggested that she would present expert testimony at the merits stage concerning what percentage of consumers would find the products valueless. That promise adds a critical element that is not consistent with the proposed damages model used to obtain class certification, which was to be calculated simply by multiplying the average retail price by the number of units sold. That damages model rests on the premises that the discovery of the alleged misrepresentations would render the products *entirely valueless* to *every* purchaser of the chocolates. The promise to provide that new expert evidence admits that the model upon which the class certification order was granted needs

adjustment. Class certification is to be based on evidence, not a promise that flaws will somehow be fixed later.

Falcone further admitted the shortcomings of the full refund model in offering an alternative "price premium" damages model. That model was offered to the district court for the first time in her reply memorandum in support of class certification. Because it was introduced on reply, the district court did not consider this model and did not rely upon it when it granted class certification. On appeal, Falcone renewed her proposal and requested permission to file another motion for class certification that relied upon a "price premium" model should this panel find that a full refund is improper. That is the path that we should take.

The majority recognizes the problem. It encourages the district court to consider Falcone's "proposal for a price premium (conjoint) damages model as a more appropriate way to measure Falcone's damages." Majority at 6 n.2.

The acknowledgement by both Falcone and the majority that an alternative damages model may be "more appropriate" is telling. The district court based class certification on the offered damages model and not on a hypothetical alternative that the district court declined to consider. That alternative is based on evidence that has not yet been developed, presented, or briefed. That evidence will presumably come in the form of what Falcone described as "a revised conjoint study proposed by Dr. Ingersoll." It is not before us now, and it was not before the

district court when it granted class certification. If Falcone wants to propose the alternative "price premium" model, with evidence to support it as a valid and workable measure of damages, that should be done in a renewed motion for class certification. The current class certification order should not stand.

Rather than deal with the recognized flaws in the damages model upon which the class certification order was based, the majority concludes "whether the products are worthless is a merits issue not decided at class certification." Majority at 6 (citing *Lambert*, 870 F.3d at 1184). But *Lambert* does not authorize punting the issue down the road. It is true that in *Lambert* we held that whether Lambert "could prove damages to a reasonable certainty on the basis of his full refund model is a question of fact that should be decided at trial." *Lambert*, 870 F.3d at 1184. But that was because "Lambert [had] presented evidence that the product at issue was valueless and therefore amenable to full refund treatment" at the class certification stage. *Id*. at 1183. As a result, we noted that "Lambert had shown that his damages model was supportable on evidence that could be introduced at trial." *Id*. at 1184. That showing was not made here. At this stage, Falcone has not presented evidence that the products were valueless to all purchasers and has not demonstrated that her full refund damages model was supportable with evidence that could be introduced at trial. To the contrary, Falcone proposes to develop and offer evidence that

departs from her full refund damages model, because it is plain that the full damages model is based on unrealistic premises.

Under *Lambert*, it is not enough for Falcone to merely allege that her theory of restitution stems from Nestlé's liability-creating actions. She must proffer evidence to support "a workable model." *Id*. The full refund model is not workable or valid. The suggestions by Falcone and the majority that an alternative price premium model should be considered admit as much. We should vacate the existing class certification order and remand for further proceedings.

I respectfully dissent.