No. 24-7707

**IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**

MARIE FALCONE, individually and on behalf of all others similarly situated,
*Plaintiff-Appellee*,

v.

NESTLÉ USA, INC.,
*Defendant-Appellant*.

On Appeal from the U.S. District Court for the Southern District of California, No. 3:19-cv-723 (Hon. M. James Lorenz)

# BRIEF OF THE CONSUMER BRANDS ASSOCIATION AND FOOD MARKETPLACE, INC. D/B/A FMI – THE FOOD INDUSTRY ASSOCIATION AS *AMICI CURIAE* IN SUPPORT OF DEFENDANT-APPELLANT'S PETITION FOR PANEL REHEARING OR REHEARING EN BANC

Andrew J. Pincus
Leif Overvold
MAYER BROWN LLP
1999 K Street, N.W.
Washington, DC 20006
apincus@mayerbrown.com

*Counsel for* Amici Curiae

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Rules 26.1 and 29(a)(4)(A) of the Federal Rules of Appellate Procedure, *amici curiae* the Consumer Brands Association and Food Marketplace, Inc. d/b/a FMI – The Food Industry Association state that they do not have a parent corporation, and no publicly held corporation owns 10% or more stock in the Consumer Brands Association or FMI – The Food Industry Association.

# TABLE OF CONTENTS

**Page**


INTEREST OF THE *AMICI CURIAE* .................................................. 1

INTRODUCTION AND SUMMARY OF THE ARGUMENT ................. 3

ARGUMENT ......................................................................................... 7

The Panel Majority's Decision Overrides Fundamental Requirements For Class Certification And Squarely Conflicts With Rulings By The Supreme Court And Other Courts Of Appeals. ........................................................................................ 7

A. The panel majority neutered *Comcast*'s requirement that damages must be "capable of measurement on a classwide basis." ............................. 7

B. Two other aspects of the panel's decision warrant review. ........................................................................ 12

C. The combined effect of the panel's rulings opens the door to an avalanche of multi-million-member class actions, which will harm businesses and the judicial system ......................................................... 19

CONCLUSION ..................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Sur. Co. v. Baldwin*,
287 U.S. 156 (1932) .......... 13

*Animal Legal Def. Fund, Inc. v. Vilsack*,
111 F.4th 1219 (D.C. Cir. 2024) .......... 17

*In re Asacol Antitrust Litig.*,
907 F.3d 42 (1st Cir. 2018) .......... 15

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) .......... 21

*Berni v. Barilla S.p.A.*,
964 F.3d 141 (2d Cir. 2020) .......... 17

*Califano v. Yamasaki*,
442 U.S. 682 (1979) .......... 7

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) .......... 4, 5, 8, 9, 11

*Conrad v. Boiron, Inc.*,
869 F.3d 536 (7th Cir. 2017) .......... 18

*Coopers & Lybrand v. Livesay*,
437 U.S. 463 (1978) .......... 3, 21

*Cordoba v. DIRECTV, LLC*,
942 F.3d 1259 (11th Cir. 2019) .......... 14, 15

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) .......... 17

*In re Folgers Coffee Mktg.*,
159 F.4th 1151 (8th Cir. 2025) .......... 10

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982) .......... 8

*Hodsdon v. Mars, Inc.*,
891 F.3d 857 (9th Cir. 2018) .......... 9, 12

*Huber v. Simon's Agency, Inc.*,
84 F.4th 132 (3d Cir. 2023) .......... 14

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*,
903 F.3d 278 (3d Cir. 2018) .......... 17-18

*Lab'y Corp. of Am. Holdings v. Davis*,
605 U.S. 327 (2025) .......... 7, 16, 20, 21, 22

*Lindsey v. Normet*,
405 U.S. 56 (1972) .......... 13

*Mr. Dee's Inc. v. Inmar, Inc.*,
127 F.4th 925 (4th Cir. 2025) .......... 14

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) (en banc) .......... 13, 15, 16

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
934 F.3d 619 (D.C. Cir. 2019) .......... 14, 15

*Rosenwald v. Kimberly-Clark Corp.*,
152 F.4th 1167 (9th Cir. 2025) .......... 10

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010) (Ginsburg, J., dissenting) .......... 21

*In re Tobacco Cases II*,
240 Cal. App. 4th 779 (2015) .......... 9, 10

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 13, 18

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) .......... 14

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .......... 7, 8, 14

*Williams v. Reckitt Benckiser LLC*,
65 F.4th 1243 (11th Cir. 2023) .......... 17

**Other Authorities**

2025 Carlton Fields Class Action Survey (2025) .......... 20

Fed. R. App. P. 29(a)(4)(E) .......... 1

Fed. R. Civ. P. 23 .......... 3, 5, 7, 14, 21

Fed. R. Civ. P. 23(b)(3) .......... 3, 8, 15

Henry J. Friendly, *Federal Jurisdiction: A General View* (1973) .......... 21

U.S. Chamber Institute for Legal Reform, *Food Court: Developments in Litigation Targeting Food and Beverage Marketing* (Aug. 2021) .......... 20-21

## INTEREST OF THE *AMICI CURIAE*[1]

The Consumer Brands Association ("CBA") is a trade association that represents and has as its members manufacturers of consumer packaged goods from across the United States. CBA champions an industry whose products Americans depend on every day, including packaged food and beverage products. Its membership plays a vital role in powering the Nation's economy: just last year its members contributed $2 trillion to the U.S. gross domestic product and supported more than 20 million American jobs.

Food Marketplace, Inc. d/b/a FMI – The Food Industry Association ("FMI") works with and on behalf of the entire food industry to advance a safer, healthier and more efficient consumer food supply. FMI brings together a wide range of members across the value chain—from retailers who sell to consumers, to producers who supply the food, as well as the many companies providing critical services—to amplify the collective

---

[1] No counsel for a party authored this brief in whole or in part, and no person, aside from *amici curiae*, its members, or its counsel, made any monetary contribution intended to fund the preparation or submission of this brief. *See* Fed. R. App. P. 29(a)(4)(E).

work of the industry. FMI's membership includes nearly 1,000 supermarket member companies that collectively operate almost 45,000 food retail outlets and employ approximately 6 million workers. Those companies also operate approximately 12,000 pharmacies inside retail grocery stores throughout the United States.

CBA, FMI, and their members strongly oppose abusive labor practices and many companies—including Nestlé USA—have implemented programs to root out and deter such practices by the businesses in their supply chains. This case involves an attempt to turn those beneficial programs against the companies that sponsor them through an illegitimate application of class-action principles.

*Amici* have a vital interest in ensuring that class certification standards are applied properly, particularly in cases alleging that products have been misleadingly labeled. Application of a legally erroneous, lax standard will open the door to improperly certified class actions containing huge numbers of individuals—subjecting CBA's and FMI's members to costs that harm their businesses, their workers and customers, and the Nation's economy. That is precisely what the panel majority did here, and why rehearing is urgently needed.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Class certification decisions are extraordinarily important. "Certification of a large class may so increase the defendant's potential damages liability and litigation costs that he may find it economically prudent to settle and to abandon a meritorious defense." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 476 (1978). Indeed, class-action litigation costs in the United States are astonishingly high, reaching a record $4.2 billion in 2024. Because of the certification decision's crucial significance, the Supreme Court has required courts to rigorously analyze whether class certification requirements are met.

The class certification decision here rests on three separate erroneous applications of Federal Rule of Civil Procedure 23. If not corrected, the combined effect of those rulings will be to subject a broad range of defendants to class actions seeking massive damages and broad injunctive relief, even though the requirements of Rule 23 are not satisfied.

First, Rule 23(b)(3) requires a plaintiff seeking to certify a damages class to demonstrate that questions of law or fact common to class members predominate over any individualized questions. That in turn requires a plaintiff to offer a damages model that shows "that damages are

capable of measurement on a classwide basis," because otherwise individualized questions regarding damages will overwhelm any questions common to class members. *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).

The panel majority affirmed certification notwithstanding plaintiff's failure to offer a damages model meeting *Comcast*'s requirements. Under the California law governing plaintiff's claim of allegedly misleading sustainability labeling on defendant's chocolate products, each class member's damages depend on the diminished value they received from the products in light of the alleged misleading representation. A full refund is available only if the product did not comport with the challenged representation and—in addition—the plaintiff deemed it worthless as a result.

Plaintiff sought to avoid the inherently individualized nature of this calculation by offering a damages model that assumes that each class member was entitled to a full refund of the purchase price paid because the product was worthless to them because it did not comport with the

challenged representation. But, as the panel dissent recognized, the evidence before the district court showed that that assumption was untrue for the named plaintiff, and also for the millions of absent class members.

The panel majority did not meaningfully address the defects in plaintiff's damages model, instead saying that they could be resolved at the merits stage. But punting consideration of whether individual damages questions predominate over common questions cannot be squared with *Comcast* and the Supreme Court's other decisions making clear that a court must determine whether Rule 23's requirements are met prior to granting certification. A proper application of the approach mandated by the Supreme Court allows only one possible result: the conclusion that individual damages questions will overwhelm any common questions in this case, and class certification therefore should be denied.

Second, the harmful effect of that holding is compounded by the panel's decision to allow the damages class to move forward notwithstanding undisputed evidence that large numbers of class members lack the requisite Article III injury. Determining whether each absent class member suffered the necessary injury is also an inherently individual-

ized inquiry—many class members may not have seen the challenged labeling or not placed any weight on the sustainability representations in choosing to purchase Nestlé's products. Yet here too, the panel failed to grapple with whether these individualized questions would predominate in light of the millions of individualized determinations that would be required to winnow out uninjured class members.

The combined effect of these rulings opens the door to the routine certification of improperly constituted damages classes. Enterprising plaintiffs' lawyers will propose inflated damages models untethered from any class member's actual damages or injury, maximizing the defendant's total damages exposure and corresponding settlement leverage regardless of whether any class member would be entitled to the damages that the model assumes.

Third, the panel also erred in allowing plaintiff to pursue classwide injunctive relief even though she is at no risk of being injured by the defendant's alleged conduct in the future. This Court stands alone in concluding that a plaintiff who knows that a defendant's labeling is mislead-

ing, and indeed has filed suit on that basis, can nonetheless seek class-wide injunctive relief to avoid somehow being misled again. The Court should reconsider that flawed ruling.

Compliance with Rule 23 is critically important. "Overbroad and incorrectly certified classes threaten massive liability" for class action defendants. *Lab'y Corp. of Am. Holdings v. Davis*, 605 U.S. 327, 333 (2025) (Kavanaugh, J., dissenting from dismissal). Rehearing is warranted to ensure that compliance with Rule 23's requirements are policed prior to certification, as the Supreme Court has repeatedly required.

## ARGUMENT

### The Panel Majority's Decision Overrides Fundamental Requirements For Class Certification And Squarely Conflicts With Rulings By The Supreme Court And Other Courts Of Appeals.

#### A. The panel majority neutered *Comcast*'s requirement that damages must be "capable of measurement on a classwide basis."

Class actions are an "'exception to the usual rule'" that claims are litigated individually; the Supreme Court has emphasized that it therefore is essential that courts engage in "rigorous analysis" when applying the requirements governing class certification. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348, 351 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). The required analysis will frequently "entail

some overlap with the merits of the plaintiff's underlying claim." *Id.* That is unsurprising, because "'[t]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Id.* (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)).

The Supreme Court has further explained that Rule 23(b)(3), which governs certification of damages classes, is an "adventuresome innovation" that is "designed for situations in which class-action treatment is not as clearly called for." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) (quotation marks omitted). Courts therefore have a "duty to take a close look" in determining whether the lawsuit satisfies Rule 23(b)(3)'s requirement that "common questions predominate over individual ones." *Id.* (quotation marks omitted).

To demonstrate that the predominance requirement is satisfied, a plaintiff seeking certification of a damages class must, among other things, offer a model showing "that damages are capable of measurement on a classwide basis." *Comcast*, 569 U.S. at 34. That model cannot be "arbitrary"; it must closely match the claims the plaintiff has advanced and the remedies available under those claims. *Id.* at 34–36. Without

such a model, a damages class proponent cannot establish predominance because individualized questions related to the measurement of each class member's damages would "inevitably overwhelm" common questions. *Id.* at 34.

As Nestlé's rehearing petition explains (Pet. 9–13), plaintiff here failed to provide a damages model that complied with *Comcast*, and the decision certifying the damages class falls far short of the "close look" the Supreme Court requires.

California law provides that the measure of damages for each putative class member in a case, like this one, alleging misleading sustainability labeling, is the difference between what a plaintiff paid for the product and the actual value she received in light of the product's alleged failure to comport with the challenged labeling. *See, e.g.*, *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 791–92, 794 (2015).

This Court has explicitly recognized that not every consumer will value sustainability representations the same, if at all, in purchasing chocolate. *See Hodsdon v. Mars, Inc.*, 891 F.3d 857, 864 (9th Cir. 2018). For that reason, the damages calculation is likely to be a highly individualized question for each class member. Those individualized inquiries—

requiring testimony from each of the millions of class members, an opportunity for cross-examination, and a separate determination by the district court for each class member—will necessarily overwhelm any common questions across the putative class. *See, e.g.*, *In re Folgers Coffee Mktg.*, 159 F.4th 1151, 1157 (8th Cir. 2025).

The panel majority elided this obvious barrier to certification by accepting a damages model that assumed that, because of the alleged misrepresentation, the product had "*no* value" to every single class member. *Rosenwald v. Kimberly-Clark Corp.*, 152 F.4th 1167, 1178 (9th Cir. 2025) (quoting *In re Tobacco Cases II*, 240 Cal. App. 4th at 795). That allowed the majority to conclude that the damages calculation did not present any individualized issues—because, on that (unjustified) assumption, every member of the class was entitled to a full refund of the price paid for the defendant's product. *See id.*; Op. 6.

But, as the petition explains (Pet. 12–13), the panel's analysis exhibited the precise flaws identified by the Supreme Court in *Comcast*: first, accepting the mere assertion of a "logical connection" between plaintiff's theory and the damages model, Op. 6, rather than requiring plaintiff to demonstrate that the model would actually measure damages

across the class in accordance with the governing legal standard; and, second, concluding that consideration of the model's identified defects can be deferred to the merits. *See Comcast*, 569 U.S. at 34, 37–38.

Indeed, plaintiff failed to demonstrate that the damages model accurately calculated her own damages, much less could do so on a classwide basis for all class members. As the panel dissent explained, the model's premise that the allegedly misleading label rendered Nestlé's product entirely worthless to the entire class was highly implausible even for plaintiff and contradicted by the fact that plaintiff had purchased a Nestlé product even after becoming aware of the allegedly misleading labeling. Dissent at 2–3.

Had the panel majority engaged in the required analysis, it would have been compelled to conclude that, due to the absence of a model that actually calculated classwide damages in accordance with the governing law and factual record, "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class." *Comcast*, 569 U.S. at 34.

The Court should grant rehearing to correct the panel majority's deviation from controlling Supreme Court precedent.

### B. Two other aspects of the panel's decision warrant review.

The panel majority's erroneous determination regarding damages does not stand alone. The panel committed two other very significant errors in upholding class certification.

**1.** The pernicious effect of the panel majority's acceptance of plaintiff's damages model is compounded by the decision's perfunctory treatment of the demonstrated presence of uninjured, absent class members.

As the petition explains (Pet. 17–19), unrebutted evidence showed that numerous members of the class certified by the district court lack Article III standing. These absent class members may never have seen the challenged product labels, they may not have interpreted them as plaintiff did, or they may be among the many consumers whose valuation of a chocolate product is wholly unaffected by "the labor practices used to manufacture [it]." *Hodsdon*, 891 F.3d at 864.

The panel dismissed in a footnote this concern regarding the uninjured individuals in the class, stating that the Court had "previously held that the possibility that some class members suffered no injury does not,

by itself, defeat class certification." Op. 3–4 (citing *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669, 680–81 (9th Cir. 2022) (en banc)).

The problems that the presence of numerous uninjured class members pose for class certification should not be addressed in such a cursory manner. The Supreme Court has made clear that *each* member of a certified damages class "must have Article III standing in order to recover individual damages." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

The defendant in a class action has the right to a judicial determination of whether absent class members have experienced real-world harm caused by the defendant's conduct. The Supreme Court has made clear that due process requires that a plaintiff in federal court prove both Article III standing and every element of her claim to recover damages, and also that a defendant be given "'an opportunity to present every available defense.'" *Lindsey v. Normet*, 405 U.S. 56, 66 (1972) (quoting *American Sur. Co. v. Baldwin*, 287 U.S. 156, 168 (1932)).

Those requirements do not change in a class action, because "a class cannot be certified on the premise that [the defendant] will not be entitled

to litigate its . . . defenses to individual claims." *Dukes*, 564 U.S. at 367; *see also In re Rail Freight Fuel Surcharge Antitrust Litig.*, 934 F.3d 619, 625 (D.C. Cir. 2019) (recognizing defendants have "Seventh Amendment and due process rights to contest every element of liability and to present every colorable defense."). As Chief Justice Roberts has explained, "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not," and "if there is no way to ensure that the jury's damages award goes only to injured class members, that award cannot stand." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016) (Roberts, C.J., concurring).

For these reasons, numerous courts of appeals have concluded that the concerns regarding uninjured class members that the panel brushed aside bar class certification in circumstances like those here. The Eleventh Circuit, for example, has stressed that "whether absent class members can establish standing" is "exceedingly relevant to the class certification analysis required by" Rule 23. *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1273 (11th Cir. 2019); *see also, e.g.*, *Mr. Dee's Inc. v. Inmar, Inc.*, 127 F.4th 925, 933 (4th Cir. 2025); *Huber v. Simon's Agency, Inc.*, 84

F.4th 132, 155–58 (3d Cir. 2023); *In re Rail Freight*, 934 F.3d at 625; *In re Asacol Antitrust Litig.*, 907 F.3d 42, 53–54 (1st Cir. 2018).

These courts have recognized that a class proponent fails to demonstrate predominance when "each plaintiff will likely have to provide some individualized proof that they have standing," because that creates a key "individualized issue." *Cordoba*, 942 F.3d at 1275, 1277.

A court determining whether to certify a class under Rule 23(b)(3) therefore must consider whether, in light of the individualized determinations necessary to establish standing, individualized issues will predominate and certification is impermissible. *See Cordoba*, 942 F.3d at 1277; *see also, e.g.*, *Rail Freight*, 934 F.3d at 625 (noting that, where the standing of over 2,000 potentially uninjured putative class members would have to be individually adjudicated, the "absence of a winnowing mechanism," "short of full-blown, individual trials," made class treatment unworkable).

As with the damages issue, the panel did not meaningfully address whether individualized trials to prove standing for the certified class's millions of members would predominate over common questions in this case. It instead relied on the Court's en banc decision in *Olean*, where

the Court affirmed certification of a class notwithstanding evidence that a significant portion of the class had suffered no injury. *See* 31 F.4th at 680–81.

But in *Olean*, the Court recognized that, while a class may prove some issues on an individualized basis, that is appropriate only if "such individualized issues do not predominate over common ones." 31 F.4th at 669. The Court made clear that, when a proposed class includes "a great number" of uninjured class members, it is "defined too broadly to permit certification." *Id.* at 669 n.14. The panel decision failed to assess whether individualized issues would predominate on the facts here, where millions of individualized determinations would be required to weed out the numerous class members lacking Article III standing.

That failure is especially noteworthy given the Supreme Court's recent consideration of this issue in *Laboratory Corporation of America Holdings v. Davis*, 605 U.S. 327 (2025). While the Court ultimately did not decide that case, its grant of review indicates concern about the divergent approaches among the courts of appeals and provides an additional reason for this Court to grant rehearing.

**2.** The panel also erred by allowing plaintiff to pursue injunctive relief on a classwide basis. The question is whether a plaintiff who alleges that she purchased a product with misleading labeling may pursue classwide injunctive relief—even though that plaintiff cannot be misled in the future because she already knows that the label is misleading; indeed, she has filed a complaint alleging just that.

This Court's precedent allows a plaintiff to pursue injunctive relief in this surprising fashion, at least at the pleading stage, and the panel applied that precedent in certifying an injunctive-relief class. *See* Op. 2–3 (citing *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970 (9th Cir. 2018)).

However, as the rehearing petition explains (Pet. 19–23), five other circuits have concluded that such a named plaintiff does not have standing and that an injunctive-relief class action therefore cannot be certified. *See Animal Legal Def. Fund, Inc. v. Vilsack*, 111 F.4th 1219, 1228 (D.C. Cir. 2024); *Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243, 1254–56 (11th Cir. 2023); *Berni v. Barilla S.p.A.*, 964 F.3d 141, 148 (2d Cir. 2020); *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. &*

*Liab. Litig.*, 903 F.3d 278, 292–93 (3d Cir. 2018); *Conrad v. Boiron, Inc.*, 869 F.3d 536, 542 (7th Cir. 2017).

Moreover, this Court's precedent is inconsistent with the Supreme Court's recent explanation of the injury Article III requires for a claim seeking injunctive relief: "a person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least *so long as the risk of harm is sufficiently imminent and substantial*." *TransUnion*, 594 U.S. at 435 (emphasis added). The "injury" found sufficient here—that plaintiff "would like" to purchase the product but won't because she doesn't trust the labeling, Op. 2—hardly qualifies as "substantial."

Indeed, if supply-chain labor issues are important to plaintiff, and she believes that Nestlé does not sufficiently address those issues, a label that plaintiff deems "accurate" will not eliminate her injury; in that case the label would reflect Nestlé's "admitted" failure to address those issues to plaintiff's satisfaction, and plaintiff presumably would decline to purchase the product as a result. Which means that plaintiff's "injury" does not satisfy Article III's redressability requirement. *See TransUnion*, 594 U.S. at 423.

In sum, this manufactured-for-litigation "injury" falls far short of what is required to establish standing. The Court should grant en banc review given the inconsistency between its precedent and the fundamental requirements of Article III.

### C. The combined effect of the panel's rulings opens the door to an avalanche of multi-million-member class actions, which will harm businesses and the judicial system.

**1.** The panel's rulings threaten to make it trivially easy for plaintiffs to obtain certification of multi-million member classes in cases involving alleged consumer label misrepresentations. Just about any consumer misrepresentation claim could give rise to both a damages and injunctive-relief class action, even in the face of unrebutted evidence that large numbers of absent class members suffered no injury from the defendant's challenged labeling.

The panel's damages model ruling provides a clear route to obtaining certification of a class encompassing every purchaser of a product with each class member's damages equal to the purchase price, regardless of whether there is any reason to think the product was in fact of no value to any class member. And the need for individualized standing determinations would pose no obstacle to certification. Defendants could

routinely face the threat of gigantic damages liability and bear the burden of litigating through trial the claims of numerous uninjured class members, even though it is clear that neither damages nor injury ultimately could be resolved on a classwide basis. Unjustified settlement payments will be the inevitable result.

Moreover, certification of an injunctive class would be essentially automatic as long as the plaintiff asserts the "harm" that she won't buy products with a misleading label but wants to buy the product with a corrected label.

**2.** Impermissibly lax class-certification decisions like the ruling here "generate serious real-world consequences." *Lab'y Corp.*, 605 U.S. at 333 (Kavanaugh, J., dissenting from dismissal). Class-action litigation costs in the United States are huge. They hit a record high in 2024, totaling a staggering $4.2 billion, continuing the trend of increases that started in 2015. *See* 2025 Carlton Fields Class Action Survey, at 7 (2025), https://ClassActionSurvey.com. Food and beverage marketing has been a particular target of class action litigation, with such litigation increasing 52% from 2017 to 2021. *See* U.S. Chamber Institute for Legal Reform, *Food Court: Developments in Litigation Targeting Food and Beverage*

*Marketing* 1 (Aug. 2021), https://instituteforlegalreform.com/wp-content/uploads/2021/07/Food-Litigation-Update_web.pdf.

Defendants in class actions already face tremendous pressure to capitulate to what Judge Friendly termed "blackmail settlements." Henry J. Friendly, *Federal Jurisdiction: A General View* 120 (1973). As the Supreme Court explained nearly 50 years ago, "[c]ertification of a large class may so increase the defendant's potential damages liability and litigation costs that he may find it economically prudent to settle and to abandon a meritorious defense." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 476 (1978); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 350 (2011) (noting "the risk of 'in terrorem' settlements that class actions entail"); *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 445 n.3 (2010) (Ginsburg, J., dissenting) ("[A] class action can result in 'potentially ruinous liability.'") (quoting Advisory Committee's Notes on Fed. R. Civ. P. 23).

That is particularly true when "[o]verbroad and incorrectly certified classes threaten massive liability" to class action defendants. *Lab'y Corp.*, 605 U.S. at 333 (Kavanaugh, J., dissenting from dismissal). If a plaintiff can proceed based on a total refund theory of liability without

any showing that damages can in fact be calculated lawfully for the entire class on that basis, potential liability expands exponentially, and will turn solely on the number of consumers who purchased the defendant's product rather than what, if any, injury each class members actually incurred as a result of the defendant's alleged conduct.

Defending, and settling, these lawsuits designed to extract lucrative settlements would require businesses to expend enormous sums. But the harmful consequences of this significant increase in the costs of doing business would not be limited to businesses.

"[C]ompanies in turn pass on those costs to consumers in the form of higher prices; to retirement account holders in the form of lower returns; and to workers in the form of lower salaries and lesser benefits. So overbroad and incorrectly certified classes can ultimately harm consumers, retirees, and workers, among others." *Lab'y Corp.*, 605 U.S. at 333 (Kavanaugh, J., dissenting from dismissal). The consequences of an overbroad and improperly certified damages class action are thus "widespread and significant." *Id.* The Court should consequently reject the improperly lax approach to class certification reflected in the panel decision in this case.

## CONCLUSION

The Court should grant panel rehearing or rehearing en banc.

Dated: March 5, 2026

Respectfully submitted,

/s/ *Andrew J. Pincus*
Andrew J. Pincus
Leif Overvold
MAYER BROWN LLP
1999 K Street, N.W.
Washington, DC 20006
(202) 263-3000
apincus@mayerbrown.com

*Counsel for* Amici Curiae *the Consumer Brands Association and FMI – The Food Industry Association*

## CERTIFICATE OF COMPLIANCE

1. **9th Cir. Case Number(s)** No. 24-7707

I am the attorney or self-represented party.

**This brief contains 4,151 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[X] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

[ ] it is a joint brief submitted by separately represented parties;
[ ] a party or parties are filing a single brief in response to multiple briefs; or
[ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated ______________.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ *Andrew J. Pincus* **Date** March 5, 2026

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on March 5, 2026. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ *Andrew J. Pincus*
Andrew J. Pincus
*Counsel for* Amici Curiae